THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOHN WINSTON FORRESTER, JOHN PHILIP FORRESTER, JAMES TERRY, JASON WEBB, ALBERTO RODRIGUEZ, JASON FLOYD SMITH, ROBERT BENNINGER, JOSHUA HOWELL, and JOSE PEREZ<br>Plaintiffs<br><br>v.<br><br>WOOD COUNTY, TEXAS, JAMES A. BROWN, in his individual capacity, WILLIAM MILES TUCKER, in his individual capacity, KELLY SMITH, in his individual capacity, KEVIN ATKINSON, in his individual capacity, STEPHEN CATES, in his individual capacity, JOHN A. HAMMACK, and JERRY WAYNE BOONE<br>Defendants | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:17-CV-561 |

## JAMES A. BROWN'S FIRST AMENDED COUNTERCLAIM AGAINST JOHN WINSTON FORRESTER AND JOHN PHILIP FORRESTER

TO: THE HONORABLE JUDGE FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION

COMES NOW Defendant/Counter-Plaintiff James A. Brown in the above-styled and numbered cause of action ("Brown") and files this First Amended Counterclaim against John Winston Forrester and John Philip Forrester, and states as follows:

**PARTIES**

1. Defendant/Counter-Plaintiff James A. Brown is a resident of the state of Texas.

2. Plaintiff/Counter-Defendant John Winston Forrester is a resident of the state of Texas and has already appeared in this suit.

3. Plaintiff/Counter-Defendant John Philip Forrester is a resident of the state of Texas and has already appeared in this suit.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 USC § 1391, as the events or omissions that give rise to this counterclaim occurred in this district, the property at issue is situated in this district, and the parties are residents of the State of Texas.

## INTRODUCTION AND OVERVIEW

6. James Brown is a landowner in Wood County, Texas. John Winston Forrester has described himself as an independent oil and gas operator, who claims to have purchased whatever rights may have still existed in an old mineral lease under a portion of Mr. Brown's land. His father, John Philip Forrester also claims rights under that same mineral lease. Although discovery has just begun in this case, preliminary information indicates that lease expired and terminated years ago.

7. Rather than negotiating and paying for a new mineral lease and access rights across adjoining properties to see if they could salvage anything from the old leasehold, the Forresters sought to bully their way across property owned by Mr. Brown and others that was never within the boundaries of the old mineral lease and through which the Forresters had no right of access. When adjoining landowners resisted that bullying, John Winston Forrester maliciously prosecuted a civil suit against them and included Mr. Brown in that lawsuit. As the true facts started to come to light in that suit and his attorney sought to withdraw from representing him, John Winston Forrester abandoned that suit and it was terminated in favor of Mr. Brown. Nonetheless, John

Winston Forrester and John Philip Forrester continued to claim rights under the expired lease and to trespass onto Mr. Brown's land under the guise of the expired lease.

8. Mr. Brown now asserts counterclaims against the Forresters for: (1) declaratory judgment that the old mineral lease acquired by John Winston Forrester has terminated, and the Forresters have no right, title, or interest in or to the property that was previously the subject of the leasehold estate; (2) declaratory judgment that the Forresters do not have any right to access Mr. Brown's property by virtue of the old mineral lease that John Winston Forrester acquired. Mr. Brown also asserts a counterclaim against John Winston Forrester for malicious prosecution.

## FACTS

9. Counter-Plaintiff James A. Brown owns real property in Wood County, Texas. That property includes tracts of land described by the Wood County Appraisal District as Property No. 20574, Property No. 55607, Property No. 69763, and Property No. 69764.

10. Part—but not all—of Property No. 69763 is within the metes and bounds of a mineral lease from W.T. Blackwell and wife Annie May Blackwell to J.R. Goldsmith recorded in Wood County property records at Volume 586, Page 386 (the "Blackwell Lease"). On information and belief, Property No. 20574, Property No. 55607, and Property No. 69764 are not, and were never, within the metes and bounds of the Blackwell Lease. Further, on information and belief, none of Property No. 14026 (owned by the family of co-defendant Jerry Wayne Boone) was ever within the metes and bounds of the Blackwell Lease.

11. The Blackwell Lease was executed in 1967 and had a primary term of five years. After that primary term, the Blackwell Lease was only effective as long as oil, gas, or other mineral was produced from that land or land that it was pooled with. Production of oil, gas, or other mineral from that land or land that it was pooled with ended before John Winston Forrester acquired it,

thereby terminating the Blackwell Lease (and any related right of access to Mr. Brown's property) before John Winston Forrester ever acquired it.  Nonetheless, beginning in 2015 and continuing through the present, the Forresters claim that they own rights to Mr. Brown's land by virtue of the Blackwell Lease, and they have the right to enter onto Mr. Brown's property by virtue of that same expired lease.

12.     Counter-Defendant John Winston Forrester claims to have purchased the Blackwell Lease, effective October 1, 2015.  While he was negotiating that purchase—and before he ever purchased the Blackwell Lease—John Winston Forrester alleges he repeatedly attempted to come onto property owned by Mr. Brown and property owned by the Boone family to access what he claims was "his property" by virtue of the Blackwell Lease.  However, the property he "accessed" was never within the metes and bounds of the Blackwell Lease—a fact that John Winston Forrester knew.  John Winston Forrester, in fact, had no right to access it.  He was a trespasser.  Once John Winston Forrester purchased the Blackwell Lease, those efforts became more intense.

13.     When his self-help approach did not yield the results he wanted, John Winston Forrester sued Mr. Brown and Mr. Boone in Texas state court seeking a temporary restraining order, a temporary injunction, and a permanent injunction against Mr. Brown and Mr. Boone seeking access to or across property that he had no right to enter.  Those actions, however, were taken maliciously and without probable cause.  The Forresters knew that they did not have any right of access to the Property, as the Blackwell lease had long since expired, and portions of the property that they accessed were never part of the Blackwell Lease.  For example, John Winston Forrester testified in the state court suit that is an experienced landman and that he conducted due diligence on the Blackwell Lease before purchasing it.  Even a rudimentary search of readily available records reveals that the property that was subject to the Blackwell Lease does not—and never

did—include property to which the Forresters claim property rights. Other such records reveal not one—but several instances—during which production from the well at issue stopped long enough to automatically terminate the Blackwell Lease. No experienced landman and operator who conducted due diligence on a mineral lease would have turned a blind eye to such records or the facts they revealed. Facts such as these evidence John Winston Forrester's lack of probable cause and malice in instituting the state court suit.

14. Despite his knowledge of facts that completely undercut his claims, John Winston Forrester proceeded with his meritless lawsuit, misleading the state court to get the relief he wanted. For example, John Winston Forrester pled that this purchase of the Blackwell Lease was accompanied by an "easement that had been used for decades" that ran across the Boone property and portions of Mr. Brown's property. John Winston Forrester went on in those pleadings to complain that "Boone blocked access through the existing easement." No evidence of any such easement was ever produced in that suit and no record of any such easement has been found in the Wood County property records. Accordingly, despite making these representations to the court and using them as a means to secure his injunctive relief against Mr. Brown, John Winston Forrester knew that he had no right to access the Blackwell Lease through any alleged easement.

15. By way of further example, John Winston Forrester also complained in the state court suit that Mr. Brown's ranch hand "barred Mr. Forrester from crossing Mr. Brown's property, even though Mr. Brown's property is the surface of the leased mineral estate." What John Winston Forrester did not tell the state court is that this incident occurred when both of the Forresters— with no advance warning or permission—cut their way through a gate on a portion of Mr. Brown's property that was never subject to the Blackwell Lease and that the Forresters knew was not part

of the Blackwell Lease.[1]  In other words, the Forresters trespassed.  As the John Winston Forrester knew such facts through his pre-purchase due diligence, these events are yet further evidence of his lack of probable cause and malice.

16. The Forresters' allegations in this Court, as in the state court action, are likewise inaccurate (and as discovery we believe will reveal, knowingly so).  For example, in Paragraph 26 of their First Amended Complaint, they allege:

> On or about October 24, 2015, Winston Forrester attempted to access the Blackwell lease via a gate on Farm Market Road 2966 ("FM 2966") to recover millions of dollars' worth of equipment he had rented that had been stranded in the mud on the Blackwell lease following a heavy rainstorm. Defendant John A. Hammack, an employee of Sheriff Brown, met Winston Forrester at the gate, shouting profanities and attempting to prevent Winston from entering upon the Blackwell lease—i.e. Winston Forrester's own property.

However, none of Mr. Brown's property that fronts FM 2966 was ever subject to the Blackwell Lease, and therefore, could not possibly constitute "Winston Forrester's own property."

17. It is also worth noting that the Forresters knew the true facts relating to the ownership of that portion of property when they filed their First Amended Complaint.  Indeed, their attorney in the state court suit alluded to that fact in a hearing not long before he withdrew from representing John Winston Forrester "because the clients are unable to meet the requirements to maintain a good attorney-client relation, making it untenable for counsel to continue to represent Forrester."

18. John Winston Forrester's misleading efforts enabled him to obtain both a temporary restraining order and a temporary injunction against Mr. Brown.  Then, when the true facts began to come to light, he abandoned that suit, further evidencing his guilty knowledge and malicious

---

[1] Similarly, both Forresters later attempted to enter via a different route through the property of a neighbor – Jerry Boone. In that attempt, John Philip Forrester admitted that he cut the lock on Mr. Boone's gate so they could go through it.  John Philip Forrester also later told an investigating officer that he wanted to be on the property when the confrontation started with Mr. Boone to prove that he (John Philip Forrester) had the right to be there.

intent.

19. The temporary restraining order and temporary injunction obtained by John Winston Forrester significantly interfered with Mr. Brown's property rights to his property in Wood County. As stated by the Texas Supreme Court: "Private property rights have been described as fundamental, natural, inherent, inalienable, not derived from the legislature and as pre-existing even constitutions." *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012).

20. "Property rights in a physical thing have been described as the rights to possess, use and dispose of it." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982). The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Id.*; *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994). Further, the physical occupation of property by another denies the owner "any power to control the use of the property." *Loretto*, 458 U.S. at 436. As summarized by the U.S. Supreme Court, "an owner suffers a special kind of injury when a stranger directly invades and occupies the owner's property." *Id.*

21. By way of example, the temporary restraining order and/or temporary injunction that John Winston Forrester maliciously obtained prohibited Mr. Brown from:

- blocking access by Winston Forrester or his representatives, agents, workers, or contractors from the W.T. Blackwell No. 1 well or from use of Winston Forrester's alleged easement;
- interfering with Winston Forrester's operations;
- blocking the alleged easement with equipment, vehicles, or any other obstruction;
- locking any gate crossing the alleged easement without providing Winston Forrester with the code or key to unlock the gate;
- building a fence across the road; and

- coming within 50 feet of the W.T. Blackwell No. 1 well, the flowlines for the well, and any equipment associated with the well.

22. These prohibitions interfered with both Mr. Brown's right to exclude others from his property and his right to control the use of his property. Ask any property owner in Wood County whether it is fundamental that they be able to exclude others from their property; whether it is fundamental to be able to keep other people from setting up "operations" on their property; and whether it is fundamental to be able to erect fences on their property and lock the gates to their property. Indeed, the last prohibition from John Winston Forrester's injunction listed above is even more egregious. It directly prohibits Mr. Brown from making any use of—or even coming onto—portions of his own property. In the words of the U.S. Supreme Court: "To require, as well, that the owner permit another to exercise complete domination literally adds insult to injury." *Loretto*, 458 U.S. at 436.

23. When it came time to try the state court case on the merits, John Winston Forrester did not appear, and his suit against Mr. Brown and Mr. Boone was dismissed for want of prosecution. The temporary restraining order John Winston Forrester had obtained against Mr. Brown had already expired by then. The temporary injunction he had obtained against Mr. Brown also expired. John Winston Forrester was never granted the permanent injunction he sought in that suit. John Winston Forrester was never awarded the court costs he sought in that suit. John Winston Forrester was never awarded the "all other relief to which Forrester is entitled" he sought in that suit. Thus, that state court suit was terminated in Mr. Brown's favor.

24. John Winston Forrester did not refile his claims that had been dismissed for want of prosecution within the applicable statute of limitations. As the last event that John Winston Forrester complained of in his state court suit occurred on November 2, 2015, the two-year statute

of limitations on those claims did not run until after November 2, 2017. When that deadline came and went, the dismissal of John Winston Forrester's state court suit finally reached a final, undisturbable result. Indeed, at any time before then, John Winston Forrester could have refiled the very same claims that he had asserted in the state court suit that had been dismissed. Now that the limitations deadline has passed, Mr. Brown's counterclaim against John Winston Forrester for malicious prosecution is ripe for resolution.[2]

25. Despite John Winston Forrester's failure to prevail in the state court suit, the Forresters continued to trespass onto Mr. Brown's property. They also continue to claim that they own rights to Mr. Brown's land and that they have the right to come onto that land. For example, the Forresters continued to operate the well at issue after their state court suit was dismissed. Further, their operating company's name remains on the well at issue. Additionally, according to Texas Railroad Commission records, their operating company is still shown as the operator of the well at issue.

26. As evidenced by their pleadings in the state court suit (and implicit in the First Amended Complaint in this suit), the Forresters contend that: (1) they own rights to Mr. Brown's land by virtue of the Blackwell Lease; and (2) they have the right to enter onto the property of Mr. Brown and Mr. Boone. These claims are continuing and ongoing. The Forresters claim rights under a written lease that do not exist and that create uncertainty regarding the relative rights and legal status of Mr. Brown that will continue unless addressed by this Court. Accordingly, Mr. Brown now asserts a counterclaim for a declaratory judgment that: (1) the Blackwell Lease terminated

---

[2] John Winston Forrester state court suit was dismissed for want of prosecution, which did not bar him from refiling that suit or claims within the applicable two-year statute of limitations regardless of whether he challenged that dismissal. Indeed, no less an authority than the Texas Supreme Court has instructed: "a litigant may refile an action that has been dismissed for want of prosecution." *Rizk v. Mayad*, 603 S.W.2d 773, 775 (Tex. 1980).

before it was ever acquired by John Winston Forrester, and the Forresters have no right, title, or interest in or to the property that was previously the subject of the leasehold estate; and (2) the Forresters have no right to enter or be on the property of Mr. Brown by virtue of the Blackwell Lease.

## CAUSES OF ACTION

**Declaratory Judgment that the Blackwell Lease is Terminated**

27. Counter-Plaintiff incorporates the above paragraphs by reference.

28. As referenced above, Mr. Brown has rights to real property located in Wood County, Texas pursuant to various deeds. At the same time, the Forresters claim to have rights to that same property pursuant to the Blackwell Lease.

29. After the primary term of the Blackwell Lease (which ended in 1972), it was only effective as long as oil, gas, or other mineral was produced from that land or land that it was pooled with. Production of oil, gas, or other mineral from that land or land that it was pooled with ended several years before John Winston Forrester acquired it, thereby terminating the Blackwell Lease even before John Winston Forrester acquired it. Nevertheless, the Forresters claim, and continue to claim, rights in and to Mr. Brown's property under the Blackwell Lease.

30. Pursuant to the Texas Uniform Declaratory Judgments Act, a person interested under a writing may have determined any question of construction or validity arising under the writing and obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (Vernon 2015).

31. Questions of the construction and validity of the Blackwell Lease have arisen in that the Forresters claim legal rights thereunder, and Mr. Brown maintains that it has long since terminated and conveys no rights to the Forresters. As such, James Brown hereby seeks a declaration that the

Blackwell Lease terminated before it was ever acquired by John Winston Forrester, and the Forresters have no right, title, or interest in or to the property that was previously the subject of that lease.

**Declaratory Judgment that the Forresters have no Right to Come onto the Property**

32. Counter-Plaintiff incorporates the above paragraphs by reference.

33. As referenced above, Mr. Brown has rights to real property located in Wood County, Texas, pursuant to various deeds. At the same, the Forresters claim, and continue to claim, to have the right to come onto that same property pursuant to the Blackwell Lease, including property not within the Blackwell Lease.

34. Mr. Brown further seeks a declaration that the Forresters have no right of access on or across Mr. Brown's property by virtue of the Blackwell Lease.

35. Pursuant to the Texas Uniform Declaratory Judgments Act, a person is entitled to recover costs and reasonable attorney fees that are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2015). James Brown therefore seeks his costs and reasonable and necessary attorney's fees for having to seek and obtain the declaratory relief sought.

**Malicious Prosecution**

36. Counter-Plaintiff incorporates the above paragraphs by reference.

37. As referenced above, a civil suit was instituted against Mr. Brown at the insistence of John Winston Forrester, who acted with malice in the commencement of that suit, as he knew that he did not have the rights he asserted in that action and that he lacked probable cause for that suit. That suit was terminated in favor of Mr. Brown, who suffered damages thereby, including but not limited to being subject to both a temporary restraining order and a temporary injunction that physically interfered with Mr. Brown's property and his corresponding property rights, which

constitute special damages as a result of that malicious prosecution by John Winston Forrester. In addition to his special damages, Mr. Brown also seeks his other actual damages and exemplary damages for Forrester's conduct.

## RELIEF REQUESTED

38. Counter-Plaintiff incorporates the above paragraphs by reference.

39. The above-referenced acts and omissions of the Forresters have caused Mr. Brown damages and also necessitate the declaratory relief sought by Mr. Brown. Accordingly, Mr. Brown seeks:

- Actual and exemplary damages for John Winston Forrester's malicious prosecution;

- A declaration that the Blackwell Lease terminated before it was acquired by John Winston Forrester and the Forresters have no right, title, or interest in or to the property that was previously the subject of the Blackwell Lease;

- A declaration that the Forresters have no right to enter or be on Mr. Brown's property by virtue of the Blackwell Lease;

- Attorney's fees incurred the prosecution of Mr. Brown's requests for declaratory judgment;

- Pre- and post-judgment interest as applicable;

- Taxable court costs; and

- Such other and further relief to which Mr. Brown may be entitled.

## **PRAYER**

WHEREFORE, James A. Brown respectfully requests the Court render judgment in his favor against John Winston Forrester awarding Mr. Brown the following relief: actual and exemplary damages for John Winston Forrester's malicious prosecution; a declaration that the Blackwell Lease terminated before it was acquired by John Winston Forrester, and the Forresters have no right, title,

or interest in or to the property that was previously the subject of that lease; a declaration that the Forresters have no right to enter or be on Mr. Brown's property by virtue of the Blackwell Lease; attorney fees incurred the prosecution of Mr. Brown's requests for declaratory judgment; pre and post judgment interest as applicable; taxable court costs; and such other and further relief to which Mr. Brown may be entitled.

        Respectfully submitted,

By: _____
GRANT D. BLAIES
State Bar No. 00783669
Email: grantblaies@bhilaw.com

JAMES W. HRYEKEWICZ
State Bar No. 00784298
E-mail: jwh@bhilaw.com

BLAIES & HIGHTOWER, L.L.P.
421 W. Third Street, Suite 900
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)

ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF JAMES A. BROWN

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2018, I electronically filed the foregoing document with the clerk for the U. S. District Court, Eastern District of Texas, using the Electronic Case Filing system of the Court, by way of which copies were served on the following known counsel of record:

Wm. Andrew Messer (andy@txmunicipallaw.com)
Brett Gardner (brett@txmunicipallaw.com)
Ashley McSwain (ashley@txmunicipallaw.com)
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034

Robert S. Davis (rds@flowersdavis.com)
Lee I. Correa (lic@flowersdavis.com)
FLOWERS DAVIS, P.L.L.C.
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701

David R. Herring Iglesias (david@iglesiaslawfirm.com)
IGLESIAS LAW FIRM, PLLC
909 ESE Loop 323, Suite 702
Tyler, Texas 75701

In addition, true and correct copies of the foregoing document were mailed to the following *pro se* parties:

John A. Hammack
782 CR 1326
Quitman, Texas 75783

Jerry Wayne Boone
320 CR 1326
Quitman, Texas 75783

_____
Grant D. Blaies