THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOHN WINSTON FORRESTER, et al, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:17-CV-561 |
| | § | |
| WOOD COUNTY, et al, | § | |
| Defendants | § | |

---

## JAMES A. BROWN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

TO:   THE HONORABLE JUDGE FOR THE EASTERN DISTRICT OF TEXAS, TYLER
DIVISION

COMES NOW Defendant/Counter-Plaintiff James A. Brown in the above-styled and
numbered cause of action ("Brown") and files this Motion for Partial Summary Judgment, and in
support thereof states as follows:

### INTRODUCTION AND OVERVIEW

James Brown is a landowner in Wood County, Texas.  John Winston Forrester has
described himself as an independent oil and gas operator, who claims to own the mineral interests
under Mr. Brown's property by virtue of a mineral lease from 1967 (the "Blackwell Lease").  His
father, John Philip Forrester also claims rights under that same mineral lease.  The Forresters also
complain to this Court about Mr. Brown's alleged opposition to them cutting a chain securing a
locked gate and crossing a portion of Mr. Brown's property identified as Property No. 69764 in
Plaintiffs' First Amended Complaint, in order to allegedly access the wellsite located on the
Blackwell Lease.  *See Plaintiffs' First Amended Complaint* [Doc. 9] at ¶¶ 26-29, 46-47.

Mr. Brown now moves for partial summary judgment on his declaratory judgment
counterclaim in this case as follows:

- Declaratory judgment that the Blackwell Lease terminated before it was acquired by John Winston Forrester; it remained terminated throughout October – December 2015; it is presently terminated; and the Forresters have no right, title, or interest in the mineral estate that was the subject of the Blackwell Lease; and

- Declaratory judgment that Property No. 69764 is not, and never was, subject to the Blackwell Lease; John Winston Forrester does not have, and never had, any right, title, or interest in Property No. 69764; and John Winston Forrester does not have, and never had, any right to enter or be on Property No. 69764.

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Whether: (1) the Blackwell Lease terminated before it was acquired by John Winston Forrester; (2) the Blackwell Lease remained terminated throughout October – December 2015; (3) the Blackwell Lease is presently terminated; and (4) the Forresters have any right, title, or interest in the mineral estate that was the subject of the Blackwell Lease.

Whether: (1) Property No. 69764 is or was subject to the Blackwell Lease; (2) John Winston Forrester has and had any right, title, or interest in Property No. 69764; and (3) John Winston Forrester has and had any right to enter or be on Property No. 69764.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The terms of the Blackwell Lease are undisputed.  John Winston Forrester's admission that Property No. 69764 was never subject to the Blackwell Lease appears to be undisputed, but is also inconsistent with facts and claims pled in Plaintiffs' First Amended Complaint.

## SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Mr. Brown relies on the following evidence:

- **Exhibit A** – Affidavit of Cecilia Botello and attached documents.

- **Exhibit B** – Excerpts and exhibits from the deposition of John Winston Forrester;

- **Exhibit C** – Certified records from the Texas Railroad Commission;

- **Exhibit D** – Affidavit of Bob Washman and attached documents; and

- Pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court.

### The Blackwell Lease Was and Is Terminated

**A.     The Blackwell Lease Terminated for Lack of Production in Paying Quantities**

At the center of the instant suit is a mineral lease executed in 1967 between W.T. and Annie May Blackwell as lessors, and J.R. Goldsmith as Lessee (the "Blackwell Lease"). *Blackwell Lease at 1*, **Exhibit A-1***; Forrester Depo at. 83-84 and Depo Exhibit 6*, **Exhibit B**. The Blackwell Lease had a primary term of 5 years, which expired in 1972. *Blackwell Lease at ¶ 2*, **Exhibit A-1**. After the expiration of the primary term, the secondary term began and ran "as long thereafter as oil, gas, or other mineral is produced from said land."[1] *Blackwell Lease at ¶ 2*, **Exhibit A-1**.

The Texas Supreme Court has long held that the term "produce" in such a habendum clause is synonymous with the phrase "producing in paying quantities." This was established law in Texas well before the Blackwell Lease was executed. "While the lease does not expressly use the term 'paying quantities,' it is well settled that the terms 'produced' and 'produced in paying quantities' mean substantially the same thing." *Clifton v. Koontz*, 160 Tex. 82, 325 S.W.2d 684, 690 (Tex. 1959) (citing *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509, 511-12 (Tex. 1942)). When a mineral lease terminates, the lessee loses any ownership interests in the mineral estate that was the subject of that lease. *E.g.*, *Garcia v. King*, 139 Tex. 578, 164 S.W.2d 509 (Tex. 1942).

John Winston Forrester claims to have acquired the Blackwell Lease on October 1, 2015.[2] *Assignment, Bill of Sale and Conveyance*, **Exhibit A-2**. The summary judgment evidence

---

[1] A subsequent clause addressing production from pooled property is not applicable as this land was never pooled with any other land. *Forrester Deposition at 85*, **Exhibit B**.

[2] Although John Phillip Forrester has not claimed to have formally acquired the Blackwell Lease, he has claimed to have the right to come onto property that was the subject to the Blackwell Lease, as well as the right to cross neighboring property owned by the Boone family to get onto property that was the subject to the Blackwell Lease.

confirms that any production in paying quantities from the land covered by the Blackwell Lease ended long before that date.  Thus, no ownership interest in the underlying minerals was conveyed to John Winston Forrester.

The last possible date on which the Blackwell Lease produced in paying quantities was January 2009, which predates John Winston Forrester's acquisition of that lease by more than six years.  Operators of oil and gas wells in Texas must keep accurate records of, *inter alia*, "the volumes of oil, gas, and geothermal resources produced and disposed of."  16 Tex. Admin. Code § 3.1(b).  They must also file monthly production reports with the Texas Railroad Commission:

> For each calendar month, each operator who is a producer of crude oil, natural gas or geothermal resources shall file with the commission a report for each of the operator's producing properties. Operators shall file such reports on commission Form PR, Monthly Production Report, or commission Form GT-2 (producer's monthly report of geothermal wells). These commission forms report monthly production and disposition of oil and condensate, and casinghead gas and gas well gas (Form PR) and geothermal resources (Form GT-2).

16 Tex. Admin. Code § 3.58(b).

According to the records of the Texas Railroad Commission, the last time any oil was transported off of the Blackwell Lease was in January 2009.[3]  *Texas Railroad Commission certified records at Disposition Details Chart*, **Exhibit C**.  According to those same records, only 31 barrels of oil (and no gas) were produced from that lease from February 2009 through October 2015 (when John Winston Forrester acquired that lease).  *Texas Railroad Commission certified records at Production and Total Disposition Chart*, **Exhibit C**.  Further, none of that oil was ever sold or transported off of the lease.  *Texas Railroad Commission certified records at Disposition Details Chart*, **Exhibit C**.  Instead, all of that oil shows a Disposition Code of "7", which is a catch-all category for:  "Other – Stock adjustment, water bleed-off, lease use, road oil, production lost to

---

[3] As admitted by John Winston Forrester, this well is classified as an oil well and is not capable of producing gas in paying quantities. *Forrester Deposition at 89*, **Exhibit B**.

formation, etc." *Texas Railroad Commission certified records at Disposition Codes*, **Exhibit C**.

Production from this lease did not improve under John Winston Forrester's ownership and operation.  Notwithstanding his obligations under Texas law to keep accurate records of all oil and gas produced and disposed of, he has not produced any records of any "oil, gas, and geothermal resources produced and disposed of" from this well.  *See* 16 Tex. Admin. Code § 3.1(b).  Neither has he produced copies of any reports that he filed with the Texas. Railroad Commission showing any production or disposition from this well.  *See* 16 Tex. Admin. Code § 3.58(b).[4]

The summary judgment evidence establishes that the Blackwell Lease has not produced in paying quantities since January 2009.  The summary judgment evidence also establishes that John Winston Forrester did not acquire the Blackwell Lease before October 2015.  Thus, the Blackwell Lease terminated before John Winston Forrester acquired it, and that lease did not convey any ownership interest in the underlying mineral estate to John Winston Forrester.

**B.    The Blackwell Lease Terminated Because of Total Cessation of Production**

In addition to its failure to produce in paying quantities, the Blackwell Lease also terminated because of a total cessation of production for more than 60 days without any reworking or additional drilling.  The Blackwell Lease includes a cessation of production clause stating, "if after the discovery of oil, gas or other minerals, the production thereof should cease from any cause, this lease shall not terminate if lessee commences reworking or additional drilling operations within sixty (60) days thereafter."  *Blackwell Lease at ¶ 6*, **Exhibit A-1**.

---

[4] If he had any such documents, John Winston Forrester was required to produce them in this suit long ago.  According to the Discovery Order in this case [Doc.22]: "All original documents and tangible things in the possession, custody of each party that are relevant to the pleaded claims or defenses involved in this action shall be made available for inspection and copying within forty-five (45) days after the Scheduling Conference."  Mr. Brown's claim that the Blackwell Lease terminated for lack of production has been a pleaded claim and defense in this case since at least February 8, 2018, when Mr. Brown filed his Counterclaim [Doc. 27].  Further, the fact that Plaintiffs had not produced any well production records was brought to their attention by letter dated March 2, 2018.  *Correspondence to Plaintiffs' Counsel*, **Exhibit A-5**.  Further, John Winston Forrester confirmed that the company he uses for regulatory filings is under his control.  *Forrester Deposition at 10-11*, **Exhibit B**.  He also repeatedly affirmed in his deposition that he had produced all documents relevant to the pleaded claims and defenses in this suit.  *Forrester Deposition at 9, 13-15, 19-21*, **Exhibit B**.

As explained by the Texas Supreme Court:  "A total cessation of production for the number of consecutive days defined in a lease's cessation-of-production clause automatically terminates the lease, without regard to the reasonableness of the operator's actions, absent a properly invoked savings clause." *BP America Production Co. v. Red Deer Resources, LLC*, 526 S.W.3d. 389, 395-96 (Tex. 2017).  "When production stopped on May 4, 1977, during the secondary period, Sun had an express sixty days to drill or rework the well. When it failed to do so, the lease by its express terms automatically terminated." *Samano v. Sun Oil Co.*, 621 S.W.2d 580, 584 (Tex. 1981).

The cessation of operations clause in the Blackwell Lease provides an independent basis for termination of that lease.  "This is a ground for lease termination separate from the cessation of production in paying quantities analysis laid out in Clifton v. Koontz, 160 Tex. 82, 325 S.W.2d 684, and Skelly Oil Co. v. Archer, 163 Tex. 336, 356 S.W.2d 774 (Tex. 1962)." *BP America Production Co. v. Red Deer Resources, LLC*, 526 S.W.3d. 389, 396 (Tex. 2017).

As shown by the summary judgment evidence, production from the Blackwell Lease ceased for more than sixty days on multiple occasions since April 2011, without any evidence that the operators commenced reworking or additional drilling operations during any of stoppages. Such periods include: April 2011 – June 2011 (3 months); November 2011 – April 2012 (6 months); June 2012 – October 2012 (5 months); March 2013 – October 2015 (32 months). *Texas Railroad Commission certified records at Production and Total Disposition Chart*, **Exhibit C**.

Despite the requirements of the Texas Railroad Commission for all operators to "keep books showing accurate records of the drilling, redrilling, or deepening of wells" and their obligation to produce all documents relevant to the pleaded claims or defenses involved in this action, Plaintiffs have produced no documents evidencing reworking or additional drilling

operations corresponding to those breaks in production.[5]  Again, the summary judgment evidence establishes that the Blackwell Lease terminated before John Winston Forrester acquired it, and that lease did not convey any ownership interest in the underlying mineral estate to John Winston Forrester.

## C.    The Blackwell Lease Is Not Saved by Ratification or Force Majeure

In his deposition, John Winston Forrester claims that the Blackwell Lease is still in effect because of ratification and force majeure.  *Forrester Deposition at 95-96*, **Exhibit B**.  Neither claim is meritorious.

John Winston Forrester specifically points to a series of ratifications obtained by a previous operator between December 2010 and February 2011.  Although Texas law allows the parties to an agreement to later ratify that agreement, none of those ratifications were executed by either W.T. Blackwell or Annie May Blackwell - the lessors in the Blackwell Lease.  Instead, they were executed by people who were not parties to the Blackwell Lease.

More importantly, none of those 2010-2011 ratifications changed any of the terms of the Blackwell Lease.  That lease did not change the date of its execution or the primary term.  It was still "made this 8th day of November, 1967" and the five-year primary term still ran for "five (5) years from this date (called 'primary term')."  *Blackwell Lease at 1 and ¶ 2*, **Exhibit A-1**.  Indeed, each of the 2010-2011 ratifications expressly states: "This Ratification is signed by Lessor as of the date of the acknowledgement below, but is effective for all purposes as of the effective Dates of the Leases stated above."  *Ratification of Oil and Gas Lease*, **Exhibit A-3**.  Thus, the primary term of the Blackwell Lease still ended in 1972.  Further, the lack of production in paying

---

[5] As with the absence of production records, Plaintiffs' failure to produce "documents relating to reworking or additional drilling operations at that lease" was called to their specific attention in the March 2, 2018 letter to Plaintiffs' Counsel and John Winston Forrester has testified that he has produced all documents relating to reworking and additional drilling on the Blackwell Lease.  *Forrester Deposition at 20*, **Exhibit B**.

quantities and complete cessations of production that occurred since February 2011 still automatically terminated the Blackwell Lease.  As John Winston Forrester has admitted, the 2010-2011 ratifications had no effect after early 2011.  *Forrester Deposition at 106*, **Exhibit B**.  In other words, he may have secured a ratification of the leases in 2010-2011, but that ratification did not revive the underlying lease.  The ratification did not amend or otherwise alter its terms.  At most, it ratified what was existing at the time of ratification – a lease in which the primary term had ended in 1972 and in which the secondary term had long since terminated for lack of production, and that lack of production continued from the date of ratification until today.

John Winston Forrester claims that force majeure next saved the Blackwell Lease by suspending the obligation of a prior operator – Vogo, which was the operator of this lease from August 2012 until selling the lease to John Winston Forrester in October 2015.  There are multiple fallacies with this argument.

First is the narrow scope of what constitutes a force majeure event under the express terms of the Blackwell Lease.  John Winston Forrester claims that force majeure applies because a neighboring landowner (the Boone family) refused to give Vogo permission to drive across their land to get the Blackwell Lease.  An uncooperative neighbor does not constitute a force majeure event under the Blackwell Lease.  The Blackwell Lease expressly defines what constitutes force majeure:

> Lessee shall not be liable for delays or defaults in its performance of any agreement or covenant hereunder due to force majeure.  The term "force majeure" as employed herein shall mean:  [1] any act of God including but not limited to storms, floods, washouts, landslides, and lightning;  [2] acts of the public enemy;  [3] wars, blockades, insurrections or riots; strikes or lockouts; [4] epidemics or quarantine regulations;  laws, acts, orders or requests of federal state, municipal or other governments or governmental officers or agents under color of authority; [5] freight embargoes or failures; [6] exhaustion or unavailability or delays in delivery of any product, labor, service, or material.

*Blackwell Lease at ¶ 9*, **Exhibit A-1**.

Although John Winston Forrester may personally believe that an allegedly uncooperative adjacent landowner constitutes force majeure, such a belief is not consistent with Texas law.  "The scope and effect of a 'force majeure' clause depends on the specific contract language, and not on any traditional definition of the term." *Virginia Power Marketing, Inc. v. Apache Corp.*, 297 S.W.3d 397, 402 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  "Force majeure is now little more than a descriptive phrase without much inherent substance.  Indeed, its scope and application, for the most part, is utterly dependent upon the terms of the contract in which it appears." *Sun Operating Partnership v. Holt*, 984 S.W.2d 277, 283 (Tex. App.—Amarillo 1998, no pet.).  An allegedly uncooperative neighbor does not constitute any of the six specific items that the Blackwell Lease identifies as force majeure events.

Second, Vogo could have easily rectified any lack of cooperation from the Boone family.  The owner of Vogo has admitted under oath that he could have simply gotten a court order to require the Boones to let him onto the Blackwell Lease property. *Vaughn Criminal Testimony at 140*, **Exhibit A-7**.  He also admitted that if the Blackwell oil well had been profitable, he probably would have spent the $300 it would have taken to get that court order.[6] *Vaughn Criminal Testimony at 144*, **Exhibit A-7**.  Thus, no lack of cooperation from the Boone family prevented Vogo from accessing the Blackwell Lease property.

Third, force majeure only suspends a party's obligation during the pendency of the force majeure event.  It does not undo a termination of a mineral lease that occurred before the force majeure event.  As shown by the Texas Railroad Commission records, Vogo became the operator of this lease in August 2012.  According to the sworn testimony of the owner of Vogo, he first experienced a lack of cooperation from the Boone family shortly after he bought the Blackwell

---

[6] The fact that Vogo determined that the Blackwell well not worth a $300 expenditure is also powerful evidence reinforcing the fact that the Blackwell Lease was not even capable of producing in paying quantities.

Lease.  He had previously worked for two prior owners of the Blackwell Lease and had repeatedly

crossed the Boone property to access the Blackwell property without problem before Vogo bought

that lease.  *Vaughn Criminal Testimony at 132-36*, **Exhibit A-7**.  The Blackwell Lease, however,

had terminated before Vogo bought the lease and began having problems with the Boone family.

Even assuming the 2010-2011 ratifications revitalized the Blackwell Lease as of February

2011 (the date of the last of those ratifications), the Blackwell Lease terminated between then and

when Vogo acquired the lease in August 2012.  As described above, the Blackwell Lease failed to

produce in paying quantities between February 2011 and August 2012.  Additionally, there were

several instances in which production completely ceased for more than 60 days during that period:

April 2011 – June 2011 (3 months); November 2011 – April 2012 (6 months); June 2012 – August

2012 (2+ months).  These complete cessations of production also automatically terminated the

Blackwell Lease.

Additionally, John Winston Forrester has admitted that he has been on the lease property

an estimated 15-20 times since acquiring the Blackwell Lease, including as recently as two or three

weeks before his October 24, 2018 deposition.  *Forrester Deposition at 143*, **Exhibit B**.  As a

matter of law, force majeure is not preventing John Winston Forrester from accessing the property

covered by the Blackwell Lease.

Finally, John Winston Forrester attempts to rely on a series of ratifications he obtained in

2016.  As with the earlier ratifications, none of those ratifications were signed by W.T. Blackwell

or Annie May Blackwell - the lessors in the Blackwell Lease.  Instead, they were executed by

people who were not parties to the Blackwell Lease.

More importantly again, none of those 2016 ratifications changed any of the terms of the

Blackwell Lease, including the effective date and the primary term.  That ratified lease was still

"made this 8th day of November, 1967" and the five-year primary term still ran for "five (5) years from this date (called 'primary term')."  Blackwell Lease at 1 and ¶ 2, **Exhibit A-1**.

Each of the 2016 ratifications confirm that the Blackwell Lease is "dated November 8, 1967" and expressly state that the ratification is "in accordance with the terms and provisions of the above described lease."  *2016 Ratifications*, **Exhibit A-4**.  Those terms and provisions include the date of the Blackwell Lease and provide the starting date for the primary term of that lease "five (5) years from this date (called 'primary term')."  Thus, the primary term of the Blackwell Lease still ended in 1972.  Further, both the lack of production in paying quantities and complete cessations of production that have occurred since February 2016 still automatically terminated the Blackwell Lease.  As addressed above, Forrester may have secured a ratification of the leases, but that ratification did not amend or otherwise alter its terms.  At most, it merely ratified what was existing at the time of the ratification – a lease in which the primary term had ended in 1972 and in which the secondary term had long since terminated for lack of production, and that lack of production continued from the date of ratification until today.

With specific regard to this suit, the 2016 ratifications did not exist during the events upon which Plaintiffs' suit is premised.  Even if Forrester obtained an effective ratification in February 2016, no such ratification existed in October 2015, November 2015, or December 2015, which are the operative dates listed in paragraphs 26-37 of Plaintiffs' First Amended Complaint.

As discussed above, the summary judgment evidence establishes that, notwithstanding Plaintiffs' ratification and force majeure arguments:  the Blackwell Lease terminated before John Winston Forrester acquired it; the Blackwell Lease remained terminated throughout October, November, and December 2015; the Blackwell Lease is presently terminated; and the Forresters have no right, title, or interest in the mineral estate that was the subject of the Blackwell Lease.

**Property No. 69764 Was Never Subject to the Blackwell Lease**

As detailed in Plaintiff's First Amended Complaint, Plaintiffs' grievances with Mr. Brown appear to have their genesis in the Forresters repeated actions to "access the Blackwell lease via a gate on Farm Market Road 2966." *First Amended Complaint* at ¶ 26.  For example, Plaintiffs allege:  "Defendant John A. Hammack, an employee of Sheriff Brown, met Winston Forrester at the gate, shouting profanities and attempted to prevent Winston from entering upon the Blackwell lease—i.e. Winston Forrester's own property." *First Amended Complaint* at ¶ 26.

> A few days later, on or about October 26, 2015, Winston Forrester again went to his property on the Blackwell lease via the gate on FM 2966 . . . Just as they had days before, employees of the Wood County sheriff's office again arrived on the scene to harass and intimidate Winston Forrester, this time due to a claimed "trespassing complaint" despite the fact that Winston Forrester was on his own property and had an absolute right to extract minerals from the mineral estate.

*First Amended Complaint* at ¶ 28.

A major problem with these claims is that neither the referenced gate on FM 2966 nor the property on which that gate is located were ever subject to the Blackwell Lease.  They are not, and never were, John Winston Forrester's "own property" as he claims.  As illustrated in the map on page 4 of Plaintiffs' First Amended Complaint, this particular parcel of property is identified by number 69764.

Mr. Brown now moves for summary judgment that:  Property No. 69764 was never subject to the Blackwell Lease; that John Winston Forrester has no right, title, or interest in that property; and that John Winston Forrester has no right to enter or be on that property.

This particular issue should not take much of the Court's time.  Notwithstanding his expressions of outrage at being investigated for criminal trespass and his characterization of Property No. 69764 as his own property, John Winston Forrester has admitted that the Blackwell Lease does not include Property No. 69764. *Forrester Deposition at 36*, **Exhibit B**.  He has also

admitted that the gate on Farm to Market Road 2966 is not on the Blackwell Lease.  *Forrester Deposition at 31*, **Exhibit B**.  When asked if parcel number 69764 as shown on the map of Plaintiffs' First Amended Complaint is Winston Forrester's own property, John Winston Forrester admitted:  "Of course not."  *Forrester Deposition at 51*, **Exhibit B**.  He also admitted that when he was standing immediately to the west of the gate referenced on page 4 of Plaintiffs' First Amended Complaint on October 26, 2015, he was not standing on his own property.  *Forrester Deposition at 52*, **Exhibit B**.

The fact that John Winston Forrester has no ownership interest in Property No. 69764 is also confirmed by the relevant deeds and property records.  A summary of property records for Property No. 69764 is attached as part of *Washmon Affidavit and Attachments*, **Exhibit D**.  Those records reveal that Property No. 69764 is not part of the property that was subject to the Blackwell Lease.  *Washmon Affidavit and Attachments*, **Exhibit D**.  Those records also reveal that W.T. and Annie May Blackwell (the lessors of the Blackwell Lease) never had any ownership interest in Property No. 69764.  *Washmon Affidavit and Attachments*, **Exhibit D**.  Thus, W.T. and Annie May Blackwell had no mineral interest in Property No. 69764 to lease to J.R. Goldsmith as part of the Blackwell Lease.

John Winston Forrester knew before he ever filed this suit that he had no ownership interest in Property No. 69764 and had no right to cross that property to reach the property covered by the Blackwell Lease.  *E.g.*, *Testimony of John Winston Forrester in Cause No. 2015-613 (February 2, 2016) at 7, 25*, **Exhibit A-6**.  He also knew: (1) that there was a fence separating Property No. 69764 from FM 2966; (2) that there was a locked gate in that fence; (3) that there was a No Trespassing sign on that gate; (4) that he cut the chain securing that locked gate; (5) that he went through that gate onto Property No. 69764; (6) that he did not have permission from Mr. Brown to

cut that chain and come onto Property No. 69764 on October 24, 2015; and (7) that he did not have permission from Mr. Brown to cut that chain and come onto Property No. 69764 on October 26, 2015.  *Forrester Deposition at 41-44*, **Exhibit B**.  Thus, John Winston Forrester has effectively admitted that he committed Criminal Trespass.  TEX. PENAL CODE § 30.05.

Despite having all this knowledge before he filed the instant suit, John Winston Forrester nevertheless seeks damages premised on a claim that he had a right to cut that chain and come onto Property No. 69764.  *First Amended Complaint* at ¶¶ 26-29, 46-47.  Particularly in light of these continued assertions, James R. Brown is entitled to summary judgment that: (1) Property No. 69764 is not, and never was, subject to the Blackwell Lease; (2) John Winston Forrester does not have, and never had, any right, title, or interest in Property No. 69764; and (3) John Winston Forrester does not, and never had, any right to enter or be on Property No. 69764.

## Conclusion and Prayer

The summary judgment evidence establishes both the terminated status of the Blackwell Lease and that Property No. 69764 was never part of the Blackwell Lease.  Therefore, Mr. Brown is entitled to partial summary judgment for declaratory judgment that:

- The Blackwell Lease terminated before it was acquired by John Winston Forrester;

- The Blackwell Lease remained terminated throughout October – December 2015;

- The Blackwell Lease is presently terminated;

- The Forresters have no right, title, or interest in the mineral estate that was the subject of the Blackwell Lease;

- Property No. 69764 is not, and never was, subject to the Blackwell Lease;

- John Winston Forrester does not have, and never had, any right, title, or interest in Property No. 69764; and

- John Winston Forrester does not, and never had, any right to enter or be on Property No. 69764.

Therefore, James Brown respectfully prays that the Court grant this motion for partial summary judgment and for such other and further relief to which he may be entitled.

Respectfully submitted,


By:     /s/ James W. Hryekewicz
        GRANT D. BLAIES
        State Bar No. 00783669
        Email: grantblaies@bhilaw.com

        JAMES W. HRYEKEWICZ
        State Bar No. 00784298
        E-mail: jwh@bhilaw.com

BLAIES & HIGHTOWER, L.L.P.
421 W. Third Street, Suite 900
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)

ATTORNEYS FOR DEFENDANT/COUNTER-
PLAINTIFF JAMES A. BROWN

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2018, I electronically filed the foregoing document with the clerk for the U. S. District Court, Eastern District of Texas, using the Electronic Case Filing system of the Court, by way of which copies were served on counsel of record in this matter.

In addition, true and correct copies of the foregoing document were mailed to the following *pro se* parties:

John A. Hammack
782 CR 1326
Quitman, Texas 75783

Jerry Wayne Boone
320 CR 1326
Quitman, Texas 75783


/s/ James W. Hryekewicz
James W. Hryekewicz

# EXHIBIT

# A

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOHN WINSTON FORRESTER, et al, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:17-CV-561 |
| | § | |
| WOOD COUNTY, et al, | § | |
| Defendants | § | |

## AFFIDAVIT OF CECILIA BOTELLO

STATE OF TEXAS     §
COUNTY OF TARRANT     §

BEFORE ME, the undersigned authority, personally appeared Cecilia Botello, who, being by me duly sworn, deposed as follows:

1.     "My name is Cecilia Botello. I am over the age of eighteen (18) years, am of sound mind, suffer from no legal disabilities, have never been convicted of any crime or offense, and am competent to make this affidavit. I have personal knowledge of the matters stated herein, and based on the foregoing knowledge, such matters are true and correct."

2.     "I am a Legal Assistant with the law firm of Blaies & Hightower, L.L.P. In support of James Brown's Motion for Partial Summary Judgment, the following summary judgment evidence is attached to this Affidavit and to James A. Brown's Motion for Partial Summary Judgment, and is incorporated herein by reference:

3.     Attached as **Exhibit "A-1"** is a true and correct copy of documents produced by Plaintiffs bates-numbered WF250-WF252 (Blackwell Lease). Exhibit A-1 is incorporated herein by reference.

4.      Attached as **Exhibit "A-2"** is a true and correct copy of documents produced by Plaintiffs bates-numbered WF253-WF256 (Assignment and Bill of Sale). Exhibit A-2 is incorporated herein by reference.

5.      Attached hereto as **Exhibit "A-3"** is a true, accurate, and correct copy of documents produced by Plaintiffs bates-numbered WF1207-WF1216, WF1218-WF1223, WF1225-WF1227, WF1229-WF1232, WF1234-WF1237, (2010-11 Ratifications). Exhibit A-3 is incorporated herein by reference.

6.      Attached hereto as **Exhibit "A-4"** is a true, accurate, and correct copy of documents produced by Plaintiffs bates-numbered WF1359-WF1377 (2016 Ratifications). Exhibit A-4 is incorporated herein by reference.

7.      Attached hereto as **Exhibit "A-5"** is a true, accurate, and correct copy of Correspondence to Plaintiffs dated March 2, 2018 with fax confirmation sheet. Exhibit A-5 is incorporated herein by reference.

8.      Attached hereto as **Exhibit "A-6"** is a true, accurate, and correct copy of Excerpts from the testimony of John Winston Forrester in Cause No. 2015-613 (February 2, 2016) – Pages 1-4, 7, 13, 25, reporter's certification pages. Exhibit A-6 is incorporated herein by reference.

9.      Attached hereto as **Exhibit "A-7"** is a true, accurate, and correct copy of Excerpts from the testimony of Hubert C. Vaughn in Cause Nos. 23, 121-2017; 23,122-2017; and 23,331-2017 (March 27, 2018) – Pages 132-136, 140, 144, plus first pages and reporter's certification pages. Exhibit A-7 is incorporated herein by reference.

"Further Affiant sayeth not."

Cecilia Botello

Before me, $\underline{\text{Diana Bold}}$ , a Notary Public in and for the State of Texas, on this day personally appeared Cecilia Botello, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __/0ᵗʰ__ day of __December__ 2018.

```
         DIANA GOLD
   Notary Public, State of Texas
   Comm. Expires 12-10-2019
        Notary ID 793993
```

_____
Notary Public in and for the State of Texas

# A-1

386



PRODUCERS 88 REV. TEX. A                          (4-41)
                    OIL, GAS AND MINERAL LEASE    57547

THIS AGREEMENT made this __8th__ day of __November__ 19 __67__, between

__W. T. Blackwell and wife, Annie May Blackwell__

_____, of __Quitman, Texas__
                                          (Post Office Address)

hereto called lessor (whether one or more), and _____L. R. Goldsmith_____, lessee:

1. Lessor, in consideration of __Ten and No/100_____ Dollars ($ __10.00__ )
in hand paid, receipt of which is here acknowledged, and of the royalties herein provided and of the agreements of the lessee herein contained, hereby grants, leases and lets exclusively unto lessee for the purpose of investigating, exploring, prospecting, drilling, mining and operating for and producing oil, gas and all other minerals, laying pipe lines, storing oil, building tanks, power stations, telephone lines, and other structures thereon to produce, save, take care of, treat, transport and own said minerals and other products manufactured therefrom, and housing and otherwise caring for its employees, the following described land in _____Wood_____ County, Texas, to-wit:

NORTH One-Half of the following described 87.07 acres and being
the same 87.07 acres as described in Certified Field Notes by W.A.
Morrison Jr., filed for record on April 11, 1966, under File No. 49222,
Wood County, Texas described as,

BEGINNING at the N W corner of the J P Duncan survey, being also
an interior corner of the J Robbins survey Abst 484, and an interior
corner of the I.E. Johnson 86 acre tract;

THENCE SOUTH 89 deg 50 Min East along a south line of said Robbins
survey and the upper south line of the said Johnson 86 acre tract a dist-
ance of 623.3 vrs. to the upper south east corner of said Johnson 86
acre tract this being also the southwest corner of the J H McManus 76
acre tract and the Northwest corner of the J H McManus 5 acre tract;

THENCE S 0 deg 15 min W with the west line of the said McManus 5
acre tract a distance of 85 vrs to the southwest corner of said 5 acre
tract;

THENCE S 89 deg 50 min E. with the south line of the aforesaid
McManus 5 acre tract a distance of 402.2 vrs to the southeast corner of
same, being also a point on the west line of the Will McMillan 2.48
acre tract;

THENCE SOUTH 0 deg 35 min West with the west line of the said
Will McMillan 2.48 acre tract, the west line of the Dollie Turner 17.85
acre tract, the west line of the Tobe Willis 17.85 acre tract the west
line of the W.A. Howard et al 17.85 acre tract, the west line of the J.D.
and Dixie Banton et al 26.8 acre tract, the west line of the J.D. and
Dixie Banton 27.8 acre tract and the west line of the T H Rappe 14.9
acre tract, at a distance of 835 vrs a point for corner on the west line
of the said 14.9 acre tract, said point being also the Northeast
corner of the J H McManus 38 acre tract;

THENCE N 89 deg 50 Min W 495.4 vrs to the S.E. corner of 73
acres formerly owned by Terrell Howle, same being on the North line
of said 38 acre tract owned by J H McManus;

THENCE N 0 deg 45 min W with the east line of the said Howell
73 acre tract, a distance of 817.2 vrs. the Northeast corner of same;

THENCE S 87 deg 10 min W with the North line of said Howell
73 acre tract a distance of 510.9 vrs to the Northwest corner of said
Howell 73 acre tract being also a point on the west line of the aforemen-
tioned J. Robbins survey;

THENCE N 0 deg 16 min E 130.9 vrs to the place of beginning,
containing 87.07 acres of land, more or less, and being the tract of
land described as containing 85 acres more or less in deed dated July
29, 1935, from W. P. Blackwell to W.T. Blackwell recorded in Vol. 152,
Page 562, Deed Records of Wood County, Texas.

SIGNED FOR IDENTIFICATION: _W. T. Blackwell_

_Annie May Blackwell_

586
387

Thirty-eight and 00/100 ............ Dollars ($ 38.00 ............)

First National ............ Bank of ............ Guitman, Texas

W. T. Blackwell

Annie May Blackwell

Social Security No. 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

307

WF 00251

388

$\frac{586}{388}$

THE STATE OF TEXAS

COUNTY OF ____Wood____

BEFORE ME, the undersigned authority, a Notary Public in and for ____Wood____ County, Texas, on this day personally appeared ____W. T. Blackwell____ and ____Annie May Blackwell____ his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed; and the said _____

____Annie May Blackwell____, wife of the said ____W. T. Blackwell____ having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said

____Annie May Blackwell____ acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it.

Given under my hand and seal of office this ____8th____ day of ____November____ A. D. 19_67.

_____

Notary Public ____Wood____ County, Texas.

FILED FOR RECORD THE _8th_ DAY OF _November_ A. D. 1967 AT 3:50 O'CLOCK P.M.
RECORDED THIS THE _15th_ DAY OF _November_ A. D. 1967 AT 2:30 O'CLOCK P.M.
BY _M. Bridges_ DEPUTY    J. A. GLENN, COUNTY CLERK - WOOD COUNTY, TEXAS.

WF 00252

# A-2


2015-00011548  Pages:4 Kelley Price Wood County

### Assignment, Bill of Sale and Conveyance

THIS ASSIGNMENT, BILL OF SALE AND CONVEYANCE (this "Assignment"), effective as of 12:00 a.m. (local time) on October 1, 2015 (the "Effective Time"), is made from VOGO, Inc., a Texas Corporation, (Assignor), whose address is 776 Farm Road 1536, Sulphur Springs, Tx 75482, to John Forrester (Assignee), whose address is 6894 FM 1650 Gilmer, Tx 75645.

### ARTICLE I

### Granting and Habendum

For Ten Dollars ($10.00) and other good and valuable consideration, the receipt, and sufficiency of which are hereby acknowledged, Assignor does hereby grant, bargain, sell, transfer, convey, set over, assign and deliver unto assignee, their successors and assigns, effective for all purposes as of the Effective Time and subject to the matters set forth herein, the Assets. The term "Assets" shall mean all of Assignor's right, title and interest in and to the following:

A. The oil, gas and/or mineral leases and fee mineral interests specifically described in Exhibit "A" (the "Leases"), including without limitation all leasehold estates and interests, all royalty, production payment, reversionary, net profit, contractual working interests and other similar rights and estates therein, the lands described in Exhibit "A" (the "Lands") and the oil, gas and other Hydrocarbons (the "Hydrocarbons") attributable to the Leases or Lands, including all rights in any pooled, unitized or communitized acreage by virtue of the Lands or Leases being a part thereof and all Hydrocarbons produced from the pool or unit allocated to any such Lands or Leases;

B. The wells specifically described in Exhibit "A" (the "Wells"), together with all other oil and gas wells and all water, injection and disposal wells on the Lands or on Lands pooled, communitized or unitized therewith, whether producing , shut-in or temporarily abandoned, and all personal property, equipment, fixtures, improvements, permits, water discharge permits, gathering lines, rights-of-way and easements located on the Lands or used in connection with the production, gathering , treatment, processing, storing, transportation, sale or disposal of Hydrocarbons or water produced from the properties and interests described in Section A above;

C. The unitization agreements, and all other such agreements relating to the properties and interests described in Section A and B above and to the production of Hydrocarbons, if any, specifically attributable to said properties and interests, (the "Contracts") but excluding any contracts, agreements or instruments to the extent transfer would result in a violation of applicable law or is subject to a Required Consent that is not waived by Assignee or obtained or otherwise satisfied by Assignor;

WF 00253

TO HAVE AND TO HOLD the Assets, together with all and singular the rights, privileges, contracts and appurtenances, in any way appertaining or belonging thereto, unto Assignee, its successors and assigns, forever, subject to the matters set forth herein.

## ARTICLE II
### Special Warranty of Title

Section 2.01 Special Warranty of Title. Assignor hereby agrees to warrant and defend title to the Assets solely unto Assignee against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Assignor, but not otherwise.

## ARTICLE III
### Miscellaneous

Section 3.01 Construction. The captions in this Assignment are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Assignment.

Section 3.02 No Third Party Beneficiaries. Nothing in this Assignment shall provide any benefit to any third party or entitle any thirty party to any claim, cause of action, remedy or right of any kind, it being the intent of the parties hereto that this Assignment shall otherwise not be construed as a third party beneficiary contract.

Section 3.03 Assignment. This Assignment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 3.05 Counterpart Execution. This Assignment may be executed in any number of counterparts, and each counterpart hereof shall be effective as to each party that executes the same whether or not all of such parties execute the same counterpart. If counterparts of this Assignment are executed, the signature pages from various counterparts may be combined into one composite instrument for all purposes. All counterparts together shall constitute only one Assignment, but each counterpart shall be considered an original.

Section 3.07 Leases. It is the intent of Assignor and Assignor does hereby assign to assignee all oil, gas and mineral leases associated with the Wells, whether described on Exhibit "A" or not.

IN WITNESS WHEREOF, this Assignment is executed by the parties on the date of their respective acknowledgments below, but shall be effective for all purposes as of the Effective Time.

WF 00254

## Exhibit "A"

Attached to and made a part of that certain Assignment and Bill of Sale between

VOGO, Inc. & John Forrester

Dated October 1, 2015

| | |
|---|---|
| Well: | W.T. Blackwell #1    42-499-02603 |
| Lease#: | 05321 |
| Lessor: | W.T. Blackwell et us |
| Lessee: | J.R. Goldsmith |
| Date: | November 8, 1967 |
| Recording: | Volume 586, page 386 |
| Description: | North half of an 87.07 acre tract out of the J.P. Duncan Survey, |
| | A-166, Wood County, Texas |

WF 00255

**ASSIGNOR:**

**VOGO, Inc.**

By: _____

Name: __Hubert C. Vaughn__

Title: __President__

**ACKNOWLEDGEMENT**

State of Texas          }
County of Wood          }

The forgoing instrument was acknowledged before me on the 1st day of October, 2015, by Hubert C. Vaughn, as President of VOGO, Inc., a Texas Corporation, on behalf of said corporation.

My commission expires: 09-09-2019          _____
                                            Notary Public in and for the State of Texas

> LORRIE J. MADSEN
> NOTARY PUBLIC
> STATE OF TEXAS
> My Comm. Expires 09-09-2019

THE STATE OF TEXAS
COUNTY OF WOOD
I hereby certify that this instrument was FILED on the date and the time stamped hereon by me and was duly RECORDED in the OPR Records of Wood County, Texas.

2015-00011546  spyron
10/05/2015 02:43 PM

_____
Kelley Price, County Clerk
Wood County, Texas

WF 00256

# A-3

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Linda Thompson Gordon, 325 N Saint Paul, Suite 4300, Dallas, TX  75201
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_____
Linda Thompson Gordon

### ACKNOWLEDGMENT

STATE of __Texas__ )(

COUNTY of __Dallas__ )(

This instrument was acknowledged before me, this 12th day of January, 2010, by Linda Thompson Gordon.

_____
Notary Public, State of __Texas__

> HELEN K BEARDEN
> Notary Public, State of Texas
> My Commission Expires
> February 16, 2012

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood        *605 PRAIRIE WAY    WICHITA FALLS, TX 76310*
Lessor: Lynn Thompson Connolly, 2300 Farington, Wichita Falls, TX 76308
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Lynn Thompson Connolly_
Lynn Thompson Connolly

**ACKNOWLEDGMENT**

STATE of __TX__  )(

COUNTY of __Wichita__ )(

This instrument was acknowledged before me, this __22__ day of __December__, 20__10__, by

_Sally R. Mills_
Notary Public, State of __TX__

SALLY R. MILLS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 3-10-2012

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Mary Alice B. Butler, P.O. Box 414, Quitman, TX 75783-0414
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

*Mary Alice Butler*

Mary Alice B. Butler

### ACKNOWLEDGMENT

STATE of Texas ){

COUNTY of Wood ){

This instrument was acknowledged before me, this 22nd day of December, 2010, by Mary Alice B. Butler.

*Sylvia A Geyer*

Notary Public, State of Texas

[Notary Seal: SYLVIA ANN GEYER, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 12-16-2012]

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Jean C. Thompson, 325 N Saint Paul, Suite 4300, Dallas, TX 75201-3993
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Jean C. Thompson_
Jean C. Thompson

ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _22nd_ day of _December_, 20_10_, by _Jean C. Thompson_.

_Helen K. Bearden_
Notary Public, State of _Texas_

HELEN K BEARDEN
Notary Public, State of Texas
My Commission Expires
February 15, 2012

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

WF 001210

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Betty J. Lammers, 6104 Averill Way, Apt A, Dallas, TX 75225
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Betty J. Lammers_
Betty J. Lammers

### ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _22_ day of _December_, 20_10_, by _Betty S. Lammers_.

_Brenda Ruth Smith_
Notary Public, State of _Texas_

BRENDA RUTH SMITH
MY COMMISSION EXPIRES
May 14, 2014

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Tom J. Blackwell, Jr., 2203 Willow Way, Round Rock, TX 78664-7758
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Tom J. Blackwell, Jr.

ACKNOWLEDGMENT

STATE of __Texas__ )(

COUNTY of __Williamson__ )(

This instrument was acknowledged before me, this 23rd day of December, 2010, by MARISA R. HART .

Notary Public, State of Texas


MARISA ROSE HART
MY COMMISSION EXPIRES
April 14, 2014

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Thompson Petroleum Corporation, 325 N Saint Paul, Suite 4300, Dallas, TX 75201-3806
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith,
Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands,
(the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights,
title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject
herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same
manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is
effective for all purposes as of the Effective Dates of the Leases stated above.

THOMPSON PETROLEUM CORPORATION

By: _____
Christy Thompson, Vice-President

### ACKNOWLEDGMENT

STATE of Texas )(

COUNTY of Dallas )(

This instrument was acknowledged before me, this 23 day of December, 2010, by
A. Christy Thompson as Vice-President for the purposes
herein expressed and in the capacity herein stated.

Helen K. Bearden
Notary Public, State of Texas

HELEN K BEARDEN
Notary Public, State of Texas
My Commission Expires
February 15, 2012

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Louis H. Kuntz, 2118 Hilltop Court, Fullerton, CA 92831-1311
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Louis H. Kuntz

### ACKNOWLEDGMENT

STATE of _____ )(

COUNTY of _____ )(

This instrument was acknowledged before me, this _____ day of _____, 20___, by

_____.

PLEASE SEE CALIFORNIA ALL-PURPOSE
ACKNOWLEDGEMENT

_____
Notary Public, State of _____

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Louis H. Kuntz, 2118 Hilltop Court, Fullerton, CA 92831-1311
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith,
Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands,
(the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights,
title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject
herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same
manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is
effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Louis H. Kuntz

ACKNOWLEDGMENT

STATE of _____ )(

COUNTY of _____ )(

This instrument was acknowledged before me, this _____ day of _____, 20___, by

_____.

_____
Notary Public, State of _____

PLEASE SEE CALIFORNIA ALL-PURPOSE
ACKNOWLEDGEMENT

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of ___ORANGE___

On ___DEC. 27, 2010___ before me, ___HELENE ANDA   NOTARY PUBLIC___,
   Date                                    Here Insert Name and Title of the Officer

personally appeared ___LOUIS HENRY KUNTZ___
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies); and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**HELENE ANDA**
Commission # 1902613
Notary Public – California
Orange County
My Comm. Expires Sep 3, 2014

Signature: ___Helene Anda___
                Signature of Notary Public

Place Notary Seal Above

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: ___RATIFICATION OF OIL + GAS LEASE___

Document Date: ___11-8-67___                          Number of Pages: ___1___

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ___LOUIS HENRY KUNTZ___

☐ Corporate Officer — Title(s): _____
☑ Individual
☐ Partner — ☐ Limited ☐ General
☑ Attorney in Fact
☑ Trustee
☑ Guardian or Conservator
☑ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____

☐ Corporate Officer — Title(s): _____
☐ Individual
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)                    Item #5907

## RATIFICATION OF OIL AND GAS LEASE

(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Mary Ann Ayres, P.O. Box 25231, Dallas, TX 75225
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Mary Ann Ayres
Mary Ann Ayres

ACKNOWLEDGMENT

STATE of ____Texas____ )(

COUNTY of __Dallas__ )(

This instrument was acknowledged before me, this __28th__ day of __December__, 2010, by __Mary Ann Ayres__.

Rhonda Weete
Notary Public, State of ___Texas___

RHONDA JO WEETE
Notary Public, State of Texas
My Commission Expires
October 10, 2013

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Lois Duvall Cannady, P.O. Box 372, Cedar Hill, TX 75104
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Lois Duvall Cannady_
Lois Duvall Cannady

ACKNOWLEDGMENT

STATE of _TEXAS_ )(
COUNTY of _DALLAS_ )(

This instrument was acknowledged before me, this _28th_ day of _December_, 20_10_, by _LOIS DUVALL CANNADY_.

_Q. D. Mobly_
Notary Public, State of _TEXAS_

PATRICIA D. MOBLEY
Notary Public
State of Texas
Comm. Expires 07-01-2013

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: John Robert Goldsmith, Jr., 6612 Whitemarsh Valley Walk, Austin, TX 78746
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_John Robert Goldsmith, Jr._

**ACKNOWLEDGMENT**

STATE of _Texas_ )(

COUNTY of _Travis_ )(

This instrument was acknowledged before me, this _28th_ day of _December_, 20_10_, by _John Robert Goldsmith, Jr._.

_Cheryl K. Walters_
Notary Public, State of _Texas_

CHERYL K. WALTERS
My Commission Expires
January 24, 2015

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Robert L. Myers, 3812 Marquette Street, Dallas, TX 75225
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Robert L. Myers_
Robert L. Myers

**ACKNOWLEDGMENT**

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _29_ day of _December_, 20_10_, by

_Jan P Beeman_

_JAN P BEEMAN_
Notary Public, State of _TEXAS_

```
JAN P. BEEMAN
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
03-17-2012
```

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Marie G. Baldwin, 8523 Thackeray Street, #2308, Dallas, TX 75225-3910
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

*Marie G. Baldwin*
Marie G. Baldwin

### ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _30_ day of _December_, 20 _10_, by _Marie G. Baldwin_.

*Sara C. Sanderson*
Notary Public, State of _Texas_

```
SARA E. SANDERSON
Notary Public, State of Texas
My Commission Expires
June 17, 2013
```

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

WF 001222

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Carolyn Jane Goldsmith James, P.O. Box 717, Port Aransas, TX 78373-0717
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43,535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Carolyn Jane Goldsmith James — PLEASE NOTE NAME CHANGE

ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Uvalde_ )(

This instrument was acknowledged before me, this ___ day of _____, 20 __, by _Carolyn Jane James_ .

ARLENE S. DUENES
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-16-2012

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Linda M. Nichols, P.O. Box 823, Whitehouse, TX  75791
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Linda M. Nichols_
Linda M. Nichols

ACKNOWLEDGMENT

STATE of __Texas__ )(

COUNTY of __Smith__ )(

This instrument was acknowledged before me, this __4th__ day of __January__, 20__11__, by __Verification of TX DL__ .

_Ashley Hammond_
Notary Public, State of __Texas__

> ASHLEY HAMMOND
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. AUG. 11, 2012

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood                    4420 Glenwick                    75-205
Lessor: Leone Sanders Thompson III, ~~9352 Stratford Way,~~ Dallas, TX ~~75220~~
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith,
Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands,
(the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights,
title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject
herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same
manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is
effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Leone Sanders Thompson III_

Leone Sanders Thompson III

**ACKNOWLEDGMENT**

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _4_ day of _January_, 20_11_, by
_Leone Sanders Thompson III_

_Cheryl A Bozarth_

Notary Public, State of _Texas_

CHERYL A BOZARTH
My Commission Expires
May 17, 2011

WF 001226

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Kelly H. Baxter Estate, Ashley Baxter, Executor, P.O. Box 1649, Austin, TX 78767
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor: Kelly H. Baxter Estate

By: _Ashley Baxter_
Title: _Executrix_

### ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Travis_ )(

This instrument was acknowledged before me, this _4th_ day of _January_, 20 _11_, by _Ashley Baxter_ as _Executrix_ for the purposes herein expressed and in the capacity herein stated.

_[signature]_
Notary Public, State of _Texas_

CORY CLIFTON
Notary Public, State of Texas
My Commission Expires
May 03, 2014

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Mary Ann Goldsmith, P.O. Box 60064, Corpus Christi, TX  78466-0064
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

Mary Ann Goldsmith

**ACKNOWLEDGMENT**

STATE of _Texas_ )(

COUNTY of _Nueces_ )(

This instrument was acknowledged before me, this _7th_ day of _January_, 20_10_, by _JF_

Notary Public, State of _O 7 - 1 5 - 20 1 2_

ANDREA FORD
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
07-15-2012

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: American Assurance 2000, LP, P.O. Box 41027, Houston, TX 77241-1027
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith,
Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands,
(the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights,
title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject
herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same
manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is
effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor: American Assurance 2000, LP

By: _____
Title: _BRAD COX, CFO_____

### ACKNOWLEDGMENT

STATE of _____ )(

COUNTY of _____ )(

This instrument was acknowledged before me, this _____ day of _____, 20___, by
_____, as _____ for the purposes
expressed herein and in the capacity therein stated.


_____
Notary Public, State of _____

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _____ San Diego _____

On _07 Jan 2011_ before me, _____ Kurt Hartman, Notary Public _____,
(Here insert name and title of the officer)

personally appeared _Brad Cox_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Notary Public

(Notary Seal)

KURT HARTMAN
COMM. # 1912799
NOTARY PUBLIC - CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires Nov. 11, 2014

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

### DESCRIPTION OF THE ATTACHED DOCUMENT

Ratification of Oil & Gas Lease
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _1_ Document Date_____

_____
(Additional information)

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer
  CFO
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

WF 001231

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood                                    75219
Lessor: Jack C. Myers, 3401 Lee Parkway, #2206, Dallas, TX 75229
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_Jack C. Myers_ (signature)

Jack C. Myers

ACKNOWLEDGMENT

STATE of ___Texas___ )(

COUNTY of ___Dallas___ )(

This instrument was acknowledged before me, this __10th__ day of ___January___, 20_11_, by
___Jack C. Myers___.

_Rhonda Voight_ (signature)
Notary Public, State of ___Texas___

RHONDA VOIGHT
Notary Public, State of Texas
Commission Expires 07-27-2013

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

WF 001232

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: James Goss, 3509 Centenary Drive, Dallas, TX  75225
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

_James Goss_
James Göss

ACKNOWLEDGMENT

STATE of _Texas_ )(

COUNTY of _Dallas_ )(

This instrument was acknowledged before me, this _13_ day of _January_, 20_11_, by _James Goss_.

_A Dee Hearn_
Notary Public, State of _Texas_

> A. DEE HEARN
> MY COMMISSION EXPIRES
> January 22, 2012

**RATIFICATION OF OIL AND GAS LEASE**

(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Brenda G. Carey, 4225 Stonebrook Lane, Tyler, Texas 75707-5475
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

*Brenda G. Carey*
Brenda G. Carey

ACKNOWLEDGMENT

STATE of __Texas__ )(

COUNTY of __Smith__ )(

This instrument was acknowledged before me, this 14th day of __January__ , 20 11 , by __Tyler Miller__ .

*Tyler Miller*
Notary Public, State of __Texas__

```
        TYLER MILLER
  Notary Public, State of Texas
     My Commission Expires
       January 25, 2014
```

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: Rebecca Blackwell Appel, 6533 Brunton Court, Tyler, TX 75703
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith,
Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands,
(the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights,
title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject
herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same
manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is
effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor:

*Rebecca Blackwell Appel*
Rebecca Blackwell Appel

### ACKNOWLEDGMENT

STATE of  TEXAS  )(

COUNTY of  SMITH  )(

This instrument was acknowledged before me, this 27th day of JANUARY , 2011, by
Rebecca B. Appel

*Sara Collins*
Notary Public, State of TEXAS

SARA O. COLLINS
My Commission Expires
July 21, 2012

## RATIFICATION OF OIL AND GAS LEASE
(By Mineral Owner / Lessor)\

State: Texas
County: Wood
Lessor: JD Minerals, P.O. Box 1540, Corpus Christi, TX  78373-0717
Effective Date: Dates of subject oil, gas, and mineral leases described herein:

Oil, and Gas Lease, Dated 11/8/67, from W. T. Blackwell et ux to J.R. Goldsmith, Recorded in Volume 586, Page 386, Deed Records, Wood County, Texas

Lessor, named above, is the owner of an undivided mineral interest in the following lands, (the "Lands"), and subject well, located in the county and state named above:

Quitman Construction Company – W. T. Blackwell No. 1 Well located in:

43.535 acres, more or less, out of the J. P. Duncan Survey, A-166, Wood County, Texas

For adequate consideration, Lessor ratifies, affirms, and adopts, as to all of Lessor's rights, title, and interests in the oil, gas, and other minerals on, in, or under the said Lands, and the subject herein described Oil and Gas Leases, and Wells, covering and affecting the Lands.

This Ratification is to be effective and binding on Lessor to the same extent and in the same manner as if Lessor had originally executed the Lease as a Lessor.

This Ratification is signed by Lessor as of the date of the acknowledgment below, but is effective for all purposes as of the Effective Dates of the Leases stated above.

Lessor: JD Minerals

By: _____

Title: _Sole proprietor___

ACKNOWLEDGMENT

STATE of _Texas_____ )(

COUNTY of _Nueces__ )(

This instrument was acknowledged before me, this _18_ day of _February_____, 20_11_, by _James H. Davis_____ as _sole proprietor_____ for the purposes herein expressed and in the capacity herein stated..

_____
Notary Public, State of _Texas_



HOLLY WILLIAMS
Notary Public, State of Texas
My Commission Expires
April 22, 2012

Ratification of Oil and Gas Lease (By Mineral Owner)
www.oilandgasforms.com

WF 001237

# A-4

## LEASE RATIFICATION

This agreement, made this _____ day of January, 2016, between Mary Ann Ayres ("First Party"), and John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T. Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in said County:

> North One-Half of a described 87.07 acres as more fully described in the Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966, under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_Mary Ann Ayres_
Name

Date: _1-14-16_, 2016

WF 001359

## ACKNOWLEDGEMENT

STATE OF TEXAS}

COUNTY OF Dallas }

This foregoing instrument was acknowledged before me on this 14 day of January, 2016 by

Mary Ann Ayres.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Christin Camille Randall
NOTARY PUBLIC, State of Texas

CHRISTIN CAMILLE RANDALL
MY COMMISSION EXPIRES
August 10, 2019

**LEASE RATIFICATION**

This agreement, made this  16  day of January, 2016, between Lynn Thompson Connolly ("First Party"), and John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T. Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in said County:

> North One-Half of a described 87.07 acres as more fully described in the Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966, under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby expressly acknowledged by First Party, the parties agree as follows:

1.  First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2.  First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3.  The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4.  The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_Lynn Thompson Connolly_
Name

Date:  1 – 16 _____, 2016

## ACKNOWLEDGEMENT

STATE OF TEXAS}

COUNTY OF Wichita }

This foregoing instrument was acknowledged before me on this 16th day of January, 2016 by

Lynn Thompson Connolly

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

BELINDA BLACKWELL
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 10-09-2016

Belinda Blackwell
NOTARY PUBLIC, State of Texas

## LEASE RATIFICATION

This agreement, made this _19th_ day of January, 2016, between Linda M. Nichols ("First Party"), and

John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_Linda M. Nichols_
Name

Date: _1 - 19 - 16_ , 2016

**ACKNOWLEDGEMENT**

STATE OF TEXAS}

COUNTY OF _Smith_ }

This foregoing instrument was acknowledged before me on this _19th_ day of January, 2016 by

_Linda Nichols_.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

CHEREE CARNES
My Notary ID # 129733421
Expires March 4, 2019

_Cheree Carnes_

NOTARY PUBLIC, State of Texas

## LEASE RATIFICATION

This agreement, made this 21st day of January, 2016, between Brenda G. Carey ("First Party"), and

John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

Brenda Carey Whattoff
Name

Date: 1 / 21 / _____ , 2016

## ACKNOWLEDGEMENT

STATE OF TEXAS}

COUNTY OF Smith }

This foregoing instrument was acknowledged before me on this 21 day of January, 2016 by.

Brenda Whattoff.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

DORENE K FOOS
My Commission Expires
February 17, 2017

NOTARY PUBLIC, State of Texas

WF 001366

## LEASE RATIFICATION

This agreement, made this 25th day of January, 2016, between Lois Duvall Cannady ("First Party"), and

John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_Lois Duvall Cannady_
Name

Date: _1-25_ , 2016

WF 001367

## ACKNOWLEDGEMENT

STATE OF TEXAS}

COUNTY OF _Dallas_}

This foregoing instrument was acknowledged before me on this _25_ day of January, 2016 by

_Lois Duvall Cannady._

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

SUMMER D. POPE
Notary Public, State of Texas
My Commission Expires
May 05, 2019

NOTARY PUBLIC, State of Texas

WF 001368

## LEASE RATIFICATION

This agreement, made this 28^TH^ day of January, 2016, between Louis H. Kuntz ("First Party"), and John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T. Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_____
Name

Date: Jan 28, , 2016

LOUIS H. KUNTZ
2118 HILLTOP CT.
FULLERTON, CA 92831
714-870-0606
LOUISAIL @ SBC GLOBAL. NET

# CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT
### (CALIFORNIA CIVIL CODE § 1189)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA }

COUNTY OF _Orange_ }

On _January 28, 2016_ before me, _Gloria Smith Notary Public_
(Date) (Here Insert Name and Title of the Officer)

personally appeared _Louis Kuntz_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Gloria Smith Notary Public_
Signature of Notary Public                    (Notary Seal)

> **GLORIA SMITH**
> Commission # 2135675
> Notary Public - California
> Orange County
> My Comm. Expires Dec 4, 2019

_____ADDITIONAL OPTIONAL INFORMATION_____

Description of Attached Document

Title or Type of Document: _Lease Certification_ Document Date: _1/28/16_

Number of Pages: _____ Signer(s) Other Than Named Above: _____

Additional Information: _____

revision date 01/01/2015

**A C K N O W L E D G E M E N T**

STATE OF TEXAS}

COUNTY OF _____}

    This foregoing instrument was acknowledged before me on this _____ day of January, 2016 by

_____.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                             _____
                                             NOTARY PUBLIC, State of Texas

                                            SEE ATTACHED
                                             CALIFORNIA
                                          ACKNOWLEDGEMENT

### LEASE RATIFICATION

This agreement, made this _31²__ day of January, 2016, between Linda Thompson Gordon ("First Party"),

and John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease,

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

_____

Name

Date: _1-31_____, 2016

## ACKNOWLEDGEMENT

STATE OF TEXAS}

COUNTY OF _Dallas_ }

This foregoing instrument was acknowledged before me on this _31st_ day of January, 2016 by

_Linda T Gordon_ .

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Denisa L Klein
Notary Public, State of Texas
My Commission Expires
July 25, 2017

ID# 10894758

NOTARY PUBLIC, State of Texas

WF 001373

## LEASE RATIFICATION

This agreement, made this _17th_ day of ~~January~~ Feb, 2016, between Kate McSpadden Goode ("First Party"),

and John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby grant, lease, and let the above described lands to Second Party in accordance with the terms and provisions of the above described lease, to the full extent of First Party's right, title and interest in and to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives, successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

Kate McSpadden Goode
_____
Name

Date: 2/17/16 _____, 2016

## A C K N O W L E D G E M E N T

STATE OF TEXAS}

COUNTY OF _Denton_ }

This foregoing instrument was acknowledged before me on this _17_ day of ~~January,~~ Feb 2016 by

_Shelly Allen_ .

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

NOTARY PUBLIC, State of Texas

SHELLY RENEE ALLEN
Notary Public
STATE OF TEXAS
My Comm. Exp. April 22, 2017

WF 001375

## LEASE RATIFICATION

This agreement, made this 2⁴ day of January, 2016, between Robert L. Myers ("First Party"), and

John W. Forrester ("Second Party"), witnesseth:

Whereas Second Party is the owner of a certain oil and gas lease dated November 8, 1967, between W. T.

Blackwell and wife, Annie May Blackwell, lessor, and J.R. Goldsmith, lessee, recorded Volume 586, Page 386 of

the Deed Records of Wood County, Texas, in so far as the said lease covers the following described lands located in

said County:

> North One-Half of a described 87.07 acres as more fully described in the
> Certified Field Notes by W.A. Morrison, Jr. filed for record on April 11, 1966,
> under File No. 49222, Wood County, Texas

Whereas, it is the desire of First Party to, ratify and confirm the above described oil and gas lease.

Now, therefore, in consideration of the premises and the sum of Ten Dollars ($10.00) and other good and

sufficient consideration in hand paid to First Party by Second Party, the receipt and sufficiency of which are hereby

expressly acknowledged by First Party, the parties agree as follows:

1. First Party ratifies and confirms the above described oil and gas lease, and First Party does hereby
   grant, lease, and let the above described lands to Second Party in accordance with the terms and
   provisions of the above described lease, to the full extent of First Party's right, title and interest in and
   to the oil, gas and other minerals on or underlying said lands.

2. First Party releases and waives all rights under and by virtue of the homestead exemption laws of the
   state in which said above described lands are located.

3. The parties agree that this instrument shall be binding upon them, their heirs, personal representatives,
   successors, and assigns.

4. The parties agree to take all further actions and execute, acknowledge, and deliver all necessary or
   useful documents to carry out the purpose of this Lease.

Executed the day and year first above set forth.

Name

Date: _____ , 2016

## A C K N O W L E D G E M E N T

STATE OF TEXAS}

COUNTY OF DALLA }

This foregoing instrument was acknowledged before me on this 21th day of January, 2016 by
~~January~~ February

Robert L Myers.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

TRACY JETER
Notary Public, State of Texas
My Commission Expires
January 22, 2018

NOTARY PUBLIC, State of Texas

# A-5



## BLAIES & HIGHTOWER, L.L.P.

James W. Hryekewicz

421 W. Third Street, Suite 900
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)
www.bhilaw.com

Direct: 817-334-8293
jwh@bhilaw.com

March 2, 2018

Via Facsimile 972-668-6414
Wm. Andrew Messer
Brett Gardner
Ashley McSwain
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034

Re:   Case No. 2015-613, *Forrester v. Brown, et al.*

Dear All:

I have taken a quick look at the documents you have produced so far in this matter. Several types of documents I would expect to have found do not appear to have been produced.

As the validity of the mineral lease at issue, and any right of John Winston Forrester to come onto my client's property are at issue in this suit, I would expect to see documents relating to those subjects. Typical documents would include:

- your client's due diligence file, which would include your client's title investigation on the lease;

- well production and royalty data for that lease;

- documents relating to reworking or additional drilling operations at that lease;

- documents relating to the easement referenced in the temporary restraining orders obtained by Forrester in the earlier state court suit;

- any additional documents relating to Forrester's investigation into the validity and scope of the lease at issue.

If you have any additional documents and tangible things exist that relating to these issues, I would appreciate it if you would forward them to me as soon as possible.

Sincerely,

/s/ James W. Hryekewicz

James W. Hryekewicz

P. 1

**x  x  x  Communication Result Report ( Mar. 2. 2018  2:34PM ) x  x  x**

2)  Blaies & Hightower, L.L.P.

Date/Time: Mar. 2. 2018  2:34PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 9830 | Memory TX | 9726686414 | P.  1 | OK | |

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size

E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

---

**B●H**

**BLAIES & HIGHTOWER, LLP**

James W. Hryekewicz

421 W. Third Street, Suite 900
Fort Worth, Texas 76102
817-334-0160 (Telephone)
817-334-0274 (Facsimile)
www.bhilaw.com

Direct: 817-334-8293
jwh@bhilaw.com

March 2, 2018

Via Facsimile 972-668-6414
Wm. Andrew Messer
Brett Gardner
Ashley McSwain
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034

Re:   Case No. 2015-613, *Forrester v. Brown, et al.*

Dear AB:

I have taken a quick look at the documents you have produced so far in this matter. Several types of documents I would expect to have found do not appear to have been produced.

As the validity of the mineral lease at issue, and any right of John Winston Forrester to recover under my client's property are at issue in this suit, I would expect to see documents relating to those subjects. Typical documents would include:

• your client's due diligence file, which would include your client's title investigation on the lease;

• well production and royalty data for that lease;

• documents relating to reworking or additional drilling operations at that lease;

• documents relating to the easement referenced in the temporary restraining orders obtained by Forrester in the earlier state court suit;

• any additional documents relating to Forrester's investigation into the validity and scope of the lease at issue.

If you have any additional documents and tangible things that exist that relating to those leases, I would appreciate it if you would forward them to me as soon as possible.

Sincerely,

/s/ James W. Hryekewicz

James W. Hryekewicz

# A-6

1

1                     REPORTER'S RECORD
                  VOLUME ____ OF ___ VOLUMES

2

          TRIAL COURT CAUSE NO. 2015-613

3

4   JOHN FORRESTER           )  IN THE DISTRICT COURT
                       )

5                       )
                       )

6   VS.                  )  WOOD COUNTY, TEXAS
                       )

7                       )
                       )

8   JAMES A. BROWN & JERRY   )
   WAYNE BOONE            )  402ND JUDICIAL DISTRICT

9

10

11

12             ------------------------------

13          **TEMPORARY RESTRAINING ORDER**

14             ------------------------------

15

16

17

18     On the 2nd day of February, 2016, the following

19  proceedings came on to be heard in the above-entitled

20  and numbered cause before the Honorable G. Timothy

21  Boswell, Judge presiding, held in Quitman, Wood County,

22  Texas;

23

24     Proceedings reported by machine shorthand.

25

1                        A P P E A R A N C E S

2

FOR THE PLAINTIFF:

3         SBOT NO. 24040600
          MR. BRENT WILSON BULL

4         BULL & BARRETT, P.L.L.C.
          1127 Judson Road

5         Suite 120
          Longview, Texas 75601

6         903.212.7005

7

FOR THE DEFENDANT JAMES A. BROWN:

8         SBOT NO. 15520000
          MR. DOUGLAS PARKS

9         ATTORNEY AT LAW
          321 Calm Water Lane

10        Holly Lake Ranch, Texas 75765
          903.769.3120

11

12   FOR THE DEFENDANT JERRY WAYNE BOONE:
          PRO SE

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CHRONOLOGICAL INDEX
                     VOLUME ___ OF
2                  (TEMPORARY RESTRAINING ORDER)
    FEBRUARY 2, 2016
3                                              Page      Vol.

4   Announcements. . . . . . . . . . . . .        4       --

5   Opening Statement BY MR. BULL. . . . . .        4       --
    Opening Statement BY MR. PARKS . . . . .       10       --
6   Opening Statement BY MR. BOONE . . . . .       11       --

7   PLAINTIFF'S WITNESSES
                        Direct    Cross   Voir Dire  Vol.
8   JOHN WINSTON FORRESTER   13,57    40,69     --       --
                                      71
9   JERRY WAYNE BOONE         73        --        --       --
    JAMES A. BROWN            83        --        --       --
10
                                              Page      Vol.
11
    Plaintiff rests. . . . . . . . . . . . .       96       --
12
    Defendants rests. . . . . . . . . . . .       96       --
13
    Closing Arguments MR. BULL. . . . . . . .       97       --
14  Closing Arguments MR. PARKS . . . . . . .       99       --

15  Court's Ruling. . . . . . . . . . . . .      100       --

16  Adjournment. . . . . . . . . . . . . .      110       --

17  Court Reporter's Certificate. . . . .  .      111       --

18                     ALPHABETICAL INDEX
                     VOLUME -- OF --
19                    TRIAL ON MERITS
    WITNESSES                 DIRECT    CROSS    VOIR DIRE  Vol.
20  JERRY WAYNE BOONE          73        --        --       --
    JAMES A. BROWN             83        --        --       --
21  JOHN WINSTON FORRESTER   13,57     40,69       --       --
                                       71
22

23                      EXHIBIT INDEX

24  PLAINTIFF'S

25  NO.  DESCRIPTION                    OFFERED   ADMITTED  VOL.
     1   February 20, 1963 Deed         18        18       --

```
 1                   P R O C E E D I N G S
 2              THE COURT:  The 2015-613 John Forrester
 3  versus James Brown and Jerry Wayne Boone.  That's set, I
 4  guess, just for the hearing for the temporary
 5  injunction.
 6              MR. BULL:  Correct, Your Honor.  Probably
 7  be an hour, hour and a half.
 8              MR. PARKS:  Sounds right to me.
 9              THE COURT:  Mr. Boone, you're
10  representing yourself?
11              MR. BOONE:  I guess so.
12              THE COURT:  All right.  So I will work on
13  the assumption that's going to take an hour and a half,
14  something like that.
15              (Recess.)
16              THE COURT:  At this time, I call
17  2015-613, John Forrester versus James Brown and Jerry
18  Wayne Boone for temporary injunction hearing.
19              Mr. Boone, I think they have saved you a
20  seat right there if you want to take that spot.
21              Counsel, if you want to make any sort of
22  an opening statement, you may do so.
23              MR. BULL:  Yes, Your Honor.
24                   OPENING STATEMENT
25  BY MR. BULL:
```

 1  crosses off onto Mr. Brown's property to the well.
 2  There have been several attempts to go out there and
 3  work on the well to do things over the past year or so.
 4  Mr. Forrester went out there approximately a year ago.
 5  Mr. Boone has prohibited people from entering --
 6  crossing his property saying they don't have a right to.
 7  That's led to why we're here today.
 8              In late October, November, after acquiring
 9  the lease and the well, Mr. Forrester attempted to get
10  out there.  He was blocked.  He attempted to come in
11  from the east side across Mr. Brown's other property.
12  He was blocked.  He came in -- he got in it, he got out
13  and got blocked, and then there was charges filed
14  against him.
15              And the east side, there's about a small,
16  couple of hundred --
17              MR. FORRESTER:  265 feet --
18              THE COURT:  Let me say for record
19  purposes, only one person talks at a time.
20              MR. FORRESTER:  Yes, sir.
21              MR. BULL:  There's approximately a
22  hundred yards, a little less, 90 yards track to the east
23  that has to be crossed before you get hit Mr. Brown's --
24  you hit the original 87-acre tract.  Mr. Forrester was
25  able to come in from the north, another tract he had

1              What was your original question?  I'm

2  sorry, I kind of got off --

3      Q.   I just wanted to know -- explain what happened

4  after you bought the lease.

5      A.   I attempted to get a workover rig onto the

6  well and fix -- repair the well.

7      Q.   What steps did you take to do that?

8      A.   Well, ultimately, after the failure to get in

9  from the south, I came from the east there to access the

10  well, and we got a workover rig on it.  And

11  subsequently, we were threatened with threats multiple

12  times just trying to access the well, and ultimately,

13  retained you to get the legal right to get onto the

14  property.

15      Q.   Is there a valid easement or any way of access

16  from the east that you talked about?

17      A.   No, sir.  It's the only easement that I'm

18  aware of is the original one from Boones from the south.

19  I'm -- I tried to go along to get along and it all blew

20  up.  In trying to appease everybody, it blew up in my

21  face.

22      Q.   Is there any way -- in this original 85 or 87

23  acres that we're discussing, the minerals retained by

24  Mr. Blackwell, is there any way to access a public

25  right-of-way, highway, a road, a county road without

```
 1                    REPORTER'S CERTIFICATE
 2   THE STATE OF TEXAS       )
     COUNTY OF WOOD           )
 3
 4       I, Una B. King, Official Court Reporter in and for
 5   the 402ndth District Court of Wood County, State of
 6   Texas, do hereby certify that the above and foregoing
 7   contains a true and correct transcription of all
 8   portions of evidence and other proceedings requested in
 9   writing by counsel for the parties to be included in
10   this volume of the Reporter's Record, in the
11   above-styled and numbered cause, all of which occurred
12   in open court or in chambers and were reported by me.
13       I further certify that this Reporter's Record of
14   the proceedings truly and correctly reflects the
15   exhibits, if any, admitted by the respective parties.
16       I further certify that the total cost for the
17   preparation of this Reporter's Record is $655.50 and was
18   paid by DEFENDANT, JAMES A. BROWN.
19       WITNESS MY OFFICIAL HAND this the 31st day of
20   January, 2018.
21
                       /S/ UNA B. KING
22                     Una B. King, Texas CSR 5856
                       Expiration Date:  12/31/2019
23                     Official Court Reporter
                       402nd District Court
24                     Wood County, Texas
25
```

# A-7

REPORTER'S RECORD

VOLUME 3 OF 5

TRIAL COURT CASE NO. 23,121-2017; 23,122-2017; and

23,331-2017

THE STATE OF TEXAS          *    IN THE DISTRICT COURT

VS.                         *    WOOD COUNTY, TEXAS

JERRY WAYNE BOONE           *    402ND JUDICIAL DISTRICT

------------------------------------------------------------

TRIAL ON MERITS

MARCH 27, 2018

------------------------------------------------------------

On the 27th day of March, 2018, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE JEFFREY L. FLETCHER, Judge Presiding, held in Quitman, Wood County, Texas.

Proceedings reported by computerized stenotype machine; Reporter's record produced by computer-aided transcription.

```
 1                    A P P E A R A N C E S

 2

 3        MR. JOSEPH L. "JOE" SHEARIN
          ATTORNEY PRO TEM
 4        State Bar No. 18172300
          Founders Square, Suite 440
 5        900 Jackson Street
          Dallas, Texas  75202
 6        Telephone:  214.267.1000
          E-mail:  joeshearin@shearinlaw.net
 7
                         REPRESENTING THE STATE OF TEXAS
 8

 9        MR. LEE EDWIN WARREN
          ATTORNEY AT LAW
10        State Bar No. 24090494
          101 Bill Bradford Road, Suite 25
11        Sulphur Springs, Texas  75482
          Telephone:  903.335.3380
12        E-mail:  lwarren@warrenlegal.net

13                         REPRESENTING THE DEFENDANT

14   ALSO PRESENT:

15        MS. DONNA BROOM
          BROOM LAW FIRM
16        State Bar No. 24029698
          115 West Front Street
17        Tyler, Texas  75702
          Telephone:  903.363.7506
18        E-mail:  donna@broomlawfirm.com

19

20                         REPORTER'S NOTE

21      Ellipses are used only to show that an answer has
               trailed off and not been interrupted.
22
        Quotation marks are used for clarity and do not
23               necessarily indicate a direct quote.

24            Uh-huh = Yes - Affirmative response.
                 Huh-uh = No - Negative response.
25
```

1                             INDEX

2                       TRIAL ON MERITS
                          VOLUME 3
3                                                     PAGE   VOL

4    MARCH 27, 2018

5    Proceedings begin............................    6      3

6    STATE'S WITNESSES:     Direct     Cross     VD

7    JOHN WINSTON FORRESTER (Continued)
        By Mr. Shearin   52,64,69                            3
8       By Mr. Warren                7,63,67,70              3

9    AUSTIN CRYER
        By Mr. Shearin    74                                 3
10      By Mr. Warren                81                      3

11   BRENT BULL
        By Mr. Shearin   86,119                              3
12      By Mr. Warren               106,127                  3

13   HUBERT C. VAUGHN
        By Mr. Shearin   132,148                             3
14      By Mr. Warren               143                      3

15   CHRIS TURNER
        By Mr. Shearin   152,168                             3
16      By Mr. Warren               160,171                  3

17   JAMES TERRY
        By Mr. Shearin   174,189                             3
18      By Mr. Warren               186                      3

19   JOHN VANCE
        By Mr. Shearin    194                                3
20

21   Proceedings recessed, End of Volume 3.........  215     3

22   Reporter's Certificate........................  216     3

23

24

25

Brenda Hightower Smith, CSR, CRR, RPR
Official Court Reporter - 402nd Judicial District - Wood County
903.763.5432

```
1                    THE BAILIFF:  Right here, sir.
2                    (Witness sworn.)
3                    THE WITNESS:  I do.
4                    THE COURT:  Please be seated.
5                    MR. SHEARIN:  Begin, Judge?
6                    THE COURT:  Yes, sir.
7                         HUBERT C. VAUGHN,
8    having been first duly sworn, testified as follows:
9                    DIRECT EXAMINATION
10   BY MR. SHEARIN:
11        Q.   If you would, please introduce yourself to the
12   jury.
13        A.   I'm Hubert Charles Vaughn.  I go by "Chip."
14        Q.   And Mr. Vaughn, where do you live?
15        A.   Sulphur Springs.
16        Q.   And what is your occupation?
17        A.   Right now I'm working on a ranch as a ranch
18   foreman and work for a landscape company.
19        Q.   Are you now or have you ever been involved in
20   the oil and gas industry?
21        A.   Yes, I have.
22        Q.   In what capacity?
23        A.   I've -- I was President of Vogo, Inc.  We
24   actually had purchased some wells.
25        Q.   And what is Manek?  Were you also part of
```

```
 1    Manek --
 2         A.   Yes, I was.
 3         Q.   -- Exploration at some point?
 4         A.   Yes, I was part of Manek.
 5              I've actually worked in the oil field since
 6    '77 for --
 7         Q.   In what capacity?
 8         A.   Most of the time it was pumper, production
 9    foreman.
10         Q.   And were you in the oil business from '77
11    until recently?
12         A.   No.
13         Q.   Has that been off and on?
14         A.   I only went in the oil business in 2012.
15         Q.   Okay.  And what was -- is that when you
16    created Vogo?
17         A.   Yes.
18         Q.   All right.  And prior to that, though, you
19    were a part of Manek?
20         A.   Yes, I worked for Manek.
21         Q.   And did Manek also -- was part of -- was in
22    the oil business?
23         A.   Yes.
24         Q.   All right.  Are you familiar with the W.T.
25    Blackwell No. 1 Oil Well?
```

134

```
1         A.    Yes, I am.

2         Q.    Please tell the jury how you're familiar with

3    that; what your involvement with that oil well and that

4    lease is or was.

5         A.    I had purchased wells from Quitman -- or from

6    Manek, which purchased them from Quitman Construction.

7    There was 15 wells, and it was 1 of the 15 wells.

8         Q.    And where was that well located?

9         A.    Northeast of Quitman.

10        Q.    And do you know who the surface owner was

11   where the actual well was located?

12        A.    I believe it was Jim Brown.

13        Q.    All right.  What was the access to that well?

14   How did you gain access to it?  What -- what was -- was

15   there an easement, or how -- how could you get to that

16   well?

17        A.    The access road was across Boone's property.

18        Q.    Are you talking about Jerry Wayne Boone?

19        A.    Yes.

20        Q.    Are you -- do you know Mr. Boone?

21        A.    I have met him.  I don't really know him.

22        Q.    Do you see him in the courtroom today?

23        A.    Yes, I believe I do.

24        Q.    If you could point him out, please.

25        A.    He's right over here (indicating).
```

135

1          THE COURT:  Let the record reflect that

2    the witness has identified Mr. Boone.

3          Q.    (By Mr. Shearin)  And then Vogo, you said,

4    bought it from Manek, and Manek bought it from Quitman

5    Construction?

6          A.    Yes.

7          Q.    Who are the Castleberrys?

8          A.    They own Quitman Construction.

9          Q.    Did they own the lease -- was it Quitman

10   Construction that owned the lease to the Blackwell Oil

11   Well, or was it the Castleberrys; or because the

12   Castleberrys owned Quitman, that's how they owned the

13   lease?  Do you know?

14         A.    Because the Castleberrys owned Quitman, that's

15   how they owned the lease.

16         Q.    How long did they have that lease?

17         A.    Around 20 years.  I don't know for sure.

18         Q.    And you said the way to access that well was

19   across Jerry Boone's property?

20         A.    When I was working for Manek and Quitman

21   Construction took me into the well, we went across Jerry

22   Boone's land.

23         Q.    And did you have any problem getting there

24   with Quitman Construction?

25         A.    No.

1       Q.    What happened after you purchased that lease

2  as far as access to that well?

3       A.    Well, when I was working for Manek, we went in

4  about once a month and checked the well through that

5  road.  Shortly after I bought it, I was ongoing and

6  worked on it, on the well.  I believe I went in the day

7  or -- a day or two before and told them I was fixing to

8  bring a rig in.

9       Q.    You told who?

10      A.    Some of the Boones.  I'm not sure if it was

11  Jerry or not.

12      Q.    Well, did you know his mother, Jerry's mother,

13  Johnnie Sue Boone?  Was she still alive --

14      A.    Yes, --

15      Q.    -- when you purchased the lease?

16      A.    -- she was.

17      Q.    Okay.

18      A.    And I may have told her, I don't remember.

19  She was a very nice woman.  I talked to her several

20  times after that.

21          But when I got there with the equipment to go

22  in, they denied access.  They had a pickup parked in

23  front of the gate.

24      Q.    When you say "they" denied access, who is

25  that?  Who is "they"?

```
 1        A.    I believe they went in through Boone's.

 2        Q.    The electric company would have to have access

 3   to that well at some point, I'm assuming?

 4        A.    Yes.

 5        Q.    How would they get access?

 6        A.    I'm sure they had a right-of-way across

 7   Mr. Brown.

 8        Q.    Okay.  But would they have used that road,

 9   that easement through Mr. -- over Mr. Boone's?

10        A.    I don't know.

11        Q.    Okay.

12        A.    You would have to ask them.

13        Q.    So when the Boones told you no more access,

14   what -- other than going through McManus trying to find

15   a different way to get there, was there something else

16   you should have done at that time?

17        A.    Yes.  At that time I should have went and got

18   a Court Order.

19        Q.    To do what?  For what?

20        A.    To get into the lease.  I had to talk to the

21   Sheriff before Jim Brown was Sheriff, and he told me I

22   needed to talk to a Judge and get a Court Order.

23        Q.    Now --

24        A.    And then I could get in.

25        Q.    And also -- and I'm sorry.  When you said that
```

1    gotten a Court Order March -- starting around March of

2    2012, but you just never did?

3         A.    No.

4         Q.    Why?

5         A.    I was working on a limited budget, and I had

6    other wells to spend the money on.  And --

7         Q.    If --

8         A.    -- I knew it was going to take quite a bit on

9    that well to get it going, so...

10        Q.    From a business standpoint, if the Blackwell

11   Oil Well would have been profitable, you probably would

12   have spent the $300 it took to get a Court Order,

13   wouldn't you?

14        A.    Oh, yeah.

15        Q.    But it wasn't?

16        A.    Yeah, I believe it was.

17             MR. WARREN:  Your Honor, may I approach

18   the witness?

19             THE COURT:  Yes.

20        Q.    (By Mr. Warren) So you sold -- you sold to

21   them the W.T. Blackwell Lease as shown here in State's

22   Exhibit 31?

23             Just go ahead and have a look at it.

24        A.    (Complies).

25        Q.    You may have to flip to the next page --

```
 1    STATE OF TEXAS    *

 2    COUNTY OF WOOD    *

 3              I, BRENDA HIGHTOWER SMITH, CSR, CRR, RPR,

 4    Official Court Reporter for the 402nd Judicial District

 5    Court in and for Wood County, Texas, do hereby certify

 6    that the above and foregoing contains a true and correct

 7    transcription of all of the portions of evidence and

 8    other proceedings requested in writing by counsel for

 9    the parties to be included in this volume of the

10    Reporter's Record, in the above-styled and numbered

11    cause, all of which occurred in open court or in

12    chambers and were reported by me.

13              I further certify that this Reporter's Record

14    of the proceedings truly and correctly reflects the

15    exhibits, if any, offered by the respective parties.

16              WITNESS MY OFFICIAL HAND this the 25th day of

17    June, 2018.

18

19                       /s/BRENDA HIGHTOWER SMITH

20
                         BRENDA HIGHTOWER SMITH, CSR, CRR, RPR
21                       Certificate No. 3107
                         Certification Expires: 12-31-18
22                       Official Court Reporter
                         402nd Judicial District Court
23                       100 Main Street, Third Floor
                         Quitman, Texas  75783
24                       Telephone:  903.763.5432
                         E-mail:  bsmith@mywoodcounty.com
25
```

# EXHIBIT
# B

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TEXAS
 2                    TYLER DIVISION
 3   JOHN WINSTON FORRESTER, JOHN      )
     PHILIP FORRESTER, JAMES TERRY,    )
 4   JASON WEBB, ALBERTO RODRIGUEZ,    )
     JASON FLOYD SMITH, ROBERT         )
 5   BENNINGER, JOSHUA HOWELL, and     )
     JOSE PEREZ,                       )
 6                                     )
              Plaintiffs,              )
 7                                     )
              vs.                      ) Civil Action No.
 8                                     ) 6:17-CV-561
     WOOD COUNTY, TEXAS, JAMES A.      )
 9   BROWN, in his individual capacity,)
     WILLIAM MILES TUCKER, in his      )
10   individual capacity, KELLY SMITH, )
     in his individual capacity, KEVIN )
11   ATKINSON, in his individual       )
     capacity, STEPHEN CATES, in his   )
12   individual capacity, JOHN A.      )
     HAMMACK, and JERRY WAYNE BOONE,   )
13                                     )
              Defendants.              )
14   _____

15           VIDEOTAPED ORAL DEPOSITION OF

16              JOHN WINSTON FORRESTER

17                OCTOBER 24, 2018

18   _____

19           VIDEOTAPED ORAL DEPOSITION of JOHN WINSTON

20   FORRESTER, produced as a witness at the instance of

21   the Defendants, and duly sworn, was taken in the

22   above-styled and numbered cause on the 24th of

23   October, 2018, from 10:05 a.m. to 4:27 p.m., before

24   Karen L. Shelton, RDR/CRR/CSR in and for the State

25   of Texas, reported by machine shorthand at the
```

```
 1   offices of Messer, Rockefeller & Fort, PLLC, 6371
 2   Preston Road, Suite 200, Frisco, Texas, pursuant to
 3   the Federal Rules of Civil Procedure and any
 4   provisions stated on the record or attached hereto.
 5
 6                  A P P E A R A N C E S
 7
 8   FOR THE PLAINTIFFS:
 9        MR. BRETT GARDNER
          MESSER, ROCKEFELLER & FORT, PLLC
10        6371 Preston Road
          Suite 200
11        Frisco, Texas 75034
          (972) 668-6400
12        (972) 668-6414 (fax)
          brett@txmunicipallaw.com
13
14   FOR THE DEFENDANT JAMES A. BROWN:
15        MR. JAMES W. HRYEKEWICZ
          BLAIES & HIGHTOWER, LLP
16        421 West 3rd Street
          Suite 900
17        Fort Worth, Texas 76102
          (817) 334-0800
18        (817) 334-0574 (fax)
          jwh@bhilaw.com
19
20   FOR THE DEFENDANTS WOOD COUNTY, TEXAS, KEVIN
     ATKINSON, KELLY SMITH and STEPHEN CATES:
21
          MS. LEE I. CORREA
22        FLOWERS DAVIS, PLLC
          1021 ESE Loop 323
23        Suite 200
          Tyler, Texas 75701
24        (903) 534-8063
          (903) 534-1650 (fax)
25        lic@flowersdavis.com
```

3

```
 1 | FOR THE DEFENDANT WILLIAM MILES TUCKER:

 2 |      MR. DAVID IGLESIAS
   |      IGLESIAS LAW FIRM, PLLC
 3 |      605 Chase Drive
   |      Suite 8
 4 |      Tyler, Texas 75701
   |      (903) 944-7185
 5 |      david@iglesiaslawfirm.com

 6 |
   | ALSO PRESENT:
 7 |
 8 |      Ms. Vicki L. Dyer, Videographer

 9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |
```

JOHN WINSTON FORRESTER          10/24/2018

4

1                        I N D E X

2                                              Page

3   Appearances                                   2

4   JOHN WINSTON FORRESTER

5      Examination By Mr. Hryekewicz       6, 241

6      Examination By Ms. Correa            113

7      Examination By Mr. Iglesias          152

8   Signature and Changes                   244

9   Reporter's Certificate                  246

10

11                      E X H I B I T S

12  No.          Description                 Page

13  Exhibit 1    Discovery Order              13

14  Exhibit 2    3/2/18 Hryekewicz Letter to Gardner   18

15  Exhibit 3    Plaintiffs' First Amended Complaint   26

16  Exhibit 4    DVD                          54

17  Exhibit 5    DVD                          55

18  Exhibit 6    Oil, Gas and Mineral Lease   83

19  Exhibit 7    Temporary Restraining Order and    91
                 Order Setting Hearing for
20               Preliminary Injunction

21  Exhibit 8    Affidavit of John Forrester in     92
                 Support of Plaintiff's Motion for
22               Temporary Restraining Order

23  Exhibit 9    Bellis & Associates Invoice  205

24  Exhibit 10   Martex Well Services Invoices   205

25

JOHN WINSTON FORRESTER          10/24/2018

5

1    Exhibit 11    East Texas Medical Center Patient        229
                   Information Form
2
     Exhibit 12    East Texas Medical Center Trauma         231
3                  Flow Sheet

4    Exhibit 13    East Texas Medical Center Nursing        232
                   Trauma Flow Sheet
5
     Exhibit 14    East Texas Medical Center Nursing        233
6                  Trauma Flow Sheet

7    Exhibit 15    East Texas Medical Center Imaging        234
                   Report
8
     Exhibit 16    East Texas Medical Center               235
9                  Deposition on Written Questions
                   and Billing Records
10
     Exhibit 17    UT Health Quitman Deposition on          237
11                 Written Questions and Billing
                   Records

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1              P R O C E E D I N G S

2              THE VIDEOGRAPHER:  We're on the record at

3    10:05, October 24th, 2018.  Will the attorneys

4    please state their appearances for the record.

10:05  5              MR. GARDNER:  Brett Gardner, Messer,

6    Rockefeller & Fort, on behalf of the plaintiffs and

7    Winston Forrester.

8              MR. HRYEKEWICZ:  James Hryekewicz here for

9    James A. Brown.

10:05  10             MS. CORREA:  Lee Correa for Flowers Davis

11   on behalf of Wood County, Kevin Atkinson, Kelly

12   Smith, and Brad Cates.

13             MR. IGLESIAS:  Dave Iglesias for the

14   Iglesias Law Firm in Tyler on behalf of Miles

10:05  15   Tucker.

16                JOHN WINSTON FORRESTER,

17   having been first duly sworn, testified as follows:

18              E X A M I N A T I O N

19   BY MR. HRYEKEWICZ:

10:06  20       Q.    Would you state your full name, sir.

21       A.    John Winston Forrester.

22       Q.    And what do you go by?

23       A.    Winston.

24       Q.    Okay.  Sir, have you ever testified in a

10:06  25   case before?

| | |
|---|---|
| 10:07 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:08 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:08 | 10 |

10:07  1  down.  If you will enunciate yes or no, it'll make
       2  their job much easier and it'll reduce disputes
       3  later on as to what the answer was.  Does that make
       4  sense?
10:08  5       A.    Understood.
       6       Q.    Does that make sense, sir?
       7       A.    Yes.
       8       Q.    Okay.  Are you familiar with the claims or
       9  defenses in this suit?
10:08 10       A.    Yes.
      11       Q.    Okay.  Now, you've produced a number of
      12  documents in this case, correct?
      13       A.    What's that?
      14       Q.    You've produced a number of documents in
10:08 15  this case, correct?
      16       A.    Yes.
      17       Q.    Okay.  Have you produced all documents and
      18  tangible things in your possession, custody or
      19  control that are relevant to the pleaded claims or
10:08 20  defenses involved in this action?
      21       A.    To the best of my knowledge, yes.
      22       Q.    Okay.  So if I don't see a particular
      23  video recording, it's because you have no such video
      24  recording, correct?
10:08 25            MR. GARDNER:  Objection.  Form.

10:08  1         A.    To the best of my knowledge, yes.

       2         Q.    And if I don't see reports to the Texas

       3    Railroad Commission, it's because there are no such

       4    reports to the Texas Railroad Commission, correct?

10:09  5              MR. GARDNER:  Objection.  Form.

       6         A.    I don't understand the question.

       7         Q.    What do you do for a living, sir?

       8         A.    I'm in the oil business.

       9         Q.    How do you describe your role in the oil

10:09 10    business?

      11         A.    Well, I own -- one of my roles is I own a

      12    production company.

      13         Q.    Okay.  What other roles do you have?

      14         A.    I do some consulting for other oil

10:09 15    companies.

      16         Q.    What sort of consulting do you do for

      17    other oil companies?

      18         A.    Down hole and production consulting.

      19         Q.    Are you an operator in Texas?

10:09 20         A.    Yes.

      21         Q.    What is your operator number?

      22         A.    Don't hold me to it.  I think it's 277385.

      23    385 or 485, something like that.

      24         Q.    Either 277385 or 277485?

10:09 25         A.    485, one of those two is it.

10:10  1       Q.   All right.  And as an operator, do you

2   have to file certain reports with the Texas Railroad

3   Commission?

4       A.   Yes.  The company does, that's correct.

10:10  5       Q.   Okay.  And if I don't see certain reports

6   from you relating to the wells at issue in this

7   suit --

8       A.   I don't -- I don't handle any of that.

9   I outsource that to a third-party firm.

10:10 10       Q.   Who is that third party?

11       A.   Watson Report Service.

12       Q.   What is your relationship with Watson and

13   Forresters?

14       A.   They're in my employ.  They handle all my

10:10 15   regulatory filings.

16       Q.   You say the last name -- the second name

17   to that is Forresters?

18       A.   What's that?

19       Q.   You say the company's name is Watson and

10:10 20   Forresters?

21       A.   No, Watson Report Service.

22       Q.   Watson Report Service.

23            THE REPORTER:  Speak up just a bit.

24            THE WITNESS:  Okay.  Sorry.  I do tend to

10:10 25   mumble.

12

10:10  1         Q.    And they are under your control with

       2    regard to the well at issue in this suit, correct?

       3         A.    Yes.

       4         Q.    Okay.  Have you produced all documents and

10:11  5    tangible things in the possession, custody, or

       6    control of you that are relevant to the pleaded

       7    claims or defenses involved in this action?

       8              MR. GARDNER:  Objection.  Form.

       9         A.    I don't really understand the question,

10:11 10    but yes, I suppose.

      11         Q.    Tell me what you don't understand about

      12    that question.

      13         A.    I don't understand what you're asking of

      14    me.

10:11 15         Q.    Okay.  Do you understand what documents

      16    and tangible things are?

      17         A.    I understand what documents are.  I don't

      18    understand what you mean by tangible things.

      19         Q.    Okay.  For purposes of this, let's assume

10:11 20    tangible things are things that have a physical

      21    existence.

      22         A.    Okay.

      23         Q.    Okay.  So, for instance, your coffee cup

      24    is a tangible thing.  The love of a parent for the

10:12 25    child is not tangible.  Does that make sense?

13

| | | |
|---|---|---|
| 10:12 | 1 | A.    Yes. |
| | 2 | Q.    Okay.  Have you produced all documents and |
| | 3 | tangible things that are in your possession that are |
| | 4 | relevant to the pleaded claims or defenses involved |
| 10:12 | 5 | in this suit? |
| | 6 | MR. GARDNER:  Objection.  Form. |
| | 7 | A.    Yes, I suppose so. |
| | 8 | Q.    Okay.  Have you produced all documents and |
| | 9 | tangible things in your custody that are relevant to |
| 10:12 | 10 | the pleaded claims or defenses involved in this |
| | 11 | suit? |
| | 12 | MR. GARDNER:  Objection.  Form. |
| | 13 | A.    Produced it to who?  I mean, that's such a |
| | 14 | broad question.  If you'd just ask me in a plainer |
| 10:12 | 15 | way, I might could understand it better. |
| | 16 | (Exhibit 1 marked) |
| | 17 | Q.    Let me hand you what I've marked as |
| | 18 | Deposition Exhibit 1. |
| | 19 | A.    Okay. |
| 10:12 | 20 | Q.    Have you seen Deposition Exhibit 1 before? |
| | 21 | My question is, have you ever seen Deposition |
| | 22 | Exhibit 1 before? |
| | 23 | A.    This?  Probably. |
| | 24 | Q.    Okay.  Deposition Exhibit 1 appear to be a |
| 10:14 | 25 | discovery order signed by the federal judge in this |

14

10:14  1 | case?

2 |     A.    I'm sure I've reviewed it before.  I don't

3 | recall it right offhand, but I'm sure I've seen it.

4 |     Q.    Do you understand that Deposition

10:14  5 | Exhibit 1 is a discovery order signed by the federal

6 | judge in charge of this case?

7 |     A.    Yes.

8 |     Q.    Okay.  Turn to page 3 of 8.  And under

9 | number 3, I want you to read number 3 and the first

10:14 10 | sentence of 3(a) out loud for the jury.

11 |     A.    "Additional Disclosures.  Each party

12 | within 45 days after the scheduling conference shall

13 | provide to every other party the following:  All

14 | documents and tangible things in the possession,

10:14 15 | custody, or control of the party that are relevant

16 | to the pleaded claims or defenses involved in this

17 | action."

18 |     Q.    Do you now understand what we talk about

19 | when we talk about providing to every other party?

10:15 20 |     A.    Yes, sir, I believe so.

21 |     Q.    Okay.  Let's go back to the question then.

22 | Have you provided all tangible things, all documents

23 | and tangible things in your custody that are

24 | relevant to the pleaded claims or defenses involved

10:15 25 | in this action?

15

10:15   1          A.    Yes, to the --

        2                MR. GARDNER:  Objection.  Form.

        3          A.    Yes, to the best of my knowledge.

        4          Q.    Why do you put the qualifier onto "the

10:15   5   best of my knowledge"?

        6          A.    I assume by qualifier you mean the

        7   terminology "to the best of my knowledge"?

        8          Q.    Yes.

        9          A.    In case there's something I haven't.  Not

10:15  10   intentionally, but --

       11          Q.    Have you produced all documents and

       12   tangible things in your control that are relevant to

       13   the pleaded claims or defenses involved in this

       14   action?

10:15  15                MR. GARDNER:  Objection.  Form.

       16          A.    Yes, to the best of my knowledge.

       17                MR. HRYEKEWICZ:  Basis of the objection?

       18                MR. GARDNER:  It has been asked and

       19   answered probably five times already.

10:16  20          Q.    Let's go back to what we were talking

       21   about with reports to the Texas Railroad Commission.

       22          A.    Okay.

       23          Q.    You're an operator licensed by the Texas

       24   Railroad Commission, correct?

10:16  25          A.    Correct.

10:16   1           Q.    And you understand that operators need to

        2   produce certain reports to the Texas Railroad

        3   Commission for each well they're operating, correct?

        4           A.    Yes.

10:16   5           Q.    Have you produced all those reports for

        6   the well at issue in this case?

        7           A.    I don't recall.

        8           Q.    Do you believe it's important to comply

        9   with the federal judge's discovery order?

10:16  10           A.    Absolutely.

       11           Q.    I am putting in front of you every

       12   document you've produced in this case that is not a

       13   medical record.  I want you to review those and tell

       14   me if you've produced all your reports to the Texas

10:17  15   Railroad Commission relating to the well at issue in

       16   this case.

       17               MR. GARDNER:   You want him to review all

       18   those hundreds of documents?

       19               MR. HRYEKEWICZ:   If that's what it takes

10:17  20   for him to be able to answer the question.

       21               MR. GARDNER:   He has answered the

       22   question.

       23               MR. HRYEKEWICZ:   I want to know

       24   definitively if he has produced all the Texas

10:17  25   Railroad Commission reports relating to this well.

10:17    1           MR. GARDNER:  And you -- then you have

2   asked him that question and he has answered it.

3           MR. HRYEKEWICZ:  He has not given me an

4   unqualified answer, sir.

10:17    5           MR. GARDNER:  Okay.  If you want him to

6   review it.

7           THE WITNESS:  Do you want to get them in

8   here to order lunch?

9           MR. GARDNER:  If you can answer his

10:17 10   question, please try to do so.

11           MR. HRYEKEWICZ:  And we'll go off the

12   record while you review it.

13           MR. GARDNER:  No.  I don't see any reason

14   we need to go off the record if you want him to

10:18 15   review hundreds of documents.

16           MR. HRYEKEWICZ:  Please note the time that

17   the record review began in case we have a dispute

18   about deposition time later on.

19       A.   If they're here, could you direct me to

10:19 20   them so I could do this quicker?

21           MR. GARDNER:  Don't ask him any questions.

22   Just see if you can find what he's asking for or --

23   what was the question?  What's the question on the

24   table?

10:20 25           MR. HRYEKEWICZ:  I believe the question

10:20  1   was -- I won't have the wording exact, but I believe

2   the question was have you produced all reports to

3   the Texas Railroad Commission you were supposed to

4   have provided the Texas Railroad Commission relating

10:20  5   to the well in this suit.

6              MR. GARDNER:   And I believe -- what was

7   your answer?

8        A.   Yes, I believe so, to the best of my

9   knowledge.

10:20 10             MR. GARDNER:   Okay.  So is that -- can we

11   move on then?

12        Q.   Will reviewing that stack of documents

13   help?

14        A.   My answer will probably remain the same.

10:20 15        Q.   Then we can move on.

16             (Exhibit 2 marked)

17             Hand you what I've marked as Deposition

18   Exhibit 2.   Have you seen Deposition Exhibit 2

19   before?

10:22 20        A.   You're asking if I've seen this?

21        Q.   Yes, sir.

22        A.   If I have, I don't recall it right

23   offhand, no.

24        Q.   Do you recognize the people that

10:22 25   Deposition Exhibit 2 is addressed to?

19

10:22  1          A.    My law firm?

       2          Q.    Yes.

       3          A.    Yes.

       4          Q.    Do you recognize the case in the "Re" line

10:22  5     of that letter?

       6          A.    I think that's the right number.  The

       7     name's obviously correct.

       8          Q.    Would you turn to page 2 of Deposition

       9     Exhibit 2.

10:22 10          A.    Uh-huh.

      11          Q.    Do you recognize that as a fax

      12     confirmation sheet with an okay result?

      13          A.    Sure, yes.

      14          Q.    What is the date of Deposition Exhibit 2?

10:23 15          A.    Is that it here at the top, March 2nd,

      16     2018?

      17          Q.    Yes, sir.

      18          A.    Okay.

      19          Q.    What is the date on the fax confirmation

10:23 20     sheet that's part of Exhibit 2?

      21          A.    The date I just said?

      22          Q.    Yes.

      23          A.    March 2nd, 2018.

      24          Q.    Okay.  Have you produced your due

10:23 25     diligence file relating to the well at issue in this

10:23   1    case?

        2          A.    Yes, to the best of my knowledge.

        3          Q.    Have you produced well production and

        4    royalty data for the lease at issue in this case?

10:23   5          A.    To the best of my knowledge.

        6          Q.    Have you produced all documents relating

        7    to the reworking and additional drilling operations

        8    at the lease in issue?

        9          A.    To the best of my knowledge.

10:23  10          Q.    Have you produced all documents relating

       11    to the easement referenced in the temporary

       12    restraining orders obtained by Forrester in the

       13    earlier state court suit?

       14          A.    To the best of my knowledge.

10:24  15          Q.    Have you produced any additional documents

       16    relating to Forrester's investigation of the

       17    validity and scope of the lease at issue?

       18          A.    I don't understand the question without

       19    specifying what you're referring to.

10:24  20          Q.    Did you investigate the validity and scope

       21    of the lease at issue when you purchased it?

       22          A.    Yes.

       23          Q.    Have you produced any and all documents

       24    relating to your investigation into that validity

10:24  25    and scope in the lease at issue?

10:24    1          A.    To the best of my knowledge.

         2          Q.    And so if I don't have a document, it

         3   doesn't exist, to the best of your knowledge,

         4   correct?

10:24    5          A.    I would assume that would be a correct

         6   statement.

         7          Q.    Have you ever been arrested, sir?

         8          A.    Yes.

         9          Q.    When have you been arrested?

10:24   10          A.    Couple of times for outstanding traffic

        11   tickets.

        12          Q.    Tell me the first time you recall being

        13   arrested.

        14          A.    Probably ten years ago.

10:25   15          Q.    Where were you arrested?

        16          A.    Gregg County.

        17          Q.    What were you arrested for?

        18          A.    Outstanding traffic tickets.

        19          Q.    What became of that arrest?

10:25   20          A.    I paid my tickets.

        21          Q.    When's the next time you were arrested?

        22          A.    I was also arrested for outstanding

        23   traffic tickets in Upshur County.

        24          Q.    When was that?

10:25   25          A.    Probably eight or nine years ago.

JOHN WINSTON FORRESTER          10/24/2018

26

10:30   1        A.   Well, that Twin suit, it was actually in

2    multiple counties, but it's all essentially the same

3    lawsuit.  I just recalled that as well.  Does that

4    matter?

10:30   5        Q.   How many suits were there?

6        A.   Three in three diff -- I guess -- I don't

7    know if it was the same suit or three separate

8    suits, but they were all in contiguous counties.

9        Q.   What were the two counties besides Upshur?

10:30  10        A.   Cass and Marion, I believe.

11                   (Exhibit 3 marked)

12        Q.   Let me hand you what I've marked as

13    Deposition Exhibit 3.  What is Deposition Exhibit 3?

14        A.   What is it?

10:31  15        Q.   Yes, sir.

16        A.   Looks like a copy of the lawsuit.

17        Q.   You're familiar with your claims in this

18    suit?

19        A.   Is that the right one?  Yes.

10:31  20        Q.   If you would, turn to page 4 of Deposition

21    Exhibit 3.  This is paragraph 23 where you first

22    talk about the Blackwell lease.  Is that correct,

23    sir?

24        A.   I'm sorry.  Repeat that?

10:31  25        Q.   This is -- on page 4 of Deposition

31

10:37  1      Q.    Are there any leases concerning the

2  Blackwell well other than the Blackwell lease?

3      A.    I don't recall right offhand if it was one

4  lease or multiple originally, so I can't really

10:37  5  answer that question.

6      Q.    Okay.  Deposition Exhibit 3, page 5,

7  paragraph 26.  Are we there?

8      A.    Uh-huh.  Yes.

9      Q.    You state, "On or about October 24th,

10:38 10  2015, Winston Forrester attempted to access the

11  Blackwell lease via a gate on Farm to Market Road

12  2966."  Did I read that correctly?

13      A.    Yes.  I don't recall if that's the exact

14  date, but that's right.  Sounds right.

10:38 15      Q.    Is that gate on Farm to Market Road 2966

16  on the Blackwell lease?

17      A.    Say that again?

18      Q.    Is that gate on Farm to Market Road 2966

19  on the Blackwell lease?

10:38 20      A.    Well, as was later determined, no.

21      Q.    Is the land immediately behind that gate

22  on Farm to Market Road 2966 part --

23      A.    Well, as we later --

24      MR. GARDNER:  Let him finish his

10:39 25  questions.

10:41  1  paragraph 26 of your first amended complaint?

      2       A.   Well, I don't know --

      3            MR. GARDNER:  Object to form.

      4       A.   I don't know if I want to get into that.

10:41  5  That's attorney-client privilege.

      6            MR. GARDNER:  Can we go off the record for

      7  just a second?

      8            MR. HRYEKEWICZ:  Yes.

      9            THE VIDEOGRAPHER:  Off the record at

10:41 10  10:41.

     11            (Recess from 10:41 to 10:47)

     12            THE VIDEOGRAPHER:  On the record at 10:47.

     13  BY MR. HRYEKEWICZ:

     14       Q.   All right, sir.  You've had a chance to

10:47 15  visit with your attorney.  Is that correct?

     16       A.   Yes.

     17       Q.   Do you want to change any of the testimony

     18  you've given so far today?

     19       A.   No, I don't care to.

10:47 20       Q.   Okay.  We were -- before we went off the

     21  record, we were talking about a gate on Farm to

     22  Market Road 2966 as referenced in paragraph 26 of

     23  plaintiff's first amended complaint, correct?

     24       A.   Yes.

10:47 25       Q.   And if you will turn to the prior page of

35

10:47  1   plaintiff's first amended complaint, you included a

       2   map in your complaint, correct?

       3       A.    Do you want these back or don't?

       4       Q.    You can just keep them in front of you,

10:47  5   sir.

       6       A.    Yes.

       7       Q.    And the gate you reference in paragraph 26

       8   of the first amended complaint is in fact the gate

       9   that is labeled "Side Gate" on the map on page 4 of

10:48 10   plaintiff's first amended complaint, correct?

      11       A.    Yes.

      12       Q.    Hold that map up and show it to the jury.

      13   Show it to the camera and show them where that side

      14   gate is.

10:48 15       A.    (Witness complies.)  Got it?

      16       Q.    That side gate is part of the parcel

      17   labeled as 69764, correct?

      18       A.    Yes, sir, that looks to be correct.

      19       Q.    Is it your testimony that Brent Bull told

10:48 20   you the Blackwell lease included the property

      21   labeled 69764?

      22       A.    Yes, sir.  We --

      23            MR. GARDNER:  I'm -- if you're asking --

      24   that sounds like that's invading attorney-client

10:49 25   privilege.  I'm going to instruct him not to answer

36

10:49  1  something that his attorney told him.

2        MR. HRYEKEWICZ:  You understand that's

3  what he's using to rely on in this case.  It's an

4  offensive use.  We can call the hotline if we need

10:49  5  to.

6        MR. GARDNER:  Well --

7        MR. HRYEKEWICZ:  But he's -- he's using

8  his offensive use.  I want to make sure of this

9  because I'm going to depose Brent Bull.  If that's

10:49 10  what he's going to rely on for his actions, then I

11  get to explore it, and you know that.

12        MR. GARDNER:  Ask -- ask the question

13  again.

14        Q.   It's your sworn testimony today that Brent

10:49 15  Bull told you that the Blackwell lease included the

16  property labeled as 69764 on this map?

17        MR. GARDNER:  Yeah, I'm going to object to

18  form, and I'm going to instruct him not to answer as

19  attorney-client privilege.

10:50 20        Q.   Let's go back and make sure we're on the

21  same page on some of this.  Does the Blackwell lease

22  include the property labeled 69764 on your map?

23        A.   No, sir, I don't believe so.

24        Q.   Tell me every basis you had for going

10:50 25  through that side gate onto Property 69764 on or

41

10:59  1    case.

2          Q.    When did you first engage the services of

3    Brent Bull with respect to any aspect of the

4    Blackwell lease?

10:59  5    A.    Probably summer to fall of '15.

6          Q.    Referring back to your map on page 4 of

7    your complaint, the entire length of Parcel 69764

8    that runs along Farm to Market Road 2966 has a

9    fence, correct?

11:00  10   A.    It's fenced on the eastern boundary.

11         Q.    Is that correct, sir?

12         A.    Yes.

13         Q.    And that fence is designed to keep

14   livestock in?

11:00  15   A.    Yes, sir, I'd assume so.

16         Q.    And there's a gate in that fence at the

17   north end of Parcel 69764, correct?

18         A.    Yes.

19         Q.    That's the side gate you went through,

11:00  20   correct?

21         A.    Yes.

22         Q.    You cut a lock on that gate to go through

23   it, correct?

24         A.    No, no.

11:00  25   Q.    Did you cut a chain to go through that

JOHN WINSTON FORRESTER          10/24/2018

42

11:00  1    gate?

       2           A.   Yes, sir, I cut one link out of a

       3    quarter-inch chain.

       4           Q.   And that gate also had a no trespassing

11:00  5    sign on it, correct, sir?

       6           A.   I don't recall at the time if it did or

       7    didn't.   Seems like it did.

       8           Q.   Okay.  So on October 24th, 2015, you went

       9    to a gate that you say seems like had a no

11:00 10    trespassing sign on it, correct?

      11           A.   Yes.

      12           Q.   You cut the chain securing that gate,

      13    correct?

      14           A.   Yes, sir, I cut a link out of the chain

11:00 15    and secured it back.

      16           Q.   And you went through that gate, correct,

      17    sir?

      18           A.   Yes.

      19           Q.   And you went through that gate onto Parcel

11:01 20    69764, correct?

      21           A.   Yes.

      22           Q.   And there were in fact livestock on Parcel

      23    69764 when you went through it on October 24th,

      24    2015, correct?

11:01 25           A.   No, sir, I don't believe so.

43

11:01  1          Q.   Were there livestock on Parcel 69764 when

       2    you cut it again and went through it on October 26,

       3    2015?

       4          A.   No, sir, I don't believe there were any

11:01  5    livestock on that parcel.

       6          Q.   Okay.   So it's your sworn testimony to the

       7    best of your recollection there were no livestock on

       8    Parcel 69764 when you went through --

       9          A.   There was livestock on the property, if

11:01 10    that's what you're asking.

      11          Q.   Let me finish my question, sir.

      12          A.   I'm sorry.

      13          Q.   Were there livestock on Parcel 69764 when

      14    you cut and went through the gate that's labeled as

11:02 15    side gate on this map on October 26, 2015?

      16          A.   I don't recall there being any livestock

      17    on that parcel, no.

      18          Q.   Are cattle a form of livestock, sir?

      19          A.   Yes.

11:02 20          Q.   Do you recognize cattle when you see them,

      21    sir?

      22          A.   Yes.

      23          Q.   You understand that my client, Jim Brown,

      24    owns Parcel 69764, correct?

11:02 25          A.   Yes, sir.

44

11:02  1      Q.   Did you have permission from Jim Brown to
       2  cut the link on the gate on Parcel 69764 on
       3  October 24th, 2015?
       4      A.   No.
11:02  5      Q.   Did you have permission from Jim Brown to
       6  come onto Parcel 69764 on October 24th, 2015?
       7      A.   No.
       8      Q.   Did you have permission from Jim Brown to
       9  cut the chain on the gate on Parcel 69764 on
11:03 10  October 26th, 2015?
      11      A.   As previously stated, no.
      12      Q.   Did you have permission from Jim Brown to
      13  come onto Parcel 69764 on October 26th, 2015?
      14      A.   As previously stated, no.
11:03 15      Q.   Did Brent Bull ever give you any opinions
      16  as to whether the Blackwell lease did or did not
      17  encompass Parcel 69764?
      18           MR. GARDNER:  Go ahead and answer if you
      19  can.
11:03 20      A.   Yes, I believe so.
      21      Q.   When did he give you that opinion?
      22      A.   In a meeting we had concerning this.
      23      Q.   When was that meeting?
      24      A.   I don't recall right offhand.  Right
11:04 25  around the same timeline all this was happening.

51

11:12  1        Q.    How can it be true that it extends to the

2    east and at the same time be true that it does not

3    extend to the east of 2966?

4        A.    Based on information I had at the time, I

11:12  5    believed it did.

6        Q.    Did you tell the people that was based on

7    information you had, or did you tell them "I know

8    for a fact it extends east of Farm to Market Road

9    2966"?

11:12 10        A.    Well, that's what I did know for a fact

11    based on the information I had.

12        Q.    Is Parcel Number 69764 Winston Forrester's

13    own property?

14        A.    Say that again?

11:13 15        Q.    Is Parcel Number 69764 as shown on the map

16    on page 4 of plaintiff's first amended complaint

17    Winston Forrester's own property?

18        A.    Of course not.

19        Q.    When you were standing immediately to the

11:13 20    west of the side gate as referenced on page 4 of

21    plaintiff's first amended complaint on October 26,

22    2015, were you standing on your own property?

23        A.    No, I was on the way to or from my well.

24        Q.    Object to the nonresponsive portion.

11:14 25              When you were standing immediately to the

52

11:14  1  west of the side gate as referenced on page 4 of

2  plaintiff's first amended complaint, were you

3  standing on your own property?

4        A.   No, I was headed to or from my well.

11:14  5       Q.   Object to the nonresponsive portion.

6        MR. GARDNER:  Just listen to his question.

7  Just answer his question only.

8        Q.   When you were standing immediately to the

9  west of the side gate as referenced on page 4 of

11:14 10  plaintiff's first amended complaint on October 26,

11  2015, were you standing on your own property?

12        A.   No.

13        Q.   Has any attorney ever told you you have a

14  right to cross Parcel 69764?

11:15 15       A.   It was my understanding based on

16  conversation that I and my attorney had that I had

17  every right in the world to cross it.

18        Q.   Who is that attorney?

19        A.   Brent Bull.

11:16 20       Q.   Has any attorney ever told you you had a

21  right to be on Parcel 69764?

22        A.   I think that's the same question you just

23  asked.  The answer's yes.

24        Q.   Who is that attorney?

11:16 25       A.   Brent Bull.

83

12:29  1      A.    Not at this time.

       2            MR. HRYEKEWICZ:  Brett, I'm requesting a

       3  copy of the chronological timeline of events that

       4  the witness referenced reviewing in preparation for

12:30  5  his deposition.

       6            MR. GARDNER:  I'll tell you that that's

       7  work product, attorney-client core work product,

       8  protected by that privilege.

       9            MR. HRYEKEWICZ:  And you're refusing to

12:30 10  produce that and provide it?

      11            MR. GARDNER:  Yes.

      12                 (Exhibit 6 marked)

      13      Q.    Let me hand you what I've marked as

      14  Exhibit 6 and ask you, what is Exhibit 6?

12:30 15      A.    An oil and gas lease.

      16      Q.    Is Exhibit 6 the Blackwell lease that's at

      17  issue in this suit?

      18      A.    I believe this is the right one.  I

      19  believe this is the right one.  I wouldn't be able

12:31 20  to confirm that without looking at a map or

      21  something.

      22      Q.    What map do you need to look at --

      23      A.    Well --

      24      Q.    -- to tell me if this is the lease you're

12:31 25  suing --

84

12:31  1        A.    -- an outline of a abstract confirming the

       2  location.  I think that's right.  I believe that's

       3  the lease.  But you handed it to me.  It didn't come

       4  from my folder.

12:31  5        Q.    Do you see the notation down at the bottom

       6  right corner, WF 00250?

       7        A.    Yes.

       8        Q.    Do you understand that's a document you

       9  produced in this suit?

12:31 10        A.    Okay.  Then it's correct.

      11        Q.    Okay.  So Exhibit 6 is the Blackwell

      12  lease?

      13        A.    Yes.

      14        Q.    Is that correct?  What is the date of the

12:31 15  Blackwell lease according to its terms and

      16  conditions?

      17        A.    It was entered into on the 8th day of

      18  November, 1967.

      19        Q.    What was the duration of the Blackwell

12:32 20  lease?

      21        A.    It's a five-year primary term.

      22        Q.    And that five-year primary term ended

      23  when, sir?

      24        A.    Well, five years from the date of

12:33 25  execution, which was November 8th, 1967.

85

```
12:33    1        Q.    So primary term ended 8th of
         2   November 1972?
         3        A.    '68, '69, '70, '71, '72.  That's correct.
         4        Q.    And after that only as long as oil, gas or
12:33    5   other mineral is produced from said land or lands
         6   with which said land is pooled?
         7        A.    Let me read.  And as long thereafter --
         8   that's correct.
         9        Q.    Is the Blackwell lease pooled with any
12:33   10   other land?
        11        A.    No.
        12        Q.    Did you do due diligence on this lease
        13   before you purchased it?
        14        A.    Yes.
12:34   15        Q.    This is the lease you're suing over,
        16   correct?
        17        A.    What's that?
        18        Q.    This is the lease you're suing over,
        19   correct?
12:34   20        A.    Yes, I believe that's right.
        21        Q.    You purchased this from VOGO?
        22        A.    VOGO, Inc.
        23        Q.    And VOGO purchased it from Manek
        24   Exploration?
12:34   25        A.    I believe that's right.
```

86

12:34   1        Q.   Isn't it true there was no production from
        2   this well in November 2011?
        3        A.   I'd have to review the production reports.
        4   I don't know right offhand.
12:34   5        Q.   Can you point me to any evidence there was
        6   any production from this well in November 2011?
        7        A.   Off the top of my head, no.
        8        Q.   Can you point me to any evidence there was
        9   any production from this well December 2011?
12:35  10        A.   I can't attest to any production period
       11   without reviewing documents.
       12        Q.   Can you point me to any evidence there was
       13   production from this well in January 2012?
       14        A.   No, not without reviewing the documents.
12:35  15        Q.   Can you point me to any evidence there was
       16   any production from this well in February 2012?
       17        A.   I can't point you and speak one way or the
       18   other if there was production at any point in time
       19   without reviewing the production documents.
12:35  20        Q.   Can you point me to any evidence there was
       21   any production from this well in March 2012?
       22        A.   No.
       23        Q.   Can you point me to any evidence there was
       24   any production from this well in April 2012?
12:35  25        A.   Not without reviewing documents.

87

| | |
|---|---|
| 12:35 | 1 |

12:35    1    Q.    Can you point me to any evidence there was

         2  any production from this well in May 2012?

         3         A.    Not without reviewing documents.

         4         Q.    Can you point me to any evidence there was

12:35    5  any production from this well in June 2012?

         6         A.    Can't speak one way or the other without

         7  reviewing documents.

         8         Q.    Can you point me to any evidence there was

         9  any production from this well in July 2012?

12:36   10         A.    I can't speak one way or the other without

        11  reviewing documents.    There's a document.

        12         Q.    Can you point me to any evidence there was

        13  any production from this well in August 2012?

        14         A.    Not without reviewing documents.

12:36   15         Q.    Can you point me to any evidence there was

        16  any production from this well in September 2012?

        17         A.    Not without reviewing documents.

        18         Q.    Can you point me to any evidence there was

        19  any production from this well in October 2012?

12:36   20         A.    Not without reviewing documents.

        21         Q.    Can you point me to any evidence there was

        22  any production from this well in November 2012?

        23         A.    Not without reviewing documents.

        24         Q.    Can you point me to any evidence there was

12:36   25  any production from this well in December 2012?

88

| | | |
|---|---|---|
| 12:36 | 1 | A.     Not without reviewing a document. |
| | 2 | Q.     Can you point me to any evidence there was |
| | 3 | any production from this well anytime in 2013? |
| | 4 | A.     As previously stated, I can't attest to |
| 12:37 | 5 | the productivity of any time frame without reviewing |
| | 6 | documents. |
| | 7 | Q.     Can you point me to any evidence there was |
| | 8 | any production from this well at any time in 2014? |
| | 9 | A.     Not without reviewing documents. |
| 12:37 | 10 | Q.     Was there any production from this well in |
| | 11 | 2011? |
| | 12 | A.     What was the previous question? |
| | 13 | Q.     My question right now, sir, is, was there |
| | 14 | any production from this well in 2011? |
| 12:37 | 15 | A.     Not without reviewing documents can I |
| | 16 | answer that.  What I'd asked is what your previous |
| | 17 | question was. |
| | 18 | Q.     Was there any production from this well in |
| | 19 | 2012? |
| 12:37 | 20 | A.     Oh, no, not without reviewing documents. |
| | 21 | Q.     Was there any production from this well in |
| | 22 | 2013? |
| | 23 | A.     I can't answer any of these without |
| | 24 | reviewing documents. |
| 12:37 | 25 | Q.     Was there any production from this well in |

| | | |
|---|---|---|
| 12:37 | 1 | 2014? |
| | 2 |     A.   I can't answer any of those without |
| | 3 | reviewing documents. |
| | 4 |     Q.   You did due diligence on this well before |
| 12:38 | 5 | you purchased it, correct, sir? |
| | 6 |     A.   Yes. |
| | 7 |     Q.   This well is classified as an oil well, |
| | 8 | correct, sir? |
| | 9 |     A.   Speak up, please. |
| 12:39 | 10 |     Q.   This well is classified as an oil well, |
| | 11 | correct, sir? |
| | 12 |     A.   Yes. |
| | 13 |     Q.   Was this well capable of producing gas in |
| | 14 | paying quantities in 2011? |
| 12:39 | 15 |     A.   Probably not. |
| | 16 |     Q.   Was this well capable of producing gas in |
| | 17 | paying quantities in 2012? |
| | 18 |     A.   Probably not. |
| | 19 |     Q.   Was this well capable of producing gas in |
| 12:39 | 20 | paying quantities in 2013? |
| | 21 |     A.   Probably not.  It was capable of producing |
| | 22 | oil in paying quantities throughout the time span. |
| | 23 |     Q.   Objection to the nonresponsive portion. |
| | 24 |         Was this well capable of producing gas in |
| 12:39 | 25 | paying quantities in 2014? |

90

| | | | |
|---|---|---|---|
| 12:39 | 1 | A. | No, sir.  It's a oil well. |
| | 2 | Q. | What is your father's name, sir? |
| | 3 | A. | What's that? |
| | 4 | Q. | What is your father's name? |
| 12:40 | 5 | A. | John Philip Forrester. |
| | 6 | Q. | Does he have any interest in Forrester Oil |

& Gas Company?

| | | | |
|---|---|---|---|
| | 8 | A. | No. |
| | 9 | Q. | Does he have any role in Forrester Oil & |

12:40  10  Gas Company?

| | | | |
|---|---|---|---|
| | 11 | A. | Any what? |
| | 12 | Q. | Does he have any role in Forrester Oil & |

13  Gas Company?

| | | | |
|---|---|---|---|
| | 14 | A. | Yes. |
| 12:40 | 15 | Q. | What is his role? |
| | 16 | A. | He helps out consulting me -- consulting |

17  with me on various projects.

| | | | |
|---|---|---|---|
| | 18 | Q. | Does Forrester Oil & Gas Company -- strike |

19  that.

20      What is Forrester Oil & Gas Company?

| | | | |
|---|---|---|---|
| | 21 | A. | What business format? |
| | 22 | Q. | Yes. |
| | 23 | A. | A sole proprietorship. |
| | 24 | Q. | Okay.  It's not a corporation? |
| 12:40 | 25 | A. | No. |

JOHN WINSTON FORRESTER          10/24/2018

95

| 12:50 | 1 | to go -- you did go across Parcel 69764, which is |
| | 2 | not part of the lease, did you? |
| | 3 | A.   Correct.   At the time I believed that it |
| | 4 | was part of the lease. |
| 12:51 | 5 | Q.   Factually you know it was not part of the |
| | 6 | lease. |
| | 7 | A.   Correct, after the fact, later on that was |
| | 8 | determined. |
| | 9 | Q.   Objection, nonresponsive portion. |
| 12:51 | 10 | And you did your due diligence on this |
| | 11 | lease before October 24th, right? |
| | 12 | A.   Correct. |
| | 13 | Q.   How many leases have you done due |
| | 14 | diligence on before the Blackwell lease? |
| 12:51 | 15 | A.   Hundreds. |
| | 16 | Q.   The Blackwell lease, Exhibit 6, had |
| | 17 | terminated prior to you ever buying it, correct? |
| | 18 | A.   Absolutely wrong. |
| | 19 | Q.   Why is that absolutely wrong? |
| 12:53 | 20 | A.   The lease is in full force at the time. |
| | 21 | Q.   Why is it in full force at the time? |
| | 22 | A.   Because the lease was ratified in late '10 |
| | 23 | to early '11 with the lessors and lessees, and that |
| | 24 | affirms an oil and gas lease. |
| 12:54 | 25 | Q.   Any other reasons? |

JOHN WINSTON FORRESTER          10/24/2018

96

12:54  1          A.    No.   Well, yes, actually.

       2          Q.    Tell me.

       3          A.    The force majeure clause of the lease and

       4    the denied access further held the lease.   And then

12:54  5    it was again ratified by myself in '16.   That

       6    further affirmed it.

       7          Q.    Okay.   What else?

       8          A.    That's all that comes to mind at this

       9    time.

12:54 10          Q.    What effect, if any, do ratifications in

      11    2016 have on the lease in 2015?

      12          A.    The effects of the ratification taking

      13    place in '16 assures the validity of the lease from

      14    inception to that time, period.

12:55 15          Q.    Tell me what your basis for that is.

      16          A.    Well, that's common practice in the oil

      17    and gas business for operators to ratify leases.

      18    And that's affirmation between the lessor and the

      19    lessee confirming the validity and existence of the

12:55 20    lease still being in force, among other reasons, but

      21    that's usually the primary reason a ratification is

      22    executed.

      23          Q.    Am I understanding you to be telling us

      24    that the ratification in 2016 has a retroactive

12:56 25    effect?

JOHN WINSTON FORRESTER          10/24/2018

106

13:08   1          Q.   Step two, the force majeure clause
        2   established that the lease was still in its
        3   secondary term from then until the 2016
        4   ratifications were signed.
13:08   5          A.   Well, the --
        6          Q.   Is that correct?
        7          A.   The secondary term doesn't have anything
        8   to do with it.   The -- the force majeure clause
        9   going forward from the first ratifications that were
13:08  10   executed in late '10, early '11, the force majeure
       11   clause tolled the lease and held it in force because
       12   of the denied access from that point forward until
       13   we were allowed access.
       14          Q.   What effect, if any, did the 2010 slash
13:08  15   early 2011 ratifications have after early 2011?
       16          A.   They didn't.
       17          MR. HRYEKEWICZ:   Okay.   Yes, it's a good
       18   time to take a break.
       19          THE VIDEOGRAPHER:   Off the record at 1:08.
13:08  20              (Recess from 1:08 to 1:42)
       21          THE VIDEOGRAPHER:   On the record at 1:42.
       22   BY MR. HRYEKEWICZ:
       23          Q.   Mr. Forrester, you had a chance to visit
       24   with your attorney over lunch?
13:42  25          A.   Uh-huh.   Yes, yes.

JOHN WINSTON FORRESTER                    10/24/2018

143

14:23   1   2015?

        2        A.   No.

        3        Q.   So the Blackwell well, you've reached

        4   it -- my understanding, and tell me if this is true,

14:23   5   is that you've reached it by different entry points,

        6   one being the gate we've talked about on 2966,

        7   correct?

        8        A.   Yes.

        9        Q.   One being that lease road to the north on

14:23  10   the McManus lease.

       11        A.   Yes.

       12        Q.   Is that correct?  And then one being the

       13   road down off of the county road where Jerry Boone

       14   lives.

14:23  15        A.   The original road, yes, ma'am.

       16        Q.   Is that correct?  Are there any other

       17   access points to get to the Blackwell well that

       18   you've used?

       19        A.   No, ma'am.

14:24  20        Q.   Can you estimate how many times you've

       21   been to the Blackwell well yourself?

       22        A.   It's hard to say.  15, 20 times maybe.

       23        Q.   When was the last time you were out there?

       24        A.   Two or three weeks ago.

14:24  25        Q.   On November the 2nd, 2015, you and your

14:31  1      A.   Yes.

       2      Q.   You weren't arrested on November 2nd,

       3   2015, correct?

       4      A.   Correct.

14:32  5      Q.   I want to go back real fast to -- we were

       6   talking about the 15 to 20 times you've been out to

       7   the Blackwell well in your estimation.  Remember

       8   testifying about that?

       9      A.   What's that?

14:32 10      Q.   Do you remember testifying about that?

      11      A.   Yes.

      12      Q.   So the last time you were out there is two

      13   to three weeks ago?  Is that right?

      14      A.   Yes.

14:32 15      Q.   What was your purpose for being out there

      16   two to three weeks ago?

      17      A.   To go assess the conditions of the well.

      18      Q.   Who was with you?

      19      A.   Kendall Steelman.

14:32 20      Q.   Spell the last name?

      21      A.   I think it's S-T-E-E-L-M-A-N.

      22      Q.   Is that the only person that was with you?

      23      A.   Yes.

      24      Q.   Is that a man or a woman?

14:32 25      A.   A man.

```
 1                    CHANGES AND SIGNATURE
 2   WITNESS NAME:              DATE OF DEPOSITION:
 3   JOHN WINSTON FORRESTER     OCTOBER 24, 2018
 4   PAGE   LINE    CHANGE        REASON
 5   _____
 6   _____
 7   _____
 8   _____
 9   _____
10   _____
11   _____
12   _____
13   _____
14   _____
15   _____
16   _____
17   _____
18   _____
19   _____
20   _____
21   _____
22   _____
23   _____
24   _____
25   _____
```

```
 1            I, JOHN WINSTON FORRESTER, have read the
 2    foregoing deposition and hereby affix by signature
 3    that same is true and correct, except as noted
 4    above.
 5
 6
 7                              _____
 8                              JOHN WINSTON FORRESTER
 9
10    STATE OF TEXAS              )
11    COUNTY OF _____ )
12            Before me, _____, on this
13    day personally appeared JOHN WINSTON FORRESTER,
14    known to me (or proved to me under oath or through
15    _____) (description of identity card or
16    other document) to be the person whose name is
17    subscribed to the foregoing instrument and
18    acknowledged to me that they executed the same for
19    the purposes and consideration therein expressed.
20            Given under my hand and seal of office
21    this _____ day of _____, 2018.
22
23                              _____
24                              NOTARY PUBLIC IN AND FOR
25                              THE STATE OF _____
```

246

```
 1   STATE OF TEXAS     )

 2   COUNTY OF DALLAS   )

 3

 4        I, Karen L. Shelton, a Certified Shorthand

 5   Reporter duly commissioned and qualified in and for

 6   the State of Texas, Registered Diplomat Reporter, do

 7   hereby certify that there came before me on the 24th

 8   day of October, 2018, at the law offices of Messer,

 9   Rockefeller & Fort, PLLC, located at 6371 Preston

10   Road, Suite 200, Frisco, Texas, the following named

11   person, to-wit: JOHN WINSTON FORRESTER, who was duly

12   sworn to testify the truth, the whole truth, and

13   nothing but the truth of knowledge touching and

14   concerning the matters in controversy in this cause;

15   and that he was thereupon examined upon oath and his

16   examination reduced to typewriting by me or under my

17   supervision; that the deposition is a true record of

18   the testimony given by the witness.

19        I further certify that pursuant to FRCP

20   Rule 30(e) that the signature of the deponent:

21        _x_ was requested by the deponent or a

22   party before the completion of the deposition, and

23   that signature is to be before any notary public and

24   returned within 30 days from date of receipt of the

25   transcript;
```

JOHN WINSTON FORRESTER          10/24/2018

247

 1            ___ was not requested by the deponent or a
 2    party before the completion of the deposition.
 3            I further certify that I am neither
 4    attorney or counsel for, nor related to or employed
 5    by any of the parties to the action in which this
 6    deposition is taken, and further that I am not a
 7    relative or employee of any attorney or counsel
 8    employed by the parties hereto, or financially
 9    interested in the action.
10            CERTIFIED TO BY ME on this the 5th day of
11    November, A.D., 2018.
12
13
14            _Karen L. Shelton_
              Karen L. Shelton, CSR/RDR/CRR
15            Texas CSR 7050, Exp. 12/31/2018
              Janis Rogers & Associates
16            Firm Registration No. 105
              8951 Cypress Waters Boulevard
17            Suite 160
              Dallas, Texas 75019
18            (214) 631-2655
19
20
21
22
23
24
25

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**



| | |
|---|---|
| **JOHN WINSTON FORRESTER, ET AL.,** § | |
| § | |
| **Plaintiffs,** § | |
| § | |
| **v.** § | **Civil Action No. 6:17cv561** |
| § | |
| **WOOD COUNTY, TEXAS, ET AL.,** § | |
| § | |
| **Defendants.** § | |

**DISCOVERY ORDER**

After a review of the pleaded claims and defenses in this action, in furtherance of

the management of the court's docket under Federal Rule of Civil Procedure 16, and after

receiving the input of the parties to this action, it is ORDERED AS FOLLOWS:

1.   **Disclosures.** Except as provided by paragraph 1(j), within thirty (30) days after the

Scheduling Conference, each party shall disclose to every other party the following

information:

(a)   the correct names of the parties to the lawsuit;

(b)   the name, address, and telephone number of any potential parties;

(c)   the legal theories and, in general, the factual bases of the disclosing party's claims

or defenses (the disclosing party need not marshal all evidence that may be offered

at trial);

(d)   the name, address, and telephone number of persons having knowledge of relevant

facts, a brief statement of each identified person's connection with the case, and a

brief, fair summary of the substance of the information known by any such person;

(e)   any indemnity and insuring agreements under which any person or entity carrying

**DISCOVERY ORDER**

on an insurance business may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment;

(f)     any settlement agreements relevant to the subject matter of this action;

(g)     any witness statements described in Texas Rule of Civil Procedure 192.3(h), including as contained in videotapes and/or audiotapes on county or personal devices (which includes cell phones);

(h)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;

(i)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the disclosing party by virtue of an authorization furnished by the requesting party; and

(j)     for any testifying expert, by the date set by the court in the Docket Control Order, each party shall disclose to the other party or parties:

a.     the expert's name, address, and telephone number;

b.     the subject matter on which the expert will testify;

c.     if the witness is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the disclosing party regularly involve giving expert testimony:

1.     all documents, tangible things, reports, models, or data compilations

that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony, except to the extent protected by Federal Rule of Civil Procedure 26(b)(4); and

2.     the disclosures required Federal Rule of Civil Procedure 26(a)(2)(B) and Local Rule CV-26.

d.     for all other experts, the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them or documents reflecting such information; and

e.     Any party shall be excused from furnishing an expert report of treating physicians.

2.     **Protective Orders.**     The parties have stated that a Protective Order is not necessary at this time.

3.     **Additional Disclosures.**  Each party, within forty-five (45) days after the Scheduling Conference, shall provide to every other party the following:

(a)     All documents and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action. All original documents and tangible things in the possession, custody of each party that are relevant to the pleaded claims or defenses involved in this action shall be made available for inspection and copying within forty-five (45) days after the Scheduling Conference. All electronically stored information, including metadata and embedded data, on county devices and personal devices (including personal cell phones) shall be preserved and produced to the extent relevant to the pleaded claims or defenses involved in this action. By written agreement of all parties,

alternative forms of disclosure may be provided in lieu of paper copies. For example, the parties may agree to exchange images of documents electronically or by means of computer disk; or the parties may agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish paper copies of the disclosure materials;

(b)     a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying as under Rule 34, the documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and

(c)     those documents and authorizations described in Local Rule CV-34;

4.     **Discovery Limitations.** Discovery is limited to the disclosures described in Paragraphs 1 and 3 together with **25 interrogatories, 25 requests for admissions** between each party, the depositions of the parties, depositions on written questions of custodians of business records for third parties, depositions of treating physicians, **two (2) expert witnesses per party,** and ten (10) additional hours of nonparty depositions per side. "Side" means a party or a group of parties with a common interest. Any party may move to modify these limitations for good cause.

5.     **Privileged Information.** There is no duty to disclose privileged documents or information. However, the parties are directed to meet and confer concerning privileged documents or information after the Scheduling Conference. Within sixty (60) days after the Scheduling Conference, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other

parties to assess the applicability of the privilege or protection. Any party may move the court for an order compelling the production of any documents or information identified on any other party's privilege log. If such a motion is made, the party asserting privilege shall respond to the motion within the time period provided by Local Rule CV-7. The party asserting privilege shall then file with the Court within thirty (30) days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for *in camera* inspection. If the parties have no disputes concerning privileged documents or information, then the parties shall inform the court of that fact within sixty (60) days after the Scheduling Conference.

6.   **Pre-trial disclosures**. Each party shall provide to every other party regarding the evidence that the disclosing party may present at trial as follows:

   (a)   The name and, if not previously provided, the address and telephone number, of each witness, separately identifying those whom the party expects to present at trial and those whom the party may call if the need arises.

   (b)   The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

   (c)   An appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.

These disclosures shall be made at least 30 days before trial. Within 14 days thereafter, unless a different time is specified by the court, a party may serve and file a list disclosing

(1) any objections to the use under Rule 32(a) of a deposition designated by another party under subparagraph (B) and (2) any objections, together with the grounds therefor, that may be made to the admissibility of materials identified under subparagraph (C). Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the court for good cause shown.

7. **Signature.** The disclosures required by this order shall be made in writing and signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made. If feasible, counsel shall meet to exchange disclosures required by this order; otherwise, such disclosures shall be served as provided by Fed. R. Civ. P. 5. The parties shall promptly file a notice with the court that the disclosures required under this order have taken place.

8. **Duty to Supplement.** After disclosure is made pursuant to this order, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.

9. Disputes.

   (a)   Except in cases involving claims of privilege, any party entitled to receive disclosures may, after the deadline for making disclosures, serve upon a party required to make disclosures a written statement, in letter form or otherwise, of any reason why the party entitled to receive disclosures believes that the disclosures are insufficient. The written statement shall list, by category, the items the party entitled

to receive disclosures contends should be produced. The parties shall promptly meet and confer. If the parties are unable to resolve their dispute, then the party required to make disclosures shall, within fourteen (14) days after service of the written statement upon it, serve upon the party entitled to receive disclosures a written statement, in letter form or otherwise, which identifies (1) the requested items that will be disclosed, if any, and (2) the reasons why any requested items will not be disclosed. The party entitled to receive disclosures may thereafter file a motion to compel.

(b)    In addition to the requirements of Local Rule CV-7(h) and (i), within 72 hours of the Court setting any discovery motion for a hearing, each party's lead attorney (*see* Local Rule CV-11(a)) and local counsel shall meet and confer in person or by telephone, without the involvement or participation of other attorneys, in an effort to resolve the dispute without Court intervention. Counsel shall promptly notify the Court of the results of that meeting by filing a joint report of no more than 2 pages. Unless excused by the Court, each party's lead attorney shall attend any discovery motion hearing set by the Court (though the lead attorney is not required to argue the motion).

(c)    Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(e). If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(e).

10.    **No Excuses.** A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the

sufficiency of another party's disclosures, or because another party has not made its disclosures. Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand or to change venue.

11. **Filings.** Only upon request from chambers shall counsel submit to the court courtesy copies of any filings.

**SIGNED this 8th day of January, 2018.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE

DISCOVERY ORDER

# B&H

## BLAIES & HIGHTOWER, L.L.P.

James W. Hryekewicz

421 W. Third Street, Suite 900
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)
www.bhilaw.com

Direct: 817-334-8293
jwh@bhilaw.com

March 2, 2018

Via Facsimile 972-668-6414
Wm. Andrew Messer
Brett Gardner
Ashley McSwain
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034

Re:    Case No. 2015-613, *Forrester v. Brown, et al.*

Dear All:

I have taken a quick look at the documents you have produced so far in this matter. Several types of documents I would expect to have found do not appear to have been produced.

As the validity of the mineral lease at issue, and any right of John Winston Forrester to come onto my client's property are at issue in this suit, I would expect to see documents relating to those subjects. Typical documents would include:

- your client's due diligence file, which would include your client's title investigation on the lease;

- well production and royalty data for that lease;

- documents relating to reworking or additional drilling operations at that lease;

- documents relating to the easement referenced in the temporary restraining orders obtained by Forrester in the earlier state court suit;

- any additional documents relating to Forrester's investigation into the validity and scope of the lease at issue.

If you have any additional documents and tangible things exist that relating to these issues, I would appreciate it if you would forward them to me as soon as possible.

Sincerely,

/s/ James W. Hryekewicz

James W. Hryekewicz



(                              (                          P. 1

**＊  ＊  ＊  Communication Result Report ( Mar. 2. 2018  2:34PM ) ＊  ＊  ＊**

1)
2) Blaies & Hightower, L. L. P.

Date/Time: Mar. 2. 2018  2:34PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 9830 Memory TX | 9726686414 | P.  1 | OK | |

--------------------------------------------------------------------------------

Reason for error
E. 1) Hang up or line fail
E. 3) No answer
E. 5) Exceeded max. E-mail size

E. 2) Busy
E. 4) No facsimile connection
E. 6) Destination does not support IP-Fax

## B⦿H

**BLAIES & HIGHTOWER, LLP**

James W. Hryekewicz

421 W. Third Street, Suite 200
Fort Worth, Texas 76102
817-334-0800 (Telephone)
817-334-0574 (Facsimile)
www.bhhlaw.com

Direct: 817-334-8282
jwh@bhhlaw.com

March 2, 2018

Via Facsimile 972-668-6414
Wm. Andrew Messer
Brett Gardner
Ashley McElvain
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, Texas 75034

Re:    Case No. 2015-613, *Forrester v. Brown, et al:*

Dear All:

I have taken a quick look at the documents you have produced so far in this matter. Several types of documents I would expect to have found do not appear to have been produced.

. As the validity of the mineral lease at issue, and any right of John Winston Forrester to come onto my client's property are at issue in this suit, I would expect to see documents relating to those subjects. Typical documents would include:

* your client's due diligence file, which would include your client's title investigation on the lease;

* well production and royalty data for that lease;

* documents relating to reworking or additional drilling operations at that lease;

* documents relating to the easement referenced in the temporary restraining orders obtained by Forrester in the earlier state court suit;

* any additional documents relating to Forrester's investigation into the validity and scope of the lease at issue.

If you have any additional documents and tangible things exist that relating to these leases, I would appreciate it if you would forward them to me as soon as possible.

Sincerely,

/s/ James W. Hryekewicz

James W. Hryekewicz

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| JOHN WINSTON FORRESTER, | § | |
| JOHN PHILIP FORRESTER, | § | |
| JAMES TERRY, JASON WEBB, | § | |
| ALBERTO RODRIGUEZ, | § | |
| JASON FLOYD SMITH, | § | |
| ROBERT BENNINGER, | § | |
| JOSHUA HOWELL, and JOSE PEREZ | § | CIVIL ACTION NO. 6:17-CV-561 |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | |
| | § | |
| WOOD COUNTY, TEXAS, | § | |
| JAMES A. BROWN, in his individual capacity, | § | |
| WILLIAM MILES TUCKER, in his individual | § | |
| capacity, KELLY SMITH, in his individual | § | |
| capacity, KEVIN ATKINSON, in his individual | § | |
| capacity, STEPHEN CATES, in his individual | § | |
| capacity, JOHN A. HAMMACK, and | § | |
| JERRY WAYNE BOONE | § | |
| | § | |
| *Defendants.* | § | **JURY DEMANDED** |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs John Winston Forrester ("Winston Forrester"), John Philip Forrester ("John Forrester"), James Terry, Jason Webb, Alberto Rodriguez, Jason Floyd Smith, Robert Benninger, Joshua Howell, and Jose Perez bring this action against Defendants Wood County, Texas, James A. Brown, William Miles Tucker, Kelly Smith, Kevin Atkinson, Stephen Cates, John A. Hammack, and Jerry Wayne Boone pursuant to 42 U.S.C. § 1983 for violating plaintiffs' constitutional rights and several state law torts and would show the court as follows:

### I. PARTIES

1.    Plaintiff Winston Forrester is a resident of the State of Texas.

2.    Plaintiff John Philip Forrester is a resident of the State of Texas.

3.     Plaintiff James Terry is a resident of the State of Texas.

4.     Plaintiff Jason Webb is a resident of the State of Texas.

5.     Plaintiff Alberto Rodriguez is a resident of the State of Texas.

6.     Plaintiff Jason Floyd Smith is a resident of the State of Texas.

7.     Plaintiff Robert Benninger is a resident of the State of Texas.

8.     Plaintiff Joshua Howell is a resident of the State of Texas.

9.     Plaintiff Jose Perez is a resident of the State of Texas.

10.     Defendant Wood County, Texas is a governmental entity organized under the laws of the State of Texas and has already appeared in this suit.

11.     Defendant James A. Brown is a resident of the State of Texas and may be served at his last known address at 5479 FM 49, Hawkins, Texas 75765.

12.     Defendant Williams Miles Tucker is a resident of the State of Texas and may be served at his last known address at 240 PR 6290, Golden, Texas 75444.

13.     Defendant Kelly Smith is a resident of the State of Texas and has already appeared in this suit.

14.     Defendant Kevin Atkinson is a resident of the State of Texas and has already appeared in this suit.

15.     Defendant Stephen Cates is a resident of the State of Texas and has already appeared in this suit.

16.     Defendant John A. Hammack is a resident of the State of Texas and has already appeared in this suit.

17.     Defendant Jerry Wayne Boone is a resident of the State of Texas and may be served at his last known address at 782 CR 1326, Quitman, Texas 75783.

## II. VENUE AND JURISDICTION

18.     This action is brought in part pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution.

19.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over plaintiffs' pendant state law claims by virtue of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as all of the events alleged herein occurred within this district and all defendants are residents of the State of Texas.

## III. FACTS

21.     This case arises out of an almost unfathomable abuse of the public trust by Wood County, its sheriff as the Wood County policymaker, and several Wood County sheriff's deputies, including numerous citizens that, upon information and belief, the sheriff de facto deputized and co-opted for his own purposes. This abuse of trust was systemic, deep-rooted, and pervasive.

*Winston Forrester learns of the Blackwell mineral lease*

22.     Winston Forrester is an independent oilman who regularly conducts business in East Texas. As part of his business, he acquires, owns, and operates oil and gas wells to extract crude oil and natural gas. Real estate can broadly be divided by the mineral estate, which exists under the surface and consists of all minerals located underground, and the surface estate, which exists above ground. Mineral estates are often leased for the development and sale of minerals, oil, and natural gas underneath the surface. Winston Forrester regularly purchases and sells oil and gas properties because such leases grant rights to the lessee to enter and extract minerals from the land.

23.     One such property became available in 2015 in Wood County, just north of Quitman, Texas. The lease on the property was originally created by W.T. and Annie May Blackwell in 1967 (the "Blackwell lease"). The Blackwell lease included a well (the "Blackwell well") that was originally drilled in 1968 to access the minerals. To drill, complete, and operate the well, the original operators built a road to access the well from County Road 1326 (the "Blackwell well road"). The Blackwell well road, which has been used openly and notoriously for nearly 50 years, begins at County Road 1326, crosses over the neighboring property located directly south of the Blackwell lease, and extends north to a well on the Blackwell lease. A map depicting the relevant properties and areas is included below:



*Sheriff James A. Brown owns the surface estate of the property*

24.     Winston Forrester was interested in purchasing the Blackwell lease property. The surface estate of the Blackwell lease was owned by Sheriff James A. Brown, the then-sheriff of Wood County. Sheriff Brown was elected to his position by the voters of Wood County in 2012 and took office on January 1, 2013. At all times relevant, he was the chief law enforcement officer for Wood County and established and implemented all law enforcement policy for the County. Sheriff Brown was not a licensed Texas peace officer when he was elected sheriff and only received his certification after becoming sheriff. Upon information and belief, Sheriff Brown had been a licensed Texas peace officer for less than 10 months when his campaign of harassment, intimidation, and abuse of office against Winston Forrester began.

25.     Although Sheriff Brown's official county website states that he "took a solemn oath . . . to enforce the Law and to protect the Constitution," that oath apparently did not apply to plaintiffs. Enforcing the law and protecting lives apparently comes second to Sheriff Brown keeping Winston Forrester and his associates off his property.

*Sheriff Brown's campaign of retaliation against Winston Forrester*

26.     Winston Forrester purchased the Blackwell lease effective October 1, 2015. On or about October 24, 2015, Winston Forrester attempted to access the Blackwell lease via a gate on Farm Market Road 2966 ("FM 2966") to recover millions of dollars' worth of equipment he had rented that had been stranded in the mud on the Blackwell lease following a heavy rainstorm. Defendant John A. Hammack, an employee of Sheriff Brown, met Winston Forrester at the gate, shouting profanities and attempting to prevent Winston from entering upon the Blackwell lease—i.e. Winston Forrester's own property.   Despite

Hammack's shouting and profanities, Winston Forrester did not touch Hammack and then entered onto his property to free the stranded equipment.

27.     Shortly thereafter, Winston Forrester was approached by two Wood County sheriff's deputies, Sergeant Stephen Cates and Deputy Kevin Atkinson, who advised that they were there to investigate an "assault" by Winston Forrester allegedly against Hammack. Despite the complete and total falsity of this charge, the Wood County sheriff's deputies falsely seized, detained, and arrested Winston Forrester by placing him in handcuffs while the claimed "investigation" continued. Deputy Atkinson later removed the handcuffs and advised Winston Forrester that there would be no charges.

28.     A few days later, on or about October 26, 2015, Winston Forrester again went to his property on the Blackwell lease via the gate on FM 2966 to complete additional work at the Blackwell well. When Winston Forrester attempted to leave, he noticed that Hammack had blocked the gate with a truck. Just as they had days before, employees of the Wood County sheriff's office again arrived on the scene to harass and intimidate Winston Forrester, this time due to a claimed "trespassing complaint" despite the fact that Winston Forrester was on his own property and had an absolute right to extract minerals from the mineral estate. The Wood County sheriff's deputies, Lieutenant Kelly Smith and Deputy Atkinson, issued Winston Forrester a misdemeanor criminal mischief citation after informing him that their supervisor, Captain Tucker, had directed them to arrest Winston Forrester "no matter what." Upon information and belief, Captain Tucker's directive came from Sheriff Brown. Lieutenant Smith and Deputy Atkinson told Winston Forrester that if he returned to the Blackwell lease, he would be arrested.

29.     Because of the continual efforts to prevent him from accessing his *own* property, Winston Forrester sought and obtained injunctive relief in the 402nd Judicial

District Court of Wood County, which prohibited Sheriff Brown and his agents, representatives, employees, or anyone else under his control from blocking Winston Forrester's and his employees' access to the Blackwell well by interfering with Winston Forrester's operations, blocking the easement—i.e. the Blackwell well road—with equipment, vehicles, or any other obstruction.  Moreover, the court enjoined any threatening of Winston Forrester or his employees, locking any gates along the Blackwell well road without providing Winston Forrester access, and prevented the building of any fence along the road by Sheriff Brown or his agents and employees.

30.    On or about October 28, 2015, Captain Tucker threatened Winston Forrester that the misdemeanor criminal mischief charge against him would be enhanced to a felony charge in retaliation for Winston Forrester seeking injunctive relief. Unbeknownst to Winston Forrester, Captain Tucker submitted a complaint that resulted in the state court issuing a felony warrant for Winston Forrester's arrest.  Winston Forrester was eventually arrested in Titus County under the authority of the retaliatory arrest warrant.  He has never been indicted for this charge that was, upon information and belief, brought by the order of Sheriff Brown in retaliation for Winston Forrester attempting to access the Blackwell lease, which is located underneath the surface estate owned by Sheriff Brown.

*Sheriff Brown's deputized henchman attempts to shoot plaintiffs on Sheriff Brown's order*

31.    On the morning of November 2, 2015, Winston Forrester, his father John Forrester, and several associates set out to go to the Blackwell lease so that Winston Forrester could conduct the business for which he bought the lease: extracting minerals from the mineral estate.  After turning on the Blackwell well road, John Forrester exited his vehicle to open a gate and let the convoy through.  Just then, Jerry Wayne Boone exited a nearby trailer yelling

and screaming profanities at Winston Forrester's party. Some of Winston Forrester's associates, including Jason Smith, Alberto Rodriguez, Jason Webb, and Robert Benninger, exited their vehicles to confirm their location on the Blackwell well road. This location was confirmed. Jose Perez stayed inside his vehicle while James Terry exited his vehicle to close the gate behind the Winston Forrester convoy.

32.     Boone briefly returned to his trailer only to emerge moments later with a black 9-millimeter handgun pointed directly at John Forrester. Upon information and belief, Boone had received orders from Sheriff Brown to shoot them. Boone was on his cell phone during the assault and had previously told Winston Forrester that he had been authorized by Sheriff Brown to stop Winston Forrester's access to the Blackwell well "by any means necessary." Boone had also told Winston Forrester that if he had a problem with Boone to take it up with Sheriff Brown. Boone then began firing. He struck Winston Forrester's father in the lower leg, causing him to immediately collapse to the ground. Boone stood over Winston Forrester's father and pointed his gun directly at John Forrester's head to shoot and kill him from point-blank range. In an effort to save his father's life, Winston Forrester shouted at Boone to distract him, which resulted in Boone turning and firing at Winston Forrester and striking him in the back. Upon being shot, Winston Forrester retreated to his truck.

33.     With Winston Forrester and his father down, Boone began firing at the other men that were with Winston Forrester's party. Rodriguez, Smith, and Webb all sustained injuries while attempting to flee and avoid Boone's murderous rampage. Robert Benninger took evasive action to avoid gunfire. In shock, Joshua Howell took shelter inside a vehicle to avoid the gunfire. Boone pointed the gun at Jose Perez while he sat in his vehicle and ordered him to leave the property. Boone then approached James Terry, held the gun to his head, and ordered him to leave.

*Even after Boone's unsuccessful murder attempt, Sheriff Brown continues his unlawful assault on Winston Forrester's rights*

34.     While sitting in his truck and bleeding from a gunshot wound to his back, Winston Forrester called 9-1-1 for emergency assistance. Unfortunately, he got the Wood County sheriff's office. Wood County deputies arrived on the scene and, upon information and belief, did nothing. Boone had stopped shooting and the Wood County deputies, upon information and belief, refused to arrest Boone on authority from Sheriff Brown despite multiple instances of attempted murder.

35.     In or about late November 2015, Winston Forrester and his father attempted to return to the Blackwell lease for the first time following the shooting. When they turned onto the Blackwell well road, they observed Boone standing on his front porch brandishing a gun. He took no direct action to stop them from accessing the Blackwell lease at that time, but the point was clear: Sheriff Brown did not want Winston Forrester stepping foot on the Blackwell lease.

36.     Upon information and belief, in November 2015 Sheriff Brown caused to be constructed a barbed wire barricade with a "no trespassing" sign across the Blackwell well road to prevent Winston Forrester's access to the Blackwell well. Further, upon information and belief, Sheriff Brown and/or his employees or agents caused multiple trees along the Blackwell well road to be cut down to create a large barrier across the Blackwell well road to prevent Winston Forrester's access to the Blackwell well.

37.     Winston Forrester eventually installed an oil flow line from the well on the Blackwell lease to a series of storage tanks. On or about December 16, 2015, Winston Forrester discovered that his oil flow line had been sabotaged and diverted into a nearby pond, causing a large oil spill. Upon information and belief, Sheriff Brown ordered the oil flow line

to be sabotaged to prevent Winston Forrester from extracting minerals underneath Sheriff Brown's surface estate property. Winston Forrester eventually sought and received injunctive relief in state court against Sheriff Brown to allow him to access and use the Blackwell lease. Nevertheless, Sheriff Brown's tireless campaign to use his power as the Wood County sheriff to intimidate, harass, assault, and frustrate Winston Forrester from using his property had its desired effect: Winston Forrester was forced to cease operations on the Blackwell lease.

## IV.  CAUSES OF ACTION

1.     **Federal Claims**

   **Count One:     Violation of 42 U.S.C. § 1983 by Wood County**

   38.     Plaintiffs incorporate the above paragraphs by reference.

   39.     Title 42 U.S.C. § 1983 provides in relevant part:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

   40.     Wood County is a "person" as that term is used in 42 U.S.C. § 1983.

   41.     Sheriff Brown is the final policymaker responsible for developing and implementing law enforcement policy for Wood County.

   42.     Wood County violated plaintiffs' constitutional rights by:

   a.  Adopting a policy or creating a custom of harassment, oppression, and retaliation for the lawful use of property by private citizens;

   b.  Adopting a policy or creating a custom under which employees unconstitutionally seize, falsely detain, and falsely arrest private citizens;

    c.   Adopting a policy or creating a custom under which employees and private citizens who have been made de facto deputies unconstitutionally seize private citizens and use excessive force;

    d.   Adopting a policy or creating a custom under which employees violate the Fourth Amendment rights of citizens;

    e.   Adopting a policy or creating a custom under which a private citizen is deputized and co-opted for illegal purposes;

    f.   Adopting a policy or creating a custom under which subordinates, including private citizens who are made de facto deputies, are unsupervised and untrained;

    g.   Acting with deliberate indifference in supervising and training employees and de facto deputies who committed the wrongful acts described herein; and

    h.   Adopting a policy or creating a custom under which employees and deputized private citizens are authorized and directed to shoot at unarmed private citizens in retaliation for attempting to access their property

**Count Two:**  **Violation of the Fourth Amendment and Fourteenth Amendment (unlawful seizure) by defendants Wood County, Sheriff Brown, Captain Tucker, Lieutenant Smith, Sergeant Cates, and Deputy Atkinson**

43.    Plaintiffs incorporate the above paragraphs by reference.

44.    At all times relevant, defendants Wood County, Sheriff Brown, Captain Tucker, Lieutenant Smith, Sergeant Cates, and Deputy Atkinson acted under color of state law and pursuant to customs, practices, and/or policies of Wood County as adopted and/or condoned by Sheriff Brown, the final policymaker for Wood County.

45.    Wood County, Sheriff Brown, Captain Tucker, Lieutenant Smith, Sergeant Cates, and Deputy Atkinson are all "persons" as that term is used in 42 U.S.C. § 1983.

46.     On or about October 24, 2015, Wood County deputy officers Deputy Atkinson and Sergeant Cates, acting on orders from Sheriff Brown, illegally and falsely detained, seized, and arrested Winston Forrester by placing him in handcuffs while ostensibly conducting an "investigation" that resulted in no criminal charge, which was done in retaliation for Winston Forrester attempting to enter onto the Blackwell lease on which Sheriff Brown in the owner of the surface estate.

47.     On or about October 26, 2015, Captain Tucker, upon information and belief, acting on orders from Sheriff Brown, ordered that Winston be arrested "no matter what" in retaliation for Winston attempting to enter onto the Blackwell lease on which Sheriff Brown is the owner of the surface estate.  Captain Tucker made this order to Deputy Atkinson and Lieutenant Smith, who unlawfully arrested, detained, and seized Winston.

48.     As a result of the actions of Sheriff Brown, Winston Forrester was illegally and unconstitutionally arrested, detained, and seized on multiple occasions by Captain Tucker, Lieutenant Smith, Sergeant Cates, and Deputy Atkinson.  These defendants' conduct was unlawful, violated clearly established law, and was objectively unreasonable.

**Count Three:   Violation of the Fourth Amendment and Fourteenth Amendment (excessive force) by defendants Wood County and Sheriff Brown**

49.     Plaintiffs incorporate the above paragraphs by reference.

50.     At all times relevant, defendants Wood County and Sheriff Brown acted under color of state law and pursuant to customs, practices, and/or policies of Wood County as adopted and/or condoned by Sheriff Brown, the final policymaker for Wood County law enforcement policy.

51.     Wood County and Sheriff Brown are "persons" as that term is used in 42 U.S.C. § 1983.

52.     Wood County and Sheriff Brown unlawfully seized Winston Forrester and John Philip Forrester by the use of physical force. Wood County and Sheriff Brown, upon information and belief, authorized and directed the unlawful shooting of both Winston Forrester and his father, resulting in severe injuries to both. These injuries were directly and only caused by the shooting.

53.     Plaintiffs Alberto Rodriguez and Jason Webb suffered physical injury while attempting to evade Boone's shots, each requiring surgical treatment and resulting in permanent disability. Plaintiff Jason Floyd Smith suffered physical injury while attempting to evade Boone's shots.

54.     Plaintiffs Alberto Rodriguez, Jason Floyd Smith, Jason Webb, Robert Benninger, Joshua Howell, Jose Perez, and James Terry were present at the time of Boone's ordered rampage and all suffered severe psychological injuries directly and only resulting from the attempted shooting.

55.     Wood County's and Sheriff Brown's actions in formulating and enforcing a policy of, upon information and belief, ordering de facto deputies to open fire on private citizens to prevent them from accessing property were objectively unreasonable and violated clearly established law.

**Count Four:     Violation of Fourteenth Amendment (substantive due process) by Wood County and Sheriff Brown**

56.     Plaintiffs incorporate the above paragraphs by reference.

57.     At all times relevant, defendants Wood County and Sheriff Brown acted under color of state law and pursuant to customs, practices, and/or policies of Wood County as adopted and/or condoned by Sheriff Brown, the final policymaker for Wood County law enforcement policy.

58.     Wood County adopted a policy or custom by Sheriff Brown, as the final policymaker, upon information and belief, of ordering the shooting of private citizens trying to

access property to which they had a lawful right of access. The conduct of Wood County and Sheriff Brown, upon information and belief, in making a private citizen a de facto deputy, ordering the de facto deputy to shoot other citizens, and standing by while the de facto deputy opened fire and struck private citizens was an exercise of official power without any reasonable justification and was egregious, shocks the contemporary conscience, and was so brutal and offensive that it does not comport with traditional ideas of fair play and decency.

59.   Wood County and Sheriff Brown acted intentionally and/or with deliberate indifference to the rights of plaintiffs. As a result, plaintiffs Winston Forrester, John Philip Forrester, Alberto Rodriguez, Jason Floyd Smith, Jason Webb, Robert Benninger, Joshua Howell, and James Terry suffered injury.

60.   It was clearly established on November 2, 2015, that a county sheriff could not order the unlawful shooting of private citizens. Wood County's and Sheriff's Brown's actions were taken entirely without lawful authority and were objective unreasonable from the viewpoint of a reasonable county sheriff.

**2.   State Law Claims**

**Count Five:   Assault by Boone**

61.   Plaintiffs incorporate the above paragraphs by reference.

62.   On or about November 2, 2015, defendant Jerry Wayne Boone intentionally, knowingly, and/or recklessly caused bodily injury to plaintiffs Winston Forrester, John Philip Forrester, Alberto Rodriguez, Jason Floyd Smith, and Jason Webb by firing multiple rounds from a handgun in an attempt to murder these plaintiffs. Boone intentionally or knowingly threatened plaintiffs Robert Benninger, Joshua Howell, and James Terry with imminent bodily injury by firing at them in the attempted murder described above. Boone intentionally or knowingly threatened plaintiffs James Terry and Jose Perez with imminent bodily injury by pointing his weapon at them

PLAINTIFFS' FIRST AMENDED COMPLAINT                                                    PAGE 14

and placing them in fear of imminent bodily injury.  Boone knew or should have known that plaintiffs would regard the contact as offensive or provocative.

63.     As a result of the assault described herein, plaintiffs have suffered bodily and/or mental and/or emotional injury and harm.

**Count Six:     Intentional Infliction of Emotional Distress by Sheriff Brown and Boone**

64.     Plaintiffs incorporate the above paragraphs by reference.

65.     Sheriff Brown and his de facto deputy Jerry Wayne Boone waged a campaign of harassment and intimidation against Winston Forrester to prevent him from accessing his property. This campaign included Sheriff Brown, upon information and belief, ordering Boone to confront Winston Forrester, verbally assault him, and attempt to physically prevent him from entering his property on numerous occasions.   Sheriff Brown, upon information and belief, ordered his subordinates in the Wood County sheriff's office to falsely detain Winston Forrester on numerous occasions.  When this proved ineffective, Sheriff Brown directly ordered Boone, upon information and belief, to shoot Winston Forrester.  This order resulted in Winston Forrester and his father being shot and wounded and Boone leveling his weapon at John Forrester's head to execute him. It also resulted in Alberto Rodriguez, Jason Floyd Smith, and Jason Webb suffering physical injuries attempting to escape Boone's gunfire.  Robert Benninger and Joshua Howell were forced to take cover to avoid being killed.  Boone leveled his gun at Jose Perez and ordered him to leave the property.  Boone then held his gun to James Terry's head and forced him off the property.

66.     Sheriff Brown's and Boone's actions described herein were taken intentionally and/or recklessly.  Their conduct was patently extreme and outrageous, as it included an attempt to shoot plaintiffs.  As a result of the conduct described herein, each of these plaintiffs suffered and continues to suffer severe emotional distress for which Sheriff Brown and Boone are liable.

## Count Seven:  False Arrest by Sheriff Brown, Captain Tucker, Deputy Atkinson, Lieutenant Smith, Sergeant Cates, and Hammack

67.     Plaintiffs incorporate the above paragraphs by reference.

68.     Upon information and belief, Sheriff Brown ordered Captain Tucker to utilize Deputy Atkinson, Lieutenant Smith, Sergeant Cates to arrest, detain, and seize Winston Forrester "no matter what" on October 24 and October 26, 2015.  John Hammack also prevented Winston Forrester from leaving the Blackwell lease on October 26, 2015, by blocking the access gate on FM 2966.  The conduct of Sheriff Brown, Captain Tucker, Deputy Atkinson, Sergeant Cates, Lieutenant Smith, and Hammack described herein was willful and directed at physically detaining Winston Forrester to restrain his movement from one place to another.  The actions these defendants took against Winston Forrester was without his consent.  These defendants had no lawful authority to detain Winston Forrester on these occasions, as the detentions were made in retaliation for Winston Forrester attempting to access his property on the Blackwell lease— property that Winston Forrester had a legal right to access.  There was no legal authority or justification for either detention, as Winston Forrester had clearly committed no assault and had not committed criminal mischief.

69.     Besides blocking Winston Forrester from exiting through the access gate on FM 2966 on October 26, 2015, Hammack also provided false information to law enforcement authorities on or about October 24, 2015—that he was assaulted by Winston—that preceded Winston's false arrest by Sheriff Brown, Captain Tucker, Deputy Atkinson, Sergeant Cates, and Lieutenant Smith.  Hammack had no legal authority for this detention.

## Count Eight:  Conspiracy by Sheriff Brown, Captain Tucker, Deputy Atkinson, Lieutenant Smith, Sergeant Cates, Hammack, and Boone

70.     Plaintiffs incorporate the above paragraphs by reference.

71.     Sheriff Brown, Captain Tucker, Deputy Atkinson, Sergeant Cates, Lieutenant Smith, and Hammack together jointly conspired to falsely and unlawfully arrest and detain Winston Forrester on both October 24, 2015, and October 26, 2015. This unlawful purpose was accomplished by Winston's multiple unlawful and unconstitutional detentions and arrests on those dates by Deputy Atkinson, Sergeant Cates, and Lieutenant Smith. As a result of the unlawful and false arrests, Winston was harmed in an amount within the jurisdictional limit of this court.

72.     Sheriff Brown and Boone together jointly conspired to assault plaintiffs on November 2, 2015, when, upon information and belief, Sheriff Brown ordered Boone, his de facto deputy, to "shoot them." This unlawful purpose was accomplished when Boone opened fire on the plaintiffs, striking Winston and his father, and causing physical, mental, psychological, and/or emotional injury to Alberto Rodriguez, Jason Floyd Smith, Jason Webb, Robert Benninger, and Joshua Howell. All plaintiffs suffered injuries directly and proximately caused by the unlawful conspiracy described herein.

## V. ATTORNEYS' FEES

73.     With regard to plaintiffs' claims under 42 U.S.C. § 1983, pursuant to the terms of 42 U.S.C. § 1988, plaintiffs are entitled to recover against defendants a reasonable amount of attorneys' fees incurred by plaintiffs by reason of the above circumstances. Plaintiffs have been compelled to employ the services of Messer, Rockefeller & Fort, PLLC to file this lawsuit and to pursue plaintiffs' claims herein. Plaintiffs are entitled to recover those attorneys' fees. Plaintiffs are further entitled to recover court costs and other expenses incurred in the prosecution of this suit.

## VI. DAMAGES

74.     Plaintiffs incorporate the above paragraphs by reference.

75.     The above-described acts, omissions, failures, and conduct of defendants have

caused plaintiffs significant damages, and plaintiffs are entitled to recover from defendants all actual, punitive, exemplary, and statutory damages available and recoverable, including but not limited to the following:

    a.  Actual damages

    b.  Physical pain and suffering suffered in the past;

    c.  Physical pain and suffering in the future;

    d.  Mental anguish suffered in the past;

    e.  Mental anguish in the future;

    f.  Medical care and treatment in the past

    g.  Medical care and treatment that in reasonable probability will be sustained in the future; and

    h.  Exemplary and punitive damages

76.    In addition, plaintiffs are entitled to recover the amount of their claims plus interest pursuant to any applicable statute, including but not limited to Texas Insurance Code § 542.060.

## VII.   JURY DEMAND

77.    Plaintiffs respectfully request that this cause by tried before a jury.

## VIII.   PRAYER

WHEREFORE, Plaintiffs John Winston Forrester, John Philip Forrester, James Terry, Jason Webb, Alberto Rodriguez, Jason Floyd Smith, Robert Benninger, Joshua Howell, and Jose Perez pray that they have judgment against the defendants for the claims outlined herein and that they recover all damages alleged herein, including all actual and punitive damages to which they are justly entitled. Plaintiffs further respectfully request their reasonable and necessary attorneys' fees as provided by law, costs of court, pre-judgment and post-judgment interest as provided by law, and such other relief to which the plaintiffs may be justly entitled.

PLAINTIFFS' FIRST AMENDED COMPLAINT                           PAGE 18

Respectfully submitted,

/s/ Wm. Andrew Messer
WM. ANDREW MESSER
State Bar No. 13472230
andy@txmunicipallaw.com
BRETT GARDNER
State Bar No. 24078539
brett@txmunicipallaw.com
ASHLEY MCSWAIN
State Bar No. 24091100
ashley@txmunicipallaw.com
MESSER, ROCKEFELLER & FORT, PLLC
6371 Preston Road, Suite 200
Frisco, TX  75034
972.668.6400 – Telephone
972.668.6414 – Facsimile

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2017, I electronically served the foregoing document via the clerk of the court for the U.S. District Court, Eastern District of Texas to all counsel of record.

/s/ Wm. Andrew Messer
WM. ANDREW MESSER

386

PRODUCERS 88 REV-TEX. A      (4-61)      **OIL, GAS AND MINERAL LEASE**   57547

THIS AGREEMENT made on 8th day of November 11-67, between

W. T. Blackwell and wife, Annie May Blackwell

Quitman, Texas (Post Office Address)

herein called lessor (whether one or more), and A. R. Goldsmith , Lessee,

NORTH One-Half of the following described 87.07 acres and being the same 87.07 acres as described in Certified Field Notes by W.A. Norrison Jr., filed for record on April 11, 1966, under File No. A9222, Wood County, Texas described as,

BEGINNING at the N W corner of the J P Duncan survey, being also an interior corner of the J Robbins survey Abst 484, and an interior corner of the I.E. Johnson 86 acre tract;

THENCE SOUTH 89 deg 50 Min East along a south line of said Robbins survey and the upper south line of the said Johnson 86 acre tract a distance of 623.3 vrs. to the upper south east corner of said Johnson 86 acre tract this being also the southwest corner of the J H McManus 76 acre tract and the Northwest corner of the J H McManus 5 acre tract;

THENCE S 0 deg 15 min W with the west line of the said McManus 5 acre tract a distance of 85 vrs to the southwest corner of said 5 acre tract;

THENCE S 89 deg 50 min E, with the south line of the aforesaid McManus 5 acre tract a distance of 402.2 vrs to the southeast corner of same, being also a point on the west line of the Will McMillian 2.48 acre tract;

THENCE SOUTH 0 deg 35 min West with the west line of the said Will McMillan 2.48 acre tract, the west line of the Dollie Turner 17.85 acre tract, the west line of the Tobe Willis 17.85 acre tract the west line of the W.A. Howard et al 17.85 acre tract, the west line of the J.D. and Dixie Benton et al 26.8 acre tract, the west line of the J.D. and Dixie Benton 27.8 acre tract and the west line of the T H Rappe 14.9 acre tract, at a distance of 835 vrs a point for corner on the west line of the said 14.9 acre tract, said point being also the Northeast corner of the J H McManus 38 acre tract;

THENCE S 89 deg 50 Min W 495.4 vrs to the S.E. corner of 73 acres formerly owned by Terrell Howle, same being on the North line of said 38 acre tract owned by J H McManus;

THENCE N 0 deg 45 min W with the east line of the said Howell 73 acre tract, a distance of 817.2 vrs. the Northeast corner of same;

THENCE S 87 deg 10 min W with the North line of said Howell 73 acre tract a distance of 510.9 vrs to the Northwest corner of said Howell 73 acre tract being also a point on the west line of the aforementioned J. Robbins survey;

THENCE N 0 deg 16 min E 130.9 vrs to the place of beginning, containing 87.07 acres of land, more or less, and being the tract of land described as containing 85 acres more or less in deed dated July 29, 1935, from W. P. Blackwell to W.T. Blackwell recorded in Vol. 152, Page 562, Deed Records of Wood County, Texas.

SIGNED FOR IDENTIFICATION: *W. T. Blackwell*

*Annie May Blackwell*

WF 00260



586
397

five (5)

Thirty-eight and 00/100 ......... Dollars $38.00

First National Bank ............ Bank of ..... Coldspring, Texas

WITNESSES:

M. T. BLACKWELL

Aunee May Blackwell

Social Security No. 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

307

388

$\frac{586}{388}$

THE STATE OF TEXAS
COUNTY OF____Wood____

BEFORE ME, the undersigned authority, a Notary Public in and for ____Wood_____County, Texas, on this

day personally appeared ____W. T. Blackwell____ and ____Annie May Blackwell____
his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me

that they executed the same for the purposes and consideration therein expressed and the said_____

____Annie May Blackwell____ wife of the said ____W. T. Blackwell____
having been examined by me privily and apart from her husband, and having the same fully explained to her, she, the said

____Annie May Blackwell____ acknowledged such instrument to be her act and deed, and de-
clared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to
retract it.

Given under my hand and seal of office this____8th____day of____November____ A. D. 19 67.

_____
Notary Public____Wood_____County, Texas.

FILED FOR RECORD THE ____8th____ DAY OF ____November____ A. D. 1967 AT 3:25 O'CLOCK P.M.
RECORDED THIS THE ____15th____ DAY OF ____November____ A. D. 1967 AT 2:30 O'CLOCK P.M.
BY ____M. Bridges____ DEPUTY       J. A. GLENN, COUNTY CLERK - WOOD COUNTY, TEXAS.

WF 00252

# EXHIBIT C



STATE OF TEXAS   §
                          §
COUNTY OF TRAVIS   §

## CERTIFICATION

I am an authorized Custodian of Records for the Railroad Commission of Texas and this certifies that the attached records are true and correct copies of documents maintained by the Railroad Commission of Texas. The records attached are exact duplicates of the originals.

Karen Sanchez

**ONLINE SYSTEM**

## Oil & Gas Production Data Query

Production Data   FAQs   PDQ Help

General Production Query   **Specific Lease Query**

### Specific Lease Query Results

| Query Path: Search Criteria > District 06, Lease: BLACKWELL, W. T. |
|---|
| Date Range: Jan ∨ 2009 ∨ to Oct ∨ 2015 ∨  Submit |

**Related Links**
O&G Directory
O&G Proration Schedule
Offshore County Map

View by:  **Production and Total Disposition**  Disposition Details  County Production

Lease Name: BLACKWELL, W. T., Lease No: 05321
District 06
Lease Production and Disposition
Jan 2009 - Oct 2015

View Page By Page

| Date | OIL (BBL) | | Casinghead(MCF) | | Operator Name | Operator No. | Field Name | Field No. |
|---|---|---|---|---|---|---|---|---|
| | Production | Disposition | Production | Disposition | | | | |
| Jan 2009 | 5 | 75 | 0 | 0 | QUITMAN CONSTRUCTION CO., INC. | 685740 | QUITMAN (EAGLE FORD) | 73844235 |
| Feb 2009 | 1 | 0 | 0 | 0 | | . | | |
| Mar 2009 | 1 | 0 | 0 | 0 | | | | |
| Apr 2009 | 1 | 0 | 0 | 0 | | | | |
| May 2009 | 1 | 0 | 0 | 0 | | | | |
| Jun 2009 | 1 | 0 | 0 | 0 | | | | |
| Jul 2009 | 1 | 0 | 0 | 0 | | | | |
| Aug 2009 | 1 | 0 | 0 | 0 | | | | |
| Sep 2009 | 1 | 0 | 0 | 0 | | | | |
| Oct 2009 | 1 | 0 | 0 | 0 | | | | |
| Nov 2009 | 1 | 0 | 0 | 0 | | | | |
| Dec 2009 | 1 | 0 | 0 | 0 | | | | |
| Jan 2010 | 1 | 0 | 0 | 0 | | | | |
| Feb 2010 | 1 | 0 | 0 | 0 | | | | |
| Mar 2010 | 1 | 0 | 0 | 0 | | | | |
| Apr 2010 | 1 | 0 | 0 | 0 | | | | |

Lease Production/Oil Query Results

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| May 2010 | 1 | 0 | 0 | 0 | | | |
| Jun 2010 | 1 | 0 | 0 | 0 | | | |
| Jul 2010 | 0 | 0 | 0 | 0 | | | |
| Aug 2010 | 1 | 0 | 0 | 0 | | | |
| Sep 2010 | 0 | 0 | 0 | 0 | | | |
| Oct 2010 | 1 | 0 | 0 | 0 | | | |
| Nov 2010 | 0 | 0 | 0 | 0 | | | |
| Dec 2010 | 0 | 0 | 0 | 0 | | | |
| Jan 2011 | 1 | 0 | 0 | 0 | | | |
| Feb 2011 | 0 | 0 | 0 | 0 | | | |
| Mar 2011 | 1 | 0 | 0 | 0 | | | |
| Apr 2011 | 0 | 0 | 0 | 0 | | | |
| May 2011 | 0 | 0 | 0 | 0 | | | |
| Jun 2011 | 0 | 31 | 0 | 0 | MANEK EXPLORATION, INC. | 523905 | |
| Jul 2011 | 5 | 0 | 0 | 0 | | | |
| Aug 2011 | 2 | 0 | 0 | 0 | | | |
| Sep 2011 | 0 | 0 | 0 | 0 | | | |
| Oct 2011 | 2 | 0 | 0 | 0 | | | |
| Nov 2011 | 0 | 0 | 0 | 0 | | | |
| Dec 2011 | 0 | 0 | 0 | 0 | | | |
| Jan 2012 | 0 | 0 | 0 | 0 | | | |
| Feb 2012 | 0 | 0 | 0 | 0 | | | |
| Mar 2012 | 0 | 0 | 0 | 0 | | | |
| Apr 2012 | 0 | 0 | 0 | 0 | | | |
| May 2012 | 1 | 0 | 0 | 0 | | | |
| Jun 2012 | 0 | 0 | 0 | 0 | | | |
| Jul 2012 | 0 | 0 | 0 | 0 | | | |
| | 0 | 0 | 0 | 0 | VOGO, INC. | 886321 | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Aug 2012** | | | | | | | |
| **Sep 2012** | 0 | 0 | 0 | 0 | | | |
| **Oct 2012** | 0 | 0 | 0 | 0 | | | |
| **Nov 2012** | 2 | 0 | 0 | 0 | | | |
| **Dec 2012** | 0 | 0 | 0 | 0 | | | |
| **Jan 2013** | 0 | 0 | 0 | 0 | | | |
| **Feb 2013** | 1 | 0 | 0 | 0 | | | |
| **Mar 2013** | 0 | 0 | 0 | 0 | | | |
| **Apr 2013** | 0 | 0 | 0 | 0 | | | |
| **May 2013** | 0 | 0 | 0 | 0 | | | |
| **Jun 2013** | 0 | 0 | 0 | 0 | | | |
| **Jul 2013** | 0 | 0 | 0 | 0 | | | |
| **Aug 2013** | 0 | 0 | 0 | 0 | | | |
| **Sep 2013** | 0 | 0 | 0 | 0 | | | |
| **Oct 2013** | 0 | 0 | 0 | 0 | | | |
| **Nov 2013** | 0 | 0 | 0 | 0 | | | |
| **Dec 2013** | 0 | 0 | 0 | 0 | | | |
| **Jan 2014** | 0 | 0 | 0 | 0 | | | |
| **Feb 2014** | 0 | 0 | 0 | 0 | | | |
| **Mar 2014** | 0 | 0 | 0 | 0 | | | |
| **Apr 2014** | 0 | 0 | 0 | 0 | | | |
| **May 2014** | 0 | 0 | 0 | 0 | | | |
| **Jun 2014** | 0 | 0 | 0 | 0 | | | |
| **Jul 2014** | 0 | 0 | 0 | 0 | | | |
| **Aug 2014** | 0 | 0 | 0 | 0 | | | |
| **Sep 2014** | 0 | 0 | 0 | 0 | | | |
| **Oct 2014** | 0 | 0 | 0 | 0 | | | |
| **Nov 2014** | 0 | 0 | 0 | 0 | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Dec 2014** | 0 | 0 | 0 | 0 | | | |
| **Jan 2015** | 0 | 0 | 0 | 0 | | | |
| **Feb 2015** | 0 | 0 | 0 | 0 | | | |
| **Mar 2015** | 0 | 0 | 0 | 0 | | | |
| **Apr 2015** | 0 | 0 | 0 | 0 | | | |
| **May 2015** | 0 | 0 | 0 | 0 | | | |
| **Jun 2015** | 0 | 0 | 0 | 0 | | | |
| **Jul 2015** | 0 | 0 | 0 | 0 | | | |
| **Aug 2015** | 0 | 0 | 0 | 0 | | | |
| **Sep 2015** | 0 | 0 | 0 | 0 | | | |
| **Oct 2015** | 0 | 13 | 0 | 0 | FORRESTER OIL & GAS CO. | 277385 | |
| **Total** | 39 | 119 | 0 | 0 | | | |

View Page By Page

Disclaimer | RRC Interactive Home | RRC Home | Contact

## ★RC ONLINE SYSTEM

## Oil & Gas Production Data Query

Production Data   FAQs   PDQ Help
General Production Query   **Specific Lease Query**

## Specific Lease Query Results

| Query Path: | Search Criteria > District 06, Lease: BLACKWELL, W. T. |
| --- | --- |
| Date Range: | Jan ∨  2009 ∨ to Oct ∨ 2015 ∨  Submit |

**Related Links**
**O&G Directory**
**O&G Proration Schedule**
**Offshore County Map**

View by:  Production and Total Disposition  **Disposition Details**  County Production

Lease Name: **BLACKWELL, W. T., Lease No: 05321**                    Disposition Codes
District 06
Lease Production and Disposition
Jan 2009 - Oct 2015

View Page By Page

| Date | Oil (BBL) Disposition Codes | | | | | | | | | | | Casinghead(MCF) Disposition Codes | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Production | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | no code | Production | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | no code |
| Jan 2009 | 5 | 0 | 75 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Feb 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Mar 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Apr 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| May 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jun 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jul 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Aug 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Sep 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Oct 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Nov 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Dec 2009 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jan 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Feb 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Mar 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Apr 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| May 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jun 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jul 2010 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Aug 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Sep 2010 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Oct 2010 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Nov 2010 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Dec 2010 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jan 2011 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Feb 2011 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Mar 2011 | 1 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |

| | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Apr 2011 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | - | - | - | - | - | - | | - |
| May 2011 | 0 | - | | - | - | | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jun 2011 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 31 | 0 | 0 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 0 |
| Jul 2011 | 5 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Aug 2011 | 2 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Sep 2011 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Oct 2011 | 2 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Nov 2011 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Dec 2011 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jan 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Feb 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Mar 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Apr 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| May 2012 | 1 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jun 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jul 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Aug 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Sep 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Oct 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Nov 2012 | 2 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Dec 2012 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jan 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Feb 2013 | 1 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Mar 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Apr 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| May 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jun 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jul 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Aug 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Sep 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Oct 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Nov 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Dec 2013 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jan 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Feb 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Mar 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Apr 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| May 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jun 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jul 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Aug 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Sep 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Oct 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Nov 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Dec 2014 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Jan 2015 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |
| Feb 2015 | 0 | - | | - | - | - | - | - | | - | - | - | | - | 0 | - | - | | - | - | | - | - | | - |

Lease Dispostion/Oil Query Results                                                                                  Page 3 of 3

| Mar 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - | - |
| Apr 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| May 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jun 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Jul 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Aug 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Sep 2015 | 0 | - | - | - | - | - | - | - | - | - | - | - | 0 | - | - | - | - | - | - | - | - | - |
| Oct 2015 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 39 | 0 | 75 | 0 | 0 | 0 | 0 | 0 | 44 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

View Page By Page

Disclaimer | RRC Interactive Home | RRC Home | Contact

Disposition Codes

Page 1 of 2

 **ONLINE SYSTEM**

Close

**Production Data Query Help**

**Disposition Codes**

| Oil and Casinghead Gas |
| --- |

**Crude Oil**

| Code | Description |
| --- | --- |
| 0 | Pipeline |
| 1 | Truck |
| 2 | Tank car or barge |
| 3 | Net Oil from tank cleaning -- as calculated on the basis of a shakeout test. Show BS&W as oil disposition code 6. |
| 4 | Circulating oil -- original movement off lease. File a notification letter with the appropriate district office and Austin. |
| 5 | Lost or stolen -- Includes loss from fires, leaks, spills, and breaks, as well as thefts. File a Form H-8 if more than 5 barrels. |
| 6 | Sedimentation -- BS&W from tank cleaning. Show net oil as oil disposition code 3. |
| 7 | Other -- Stock adjustment, water bleed-off, lease use, road oil, production lost to formation, etc. Give a detailed explanation below the volume in Column 6. |
| 8 | Skim liquid hydrocarbons -- as charged back on Form P-18 by a saltwater disposal system. |
| 9 | Scrubber oil -- as charged back on Form R-3 by a gas processing plant. |

**Casinghead Gas**

| Code | Description |
| --- | --- |
| 1 | Lease or field fuel use -- gas you use or give to others for field operations including lease drilling fuel, etc. |
| 2 | Transmission line -- gas delivered to a transmission line that will not be processed further before ultimate use, including gas used for industrial purposes, irrigation or refinery fuel, etc. |
| 3 | Processing plant -- total gas delivered to a gas processing plant (any plant or facility reported on Form R-3). Do not report the "plant breakdown" of this gas on the P-1. |
| 4 | Vented or flared |
| 5 | Gas Lift -- gas you use, give, or sell to others directly for gas lift. Do not include gas delivered to pressure maintenance or processing plants even though it is ultimately used for gas lift. |
| 6 | Repressure or pressure maintenane -- gas delivered to a system or plant that does not extract liquid hydrocarbons. That system or plant will report on Form R-7. (A pressure maintenance plant or system that does extract liquid hydrocarbons should file Form R-3. If gas is delivered to a plant or system that recovers liquid hydrocarbons, use casinghead gas disposition code 3 even though the gas may ultimately be injected for pressure maintenance. |
| 7 | Carbon black -- gas delivered to a carbon black plant. |
| 8 | Underground storage -- gas injected directly into a storage reservoir. |

| Gas Well Gas and Condensate |
| --- |

**Gas Well Gas**

| Code | Description |
| --- | --- |
| 1 | |

| | | Lease or field fuel use -- gas you use or give to others for field operations including lease drilling fuel, compressor fuel, etc. |
|---|---|---|
| | 2 | Transmission line -- gas delivered to a transmission line that will not be processed further before ultimate use, including gas used for industrial purposes, irrigation or refinery fuel, etc. |
| | 3 | Processing plant -- total gas delivered to a gas processing plant (any plant or facility reported on Form R-3). Do not report the "plant breakdown" of this gas on the P-2. |
| | 4 | Vented or flared - give an explanation of why the gas was vented or flared. |
| | 5 | Gas Lift -- gas you use, give, or sell to others directly for gas lift. Do not include gas delivered to pressure maintenance or processing plants even though it is ultimately used for gas lift. |
| | 6 | Repressure or pressure maintenance -- gas delivered to a system or plant that does not extract liquid hydrocarbons. That system or plant will report on Form R-7. (A pressure maintenance plant or system that does extract liquid hydrocarbons should file Form R-3. If gas is delivered to a plant or system that recovers liquid hydrocarbons, use casinghead gas disposition code 3 even though the gas may ultimately be injected for pressure maintenance. |
| | 7 | Carbon black -- gas delivered to a carbon black plant. |
| | 8 | Underground storage -- gas injected directly into a storage reservoir. |
| | 9 | Well separation extraction loss -- a positive number reflecting shrinkage of gas volume when condensate is extracted from gas well gas by lease separation methods. Do not report any well separation extraction loss for liquid hydrocarbons recovered at a facility reporting on Form R-3 as a gas processing plant. |

## Condensate

| Code | Description |
|---|---|
| 0 | Pipeline |
| 1 | Truck |
| 2 | Tank car or barge |
| 3 | Net Condensate from tank cleaning -- as calculated on the basis of a shakeout test. Show BS&W as condensate disposition code 6. |
| 4 | Circulating oil -- original movement off lease. File a notification letter with the appropriate district office and Austin. |
| 5 | Lost or stolen -- includes loss from fires, leaks, spills, and breaks, as well as thefts. File a Form H-8 if more than 5 barrels. |
| 6 | Sedimentation -- BS&W from tank cleaning. Show net condensate as condensate disposition code 3. |
| 7 | Other -- Stock adjustment, water bleed-off, lease use, road oil, production lost to formation, etc. Give a detailed explanation. |
| 8 | Skim liquid hydrocarbons -- as charged back on Form P-18 by a saltwater disposal system. |

# EXHIBIT
# D

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOHN WINSTON FORRESTER, JOHN PHILIP FORRESTER, JAMES TERRY, JASON WEBB, ALBERTO RODRIGUEZ, JASON FLOYD SMITH, ROBERT BENNINGER, JOSHUA HOWELL, and JOSE PEREZ<br>　　　Plaintiffs | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 6:17-CV-561 |
| WOOD COUNTY, TEXAS, JAMES A. BROWN, in his individual capacity, WILLIAM MILES TUCKER, in his individual capacity, KELLY SMITH, in his individual capacity, KEVIN ATKINSON, in his individual capacity, STEPHEN CATES, in his individual capacity, JOHN A. HAMMACK, and JERRY WAYNE BOONE<br>　　　Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

## AFFIDAVIT OF BOB WASHMON

| | |
|---|---|
| STATE OF TEXAS | § |
| COUNTY OF TARRANT | §<br>§ |

BEFORE ME, the undersigned authority, personally appeared Bob Washmon, who by me being duly sworn, upon oath stated:

1.　　　My name is Bob Washmon. I am over the age of twenty-one (21) years, I am of sound mind, and I am competent make this affidavit. I have personal knowledge of the facts in this Affidavit and those facts are true and correct. I am qualified to offer the opinions set forth in this affidavit as described in my CV that is attached as Exhibit A.

2.      I have reviewed the Oil, Gas and Mineral Lease dated November 8, 1967 between W.T. Blackwell and Annie May Blackwell as lessors and J.R. Goldsmith as lessee attached as Exhibit B ("Blackwell Lease") and related real property records.

3.      I have also reviewed the real property records relating to the 3.36 acre (more or less) tract of land described on the attached Exhibit C ("Property No. 69764").

4.      Based on my review of these records, Property No. 69764 was never part of the property subject to the Blackwell Lease.

5.      As part of my review, I traced the ownership of Property No. 69764 back to a deed to James S. Hogg *et ux* Sallie Hogg in 1884. Based on my review of these records, neither W.T. Blackwell nor Annie May Blackwell ever had any recorded ownership interest in Property No. 69764.

FURTHER, AFFIANT SAYETH NOT.

BOB WASHMON

SWORN TO BEFORE ME on this the 6th day of December, 2018, to witness my hand and official seal of office.

SEAL

DENISE LEWIS
Notary Public, State of Texas
Comm. Expires 05-16-2022
Notary ID 8205821

Notary Public in and for the State of Texas

ACKNOWLEDGEMENT

This instrument was acknowledged before me on the _____ day of December, 2018 by Bob Washmon.

SEAL

_____
Notary Public in and for the State of Texas





### MINERAL OWNERSHIP BREAKDOWN

| Prospect: 3.36 Ac James A Brown UPDATE: | County: WOOD | State: TEXAS |
|---|---|---|
| Tract Ref No: 69764 | | Acres: 3.3600 |
| Original: | Revision: | Date: 8/27/2018 |

3.36 acres of land, more or less, located in the Robert Duncan Survey, A-157 and being a part of 66.144 acres of land, more or less, located in the J.P. Duncan Survey, A-166, and in the R Duncan Survey, A-157, Wood County, Texas and described in that Deed dated August 12, 1996 from Martha R. Bridges to James A. Brown and Teddi T. Brown and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas LESS AND EXCEPT 62.78 acres, more or less, being the 62.78 acres out of the 66.144 acres that is located in the J.P. Duncan Survey, A-166 , Wood County, Texas as described in a Deed from Martha Bridges to James A Brown and and Teddi T. Brown dated August 9, 1996 and recorded in Volume 595, Page 283, of the Deed Records, Wood County, Texas.

### SURFACE OWNERSHIP

| | SURFACE OWNER | FRACTIONAL INT. | DECIMAL INT. | NET ACRES | COMMENTS |
|---|---|---|---|---|---|
| | James A. Brown | 1.00000000 | 0.50000000 | 3.3600 | |
| TOTAL | | 1.0000 | 1.0000 | 3.36000000 | |

### TITLE NOTES:

3.36 acres, more or less, being a called 3.25 acres, was deeded to C. J. Bridges and wife Martha Bridges as community property from J R Benton, Minerva Benton Johnson and Pauline Benton McCrary dated June 6, 1968 and recorded in Volume 595, Page 283, Deed Records, Wood County, Texas. On June 3, 1981 Clarence J Bridges died testate leaving his wife, Martha Bridges all of his property. On August 12, 1996 Martha Bridges executed a Deed for 66.144 acres, more or less, in which 3.36 acres, (Called 3.25 acres) was a part of the 66.144 acres Deeded to James A. Brown and wife Teddie T. Brown.

Research of the Deed Records does not reveal a Right of Way or Easement Agreement between the current surface owner or previous surface owners in title with any operators of the W.T. Blackwell Lease. This 3.36 acres was not part of any Oil, Gas and Minerals Lease for the W.T. Blackwell well.

Tax Liens: None
Unreleased DT: Yes- Legacy Land Bank
Attachments:
Plat: Yes
Source Deed: Yes

3.36 Ac Robert Duncan A-187
Surface Estate
Interest Tracking Flowchart

**INTEREST TRACKING SHEET**

| | Trust Description | | | AFH 7/6/01 | AFH 7/6/01 | Deed 7/24/02 | Deed 07/24/ | AFH 158/263 | WDVL 140/149 | WDVL 140/149 | Part Deed 158/262 | Deed 131/429 | WDVL 151/434 | WDVL 151/606 | AFH 065/624 | Deed 562/283 | Probate 38-7/4 | Deed 1504/563 | SWU 2273/364 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Wood County Appraisal District | | | | | | | | | | | | | | | | | | |
| | Property ID 37763 | | | | | | | | | | | | | | | | | | |
| | Surface Ownership Tracking | | | 10/15/1917 | 3/21/1920 | 3/14/1922 | 12/23/1920 | 6/11/1634 | 6/19/1634 | 6/19/1634 | 8/28/1925 | 11/21/1935 | 7/3/1936 | 7/3/1936 | 3/14/1949 | 6/8/1969 | 6/3/1969 | 8/22/1998 | 10/15/2007 |
| | | | | | | | | | | | | | | | | | | | |
| | Justin Hendrix | 1.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 | 0.000000 |
| | Justin Hendrix | 0.000000 | 1.000000 | -1.000000 | | | | | | | | | | | | | | | |
| | J J Hendrix | 0.000000 | | -1.000000 | | | | | | | | | | | | | | | |
| | Sallie Hendrix | 0.000000 | | 0.500000 | -0.500000 | | | | | | | | | | | | | | |
| | Sallie Butler et ux J P Butler | 0.000000 | | 0.500000 | | 0.250000 | 0.250000 | -1.000000 | | | | | | | | | | | |
| | Peyton McKnight | 0.000000 | | | 0.125000 | -0.125000 | | | | | | | | | | | | | |
| | Gladys McKnight Pope | 0.000000 | | | 0.125000 | -0.125000 | | | | | | | | | | | | | |
| | Carol Allred Green | 0.000000 | | | 0.125000 | -0.125000 | | | | | | | | | | | | | |
| | Harold Hendrix Green | 0.000000 | | | 0.125000 | -0.125000 | | | | | | | | | | | | | |
| | R L Butler(Son of Sallie Butler) | 0.000000 | | | | | | 0.111111 | -0.111111 | | | | | | | | | | |
| | J P Butler | 0.000000 | | | | | | 0.111111 | | | -0.111111 | | | | | | | | |
| | Ollie Beskin | 0.000000 | | | | | | 0.111111 | | | -0.111111 | | | | 0.500000 | -0.500000 | | | |
| | Jessie Porter | 0.000000 | | | | | | 0.111111 | | | -0.111111 | | | | | | | | |
| | Mae Lloyd | 0.000000 | | | | | | 0.111111 | | | -0.111111 | | | | | | | | |
| | Tom G Butler | 0.000000 | | | | | | 0.111111 | | | -0.111111 | | | | | | | | |
| | Mable Butler Cathey | 0.000000 | | | | | | 0.022222 | | | -0.022222 | | | | | | | | |
| | Florine Butler Williamson | 0.000000 | | | | | | 0.022222 | | | -0.022222 | | | | | | | | |
| | Herbert Butler | 0.000000 | | | | | | 0.022222 | | | -0.022222 | | | | | | | | |
| | Agnes Butler | 0.000000 | | | | | | 0.022222 | | | -0.022222 | | | | | | | | |
| | Benson Frank Butler | 0.000000 | | | | | | 0.022222 | | | -0.022222 | | | | | | | | |
| | Will Howard | 0.000000 | | | | | | 0.055556 | | | -0.055556 | | | | | | | | |
| | Beatrice Roberts | 0.000000 | | | | | | 0.055556 | | | -0.055556 | | | | | | | | |
| | Bessie Boggan | 0.000000 | | | | | | | | 0.055556 | -0.055556 | | | | | | | | |
| | Julius T Butler | 0.000000 | | | | | | | 0.055556 | -0.055556 | | | | | | | | | |
| | Gus T Boggan, Jr | 0.000000 | | | | | | | | -0.055556 | | | | | | | | | |
| | Thomas G Butler | 0.000000 | | | | | | | | 0.333333 | -0.333333 | | | | | | | | |
| | Bessie Boggan et ux Gus Boggan, Jr | 0.000000 | | | | | | | | 0.333333 | | | | | | | | | |
| | J P. Butler | 0.000000 | | | | | | | | 0.333333 | | -0.333333 | | | | | | | |
| | J D Benton et ux Ollie Benton | 0.000000 | | | | | | | | | 0.333333 | 0.333333 | 0.333333 | -1.000000 | | | | | |
| | J R Benton | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | Maryna Benton Johnson | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | Pauline Benton McCrary | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | Peggy Benton Darby | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | Nancy Benton Parr | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | John Robert Benton French | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | Tom D Benton | 0.000000 | | | | | | | | | | | | 0.074429 | -0.074429 | | | | |
| | G L And Martha Bridges | 0.000000 | | | | | | | | | | | | | 1.000000 | -1.000000 | | | |
| | Martha Bridges | 0.000000 | | | | | | | | | | | | | | 1.000000 | -1.000000 | | |
| | James A Brown et ux Teddi T Brown | 0.000000 | | | | | | | | | | | | | | | 1.000000 | -1.000000 | |
| | James A Brown | 1.000000 | | | | | | | | | | | | | | | | 1.000000 |

BWEC-1187

3.36 Surface Acres
R/ Duncan SurveyA-157
Wood County, Texas

| | | | | | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 1 | DR | I/606 | DEED | 02/22/1884 | James S Hogg et ux Sallie Hogg | P.J. Hendrix |
| 2 | DR | 75/401 | Affidavit of Heirship | 10/10/1917 | P J Hendrix | Public |
| 3 | DR | 67/361 | WARRANTY DEED WITH VENDORS LIEN | 12/23/1920 | Peyton McKnight Gladys McKnight Pope | R L Butler |
| 4 | DR | 63/138 | DEED | 01/27/1922 | J P Butler | P P Butler |
| 5 | DR | 75/402 | Executors Deed | 03/14/1922 | Carroll Alfred Greene Harrell Hendricks Green By C A Green as Guardian | Sallie Butler |
| 6 | DR | 131/201 | DEED | 03/07/1933 | P P Butler | J P Butler |
| 7 | DR | 139/353 | Affidavit of Heirship | 04/11/1934 | J P Butler Sallie Butler | R.L Butler et ux Ollie Butler P.P. Butler Dixie Benton et vir J D Benton Dollie Turner ert vir Walter Turner Effie Lloyd et vir W W Lloyd Alice Lloyd et vir J J Lloyd Tom G Butler Mable Butler Cathey et vir L B Florine Butler Williamson et vir Jack Thelba |
| 8 | DR | 140/149 | WARRANTY DEED WITH VENDORS LIEN | 08/19/1934 | R L Butler | Bessie Bogan Julius T Butler |
| 9 | DR | 140/205 | WARRANTY DEED WITH VENDORS LIEN | 07/23/1934 | Julius T Butler | Gus T Bogan, Jr |
| 10 | DR | 156/462 | CC/PROBATE PROCEEDINGS- Partition of Estate | 09/26/1935 | J P Butler Estate by Effie Lloyd Alice Loyd Thomas G Butler Dixie Benton Dollie Turner P P Butler Mabel Cathey Florine Williamson Agnes Butler Bennie Butler Thelbert Butler Bessie Bogan Gus Bogan, Jr Will Howard Zula Margaet Jones James Howrd Jones | Public |
| 11 | DR | 151/429 | DEED | 11/21/1935 | Tom Butler(Thomas G. Butler) | Dixie Benton |
| 12 | DR | 151/606 | WARRANTY DEED WITH VENDORS LIEN | 04/13/1936 | Gus T. Bogan et ux Bessie Bogan | J D Benton et ux Dixie Benton |
| 13 | DR | 151/434 | WARRANTY DEED WITH VENDORS LIEN | 07/03/1936 | P P Butler | J D Benton |
| 14 | DR | 665/624 | Affidavit of Heirship | 01/14/1949 | John Paul Benton (J.P. Benton) | J R Benton Minerva Benton Johnson Pauline Benton McCrary Peggy Benton Darby Nancy Benton Parr John Helen Benton French Tom D Benton Dixie Benton(Wife) |

3.36 Surface Acres
R/ Duncan SurveyA-157
Wood County, Texas

| | | | | | | |
|---|---|---|---|---|---|---|
| 15 | DR | 595/283 | DEED | 06/06/1966 | J R Benton<br>Minerva Benton Johnson<br>Pauline Benton McCrary<br>Peggy Benton Darby<br>Nancy Benton Parr<br>John Helen Benton French<br>Tom D Benton<br>Dixie Benton | Clarence Bridges et ux<br>Martha Bridges |
| 16 | PR | PROB/6784 | PROBATE PROCEEDINGS | 06/17/1981 | Clarence J. Bridges | Martha Bridges |
| 17 | DR | 1504/568 | Deed of Trust | 08/09/1996 | James A Brown and Teddi T Brown | Farm Credit Bank of Texas |
| 18 | DR | 1504/563 | DEED | 08/12/1996 | Martha R. Bridges Brewer | James A Brown<br>Teddi T Brown |
| 19 | DR | 1511/559 | EASEMENT | 09/25/1996 | Martha Bridges Brewer<br>Charles Ray Brewer | James A. Brown<br>Teddi T Brown |
| 20 | DR | 1742/624 | Assignment of Deed of Trust | 09/05/2000 | Farm Credit Bank of Texas | The Land Bank of Sulphur Springs |
| 21 | DR | 2275/364 | SPECIAL WARRANTY DEED | 10/19/2007 | Teddi Lee Thornhill AKA Teddi Lee Brown | James A. Brown |
| 22 | DR | 2276/763 | Deed of Trust to Secure Assumption | 10/19/2007 | James A. Brown | Legacy Land Bank |

# TITLE NOTES

3.36 acres of land, more or less, located in the Robert Duncan Survey, A-157 and being a part of 66.144 acres of land, more or less, located in the J.P. Duncan Survey, A-166, and in the R Duncan Survey, A-157, Wood County, Texas and described in that Deed dated August 12, 1996 from Martha R. Bridges to James A. Brown and Teddi T. Brown and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas LESS AND EXCEPT 62.78 acres, more or less, being the 62.78 acres out of the 66.144 acres that is located in the J.P. Duncan Survey, A-166, Wood County, Texas as described in a Deed from Martha Bridges to James A Brown and and Teddi T. Brown dated August 9, 1996 and recorded in Volume 595, Page 283, of the Deed Records, Wood County, Texas.

**DOC. #** 1

DR                                James S Hogg et ux Sallie Hogg    To    P.J. Hendrix
1/606

02/22/1884
02/22/1884
DEED

**REMARKS:**                    320.00   acres
320.0 acres, more or less. Being the entirety of the Robert Duncan Survey

Tract#:

Page(s):
................................................................................................................

**DOC. #** 2

DR                                P J Hendrix                      To    Public
75/401

10/10/1917
10/10/1917
Affidavit of Heirship

**REMARKS:**                    320.0   acres
320.0 acres, more or less. Being the entirety of the Robert Duncan Survey

P.J. Hendrix died intestate in Wood County, Texas on 10/10/1917 with no children and is survived by his wife Sallie Hendrix. He had one Sister named Sallie Butler.  P J. Hendrix and Sallie Hendrix were the only heirs of Larkin Hendrix and they inherited the entire Robert Duncan Survey from Larkin Hendrix.  Sallie Hendrix died testate in Wood County, Texas on 03/21/1920 leaving a will that gives all her property to 1) the children of Emma Green being Carroll Alfred and Harold Hendrix Green and 2) the children of Dixie McKnight being Peyton McKnight and Gladys McKnight Pope

Tract#:

Page(s):
................................................................................................................

**DOC. #  3**

| | | | |
|---|---|---|---|
| DR | Peyton McKnight | To | R L Butler |
| 67/361 | Gladys McKnight Pope | | |

12/23/1920
12/23/1920
WARRANTY DEED WITH
VENDORS LIEN

**REMARKS:**                   213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas
Deeds all their interest inherited by Sallie Hendrix and/or Sallie Butler. Sallie Hendicks deeded the McKnights
67 acres in the A C Walters Survey so Sallie Butler will own all of the N 213 acres. "The purpose of this Deed
is to quite R L Butler, son of Sallie Butler, in title to the 200 acres."

Tract#:

Page(s):
..........................................................................................................................................

**DOC. #  4**

| | | | |
|---|---|---|---|
| DR | J P Butler | To | P P Butler |
| 63/138 | | | |

01/27/1922
01/27/1922
DEED

**REMARKS:**                   213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas.

Tract#:

Page(s):
..........................................................................................................................................

**DOC. #  5**

| | | | |
|---|---|---|---|
| DR | Carroll Alfred Greene | To | Sallie Butler |
| 75/402 | Harrell Hendricks Green | | |
| | By C A Green as Guardian | | |

03/14/1922
03/14/1922
Executors Deed

**REMARKS:**                   213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas.
Deeds their 1/4 interest in the 213.0 acres.

Tract#:

Page(s):
..........................................................................................................................................

**DOC. #  6**

| | | | |
|---|---|---|---|
| DR | P P Butler | To | J P Butler |
| 131/201 | | | |

03/07/1933
03/07/1933
DEED

**REMARKS:**                   213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas

Tract#:

Page(s):
..........................................................................................................................................

BW Energy Consultants, Inc
516 S Spring Ave
Tyler, Tx 75702

Landman: Randy Reeves
08/28/2018                                                                          Page 2 of 9
BWEC-1191

| | | | |
|---|---|---|---|
| **DOC. #   7** | | | |
| DR | J P Butler | To | R.L Butler et ux Ollie Butler |
| 139/363 | Sallie Butler | | P.P. Butler |
| | | | Dixie Benton et vir J D Benton |
| 04/11/1934 | | | Dollie Turner crt vir Walter Turner |
| 04/11/1934 | | | Effie Lloyd et vir W W Lloyd |
| | | | Alice Lloyd et vir J J Lloyd |
| | | | Tom G Butler |
| | | | Mable Butler Cathey et vir L B |
| | | | Florine Butler Williamson et vir |
| | | | Jack |
| | | | Thelbert Butler |
| | | | Agnes Butler |
| | | | Bennie Frank Butler |
| | | | Will Howard |
| | | | Beatrice Roberts et vir B F |

Affidavit of Heirship

**REMARKS:**          213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas
These are the heirs of J P and Sallie Butler. J Phillip Butler died on 02/23/1934 and Sallie Butler died on
06/10/1932

**Tract#:**

**Page(s):**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| | | | |
|---|---|---|---|
| **DOC. #   8** | | | |
| DR | R L Butler | To | Bessie Bogan |
| 140/149 | | | Julius T Butler |
| | | | |
| 06/19/1934 | | | |
| 06/19/1934 | | | |
| WARRANTY DEED WITH | | | |
| VENDORS LIEN | | | |

**REMARKS:**          213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas
Each party receives 1/2 of the 1/9th interest he received from his father J P Butler et ux Sallie Butler.

**Tract#:**

**Page(s):**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| | | | |
|---|---|---|---|
| **DOC. #   9** | | | |
| DR | Julius T Butler | To | Gus T Bogan, Jr |
| 140/205 | | | |
| | | | |
| 07/23/1934 | | | |
| 07/23/1934 | | | |
| WARRANTY DEED WITH | | | |
| VENDORS LIEN | | | |

**REMARKS:**          213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas. Reference Vol
140, Page 149

**Tract#:**

**Page(s):**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

DOC. #   10

| | | | |
|---|---|---|---|
| DR | J P Butler Estate by | To | Public |
| 156/462 | Effie Lloyd | | |
| | Alice Loyd | | |
| 09/26/1935 | Thomas G Butler | | |
| 09/26/1935 | Dixie Benton | | |
| | Dollie Turner | | |
| | P P Butler | | |
| | Mabel Cathey | | |
| | Florine Williamson | | |
| | Agnes Butler | | |
| | Bennie Butler | | |
| | Thelbert Butler | | |
| | Bessie Bogan | | |
| | Gus Bogan, Jr | | |
| | Will Howard | | |
| | Zula Margaet Jones | | |
| | James Howrd Jones | | |

CC/PROBATE
PROCEEDINGS- Partition of
Estate

REMARKS:                213.0   acres
213 Acres, more or less, located in the Robert Duncan Survey, A-157 in Wood County, Texas
Block 3: Thomas G Butler was alotted the 27.8 ac Block 3 of the Robert Duncan Tract

Block 4: Bessie Bogan et ux Gus T Bogan, Jr. was alotted the 26.6 ac Block 4 of the Robert Duncan, A-157.

Block 5: P.P. Butler was alotted the 26.8 ac Block 5 of the Robert Duncan, A-157

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

DOC. #   11

| | | | |
|---|---|---|---|
| DR | Tom Butler(Thomas G. Butler) | To | Dixie Benton |
| 151/429 | | | |

11/21/1935
11/21/1935
DEED

REMARKS:                27.8   acres
27.8 ac more or less, described in that CC Copy of Probate Proceeding of The J.P. Butler Estate as Block 3 of
the Robert Duncan Survey, A-157 dated July 3, 1936 to Thomas G. Butler and recorded in Volume 156, Page
462 of the Deed Records of Wood County, Texas

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

DOC. #   12

| | | | |
|---|---|---|---|
| DR | Gus T. Bogan et ux Bessie Bogan | To | J D Benton et ux Dixie Benton |
| 151/606 | | | |

04/13/1936
04/13/1936
WARRANTY DEED WITH
VENDORS LIEN

REMARKS:                26.6   acres
26.6 ac more or less, described in that CC Copy of Probate Proceeding of The J.P. Butler Estate as Block 4 of
the Robert Duncan Survey, A-157 dated July 3, 1936 to J D Benton et ux Dixie Benton and recorded in Volume
156, Page 462 of the Deed Records of Wood County, Texas

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

BW Energy Consultants, Inc
516 S Spring Ave
Tyler, Tx 75702

**DOC. #   13**

| | | | |
|---|---|---|---|
| DR | P P Butler | To | J D Benton |
| 151/434 | | | |

07/03/1936
07/03/1936
WARRANTY DEED WITH
VENDORS LIEN

**REMARKS:**          26.8   acres
26.8 ac more or less, described in that CC Copy of Probate Proceeding of The J.P. Butler Estate as Block 5 of
the Robert Duncan Survey, A-157 dated July 3, 1936 to J D Benton and recorded in Volume 156, Page 462 of
the Deed Records of Wood County, Texas

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**DOC. #   14**

| | | | |
|---|---|---|---|
| DR | John Paul Benton | To | J R Benton |
| 865/624 | (J.P. Benton) | | Minerva Benton Johnson |
| | | | Pauline Benton McCrary |
| 01/14/1949 | | | Peggy Benton Darby |
| 01/14/1949 | | | Nancy Benton Parr |
| | | | John Helen Benton French |
| | | | Tom D Benton |
| | | | Dixie Benton(Wife) |

Affidavit of Heirship

**REMARKS:**          3.75   acres
Blocks 3,4,5 in the partition of the J P Butler Estate described in that Partition Deed dated 07/03/1936 and
recorded in Volume 156, Page 462 of the Deed Records of Wood County, Texas
Children of J P Butler and Dixie Butler.  J P Butler died intestate on 01/14/1949

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**DOC. #   15**

| | | | |
|---|---|---|---|
| DR | J R Benton | To | Clarence Bridges et ux Martha |
| 595/283 | Minerva Benton Johnson | | Bridges |
| | Pauline Benton McCrary | | |
| 06/06/1968 | Peggy Benton Darby | | |
| 06/06/1968 | Nancy Benton Parr | | |
| | John Helen Benton French | | |
| | Tom D Benton | | |
| | Dixie Benton | | |

DEED

**REMARKS:**          3.25   acres
3.25 acres, more or less, located in the R. Duncan Survey, A-157 amd being parts of Blocks 3, 4, and 5 in the
division of the J.P. Butler land.
Reserves all oil, gas and minerals

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

BW Energy Consultants, Inc
516 S Spring Ave
Tyler, Tx 75702

DOC. #   16

PR                     Clarence J. Bridges        To      Martha Bridges
PROB/6784

06/17/1981
06/17/1981
PROBATE PROCEEDINGS

**REMARKS:**         3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

All property passes to survivor wife/husband. Clarence L. Bridges died 06/03/1981.

Tract#:
Page(s):

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

DOC. #   17

DR                 James A Brown and Teddi T    To    Farm Credit Bank of Texas
1504/568              Brown

08/09/1996
08/09/1996
Deed of Trust

**REMARKS:**         3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

Tract#:
Page(s):

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

| DOC. #   18 | | | |
| DR | Martha R. Bridges Brewer | To | James A Brown |
| 1504/563 | | | Teddi T Brown |

08/12/1996
08/12/1996
DEED

**REMARKS:**                        3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

Clarence Bridges died testate 06/03/1981 leaving everything to his wife, Martha Bridges.

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| DOC. #   19 | | | |
| DR | Martha Bridges Brewer | To | James A. Brown |
| 1511/559 | Charles Ray Brewer | | Teddi T Brown |

09/25/1996
09/25/1996
EASEMENT

**REMARKS:**                        3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

Easement granted from 3.36 acres in the R. Duncan to J Duncan tract. This is between Bridges and Brown abd does not include other parties

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**DOC. #   20**

DR                          Farm Credit Bank of Texas         To      The Land Bank of Sulphur Springs
1742/624

09/05/2000
09/05/2000
Assignment of Deed of Trust`

**REMARKS:**                    3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**DOC. #   21**

DR                          Teddi Lee Thornhill AKA Teddi    To      James A. Brown
2275/364                    Lee Brown

10/19/2007
10/19/2007
SPECIAL WARRANTY DEED

**REMARKS:**                    3.36   acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

Tract#:

Page(s):
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

DOC.#    22

| DR | James A. Brown | To | Legacy Land Bank |

2276/763

10/19/2007
10/19/2007
Deed of Trust to Secure
Assumption

**REMARKS:**                       3.36    acres

3.36 acres (Called 3.25) of land, more or less, a part of 66.144 acres, more or less, situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas and 62.78 acres, more or less, being part of a called 85 acre tract described in a Deed from W. T. Blackwell and wife Annie May Blackwell to C. J. Bridges and wife Martha Bridges dated February 20,1963 as shown of record in Volume 504, Page 520, Deed Records, Wood County, Texas AND part of a called 3.25 acre tract described in a Deed from J. R. Benton, et al to Clarence Bridges and wife Martha Bridges dated June 6, 1968 as shown of record In Volume 595, Page 283, Deed Records, Wood County, Texas LESS AND EXCEPT 62.78 acres located in the J.P. Duncan Survey, A-166, out of the 66.144 acres, more or less, of that certain tract of land situated in the J. P. Duncan Survey, Abstract No. 166, and in the R. Duncan Survey, Abstract No. 157, Wood County, Texas being the same land conveyed from Martha R. Bridges Brewer to James A Brown and Teddi T. Brown dated August 12, 1996 and recorded in Volume 1504, Page 563 of the Deed Records of Wood County, Texas. The 3.36 acres, more or less, is situated in the R. Duncan Survey, A-157.

**Tract#:**

**Page(s):**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

BW Energy Consultants, Inc
516 S Spring Ave
Tyler, Tx 75702

Landman: Randy Reeves
08/28/2018

Page 9 of 9

BWEC–1198